Brian M. Willen
Jason Mollick
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
bwillen@wsgr.com
jmollick@wsgr.com
*Attorneys for Google LLC*

Kenneth D. Freundlich
FREUNDLICH LAW
16133 Ventura Blvd. Ste. 645
Encino, California 91436
Telephone: (310) 275-5350

and c/o

Daniel J. Aaron P.C. (LOCAL COUNSEL)
750 Third Avenue, Suite 1006
New York, New York 10017

*Attorneys for Defendant LyricFind, Inc., erroneously sued in*
*New York Supreme Court as LyricFind*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GENIUS MEDIA GROUP INC.,<br><br>Plaintiff,<br><br>-against-<br><br>GOOGLE LLC and LYRICFIND,<br><br>Defendants. | Case No.<br><br><br>**NOTICE OF**<br>**REMOVAL** |

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK:**

**PLEASE TAKE NOTICE** that Google LLC ("Google") and LyricFind, Inc.[1] ("LyricFind") (individually and collectively, "Defendants"), defendants in this action under the above caption in the Supreme Court of the State of New York, Kings County, under Index No. 526241/2019, hereby remove said action to this Court pursuant to 28 U.S.C. §1441 *et seq.*, on the following grounds:

*The State Court Action*

1.      On December 3, 2019, Plaintiff Genius Media Group Inc. ("Plaintiff or "Genius") filed the Summons and Complaint in this action against Defendants in the Supreme Court of the State of New York, Kings County.

2.      The Summons and Complaint, copies of which are annexed hereto as **Exhibit A**, were served upon LyricFind on or about December 4, 2019 by personal service at its corporate headquarters in Toronto, Ontario, Canada.

3.      The Summons and Complaint were served upon Google on or around December 4, 2019 by service upon the New York Secretary of State.

4.      The Complaint alleges 10 purported state law-based causes of action

---

[1]LyricFind, Inc. was erroneously sued as merely "LyricFind."

all arising out of (i) the alleged copying of digital transcriptions of copyrighted musical lyrics from Genius' website by LyricFind, and (ii) the display of these copyrighted lyrics on Google's website. These are in essence claims for copyright infringement disguised as various state law causes of action.

5.      Based on this underlying conduct, Plaintiff purports to state five state law claims each against LyricFind and Google for:

  a.  Breach of a contractual provision in Plaintiff's website's Terms of Service, that states in part that "[u]nless otherwise expressly authorized herein or by Genius' express written consent, you agree not to display, distribute, license, perform, publish, reproduce, duplicate, copy, create derivative works from, modify, sell, resell, exploit, transfer or transmit for any commercial purpose, any portion of the [Genius website], or access to the [Genius website]." (First Cause of Action against LyricFind, Third Cause of Action against Google);

  b.  Indemnification as a result of defendants' alleged breach of the Genius Terms of Service (Second Cause of Action against LyricFind, Fourth Cause of Action against Google);

    c.   New York Common Law Unfair Competition (Fifth Cause of Action against LyricFind, Seventh Cause of Action against Google);

    d.   California statutory Unfair Competition, Cal. Bus. & Prof. Code § 17200, et seq. (Sixth Cause of Action against LyricFind, Eighth Cause of Action against Google); and

    e.   Unjust Enrichment (Ninth Cause of Action against Google, Tenth Cause of Action against LyricFind).

*This Notice is Timely Filed*

6.    As set forth hereinabove, Plaintiff served the Summons and Complaint on Defendants on or around December 4, 2019.

*7.*    A defendant's time to remove commences when the defendant receives a copy of the Complaint through service of process. 28 U.S.C. § 1446(b)(1). Here, since Defendants have filed this Notice of Removal within thirty (30) days thereof, this Notice is timely. *Id.*

*This Court's Exclusive Jurisdiction Over the Alleged Claims*

8.    The above described action is one of which this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338, and is one which may be removed to this Court by Google and LyricFind, pursuant to 28 U.S.C. § 1441 *et seq*,

because it is a civil action containing purported state law claims which are

preempted by Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a) and thus

within the exclusive jurisdiction of this Court.  *See, e.g.*, *Briarpatch Ltd., L.P. v.*

*Phx. Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004).

9.      Genius' state-law claims against both defendants are premised on the

alleged reproduction and display of musical lyrics.  Lyrics are among the "works

of authorship" protected by the federal Copyright Act.  17 U.S.C. § 102(a)(2)

(works of authorship include "musical works, including any accompanying

words").  The "display" and "reproduction" of copyrighted musical works are

among the bundle of exclusive rights reserved for copyright holders and protected

by the Copyright Act.  17 U.S.C. § 106(1) and (5) (protecting among other things

the rights "to reproduce the copyrighted work in copies" and "to display the

copyrighted work publicly").

10.      Plaintiff did not assert a copyright infringement claim in this case

because it holds no copyrights in the lyrics at issue.  Instead, the copyrights in the

lyrics are held by music publishers and/or songwriters.  Defendants have

independent licenses from those actual copyright owners to distribute and display

the same lyrics through their respective services.  Plaintiff attempts to sidestep

these obstacles by alleging state law claims that are all premised on the copying

and display of copyrighted works.  Plaintiff's Complaint is a subterfuge for copyright claims that Plaintiff does not have standing to bring, since Genius does not have the requisite copyright interest in the lyrics and Defendants have licensed those lyrics from their rightful owners.

11.    Plaintiff's claims are preempted by Section 301 of the Copyright Act. All of Plaintiff's purported state law causes of action are claims asserting "legal and equitable rights that are equivalent to ... the exclusive rights within the general scope of copyright."  17 U.S.C. § 301(a).  Under established Second Circuit law, that means that those claims arise under federal law and create federal-question jurisdiction under 28 U.S.C. § 1331 and § 1338.  *See Briarpatch*, 373 F.3d at 305 (holding that federal "district courts have jurisdiction over state law claims preempted by the Copyright Act").

*Procedural Requirements Have Been Satisfied*

12.    Copies of this Notice of Removal will be filed with the Supreme Court of the State of New York, Kings County, and served upon counsel for Plaintiff, pursuant to 28 U.S.C. § 1446.

**WHEREFORE,** defendants hereby remove the above action now pending

against them in the Supreme Court of the State of New York, Kings County, under

Index No. 526241/2019, to this Court.

Dated: December 30, 2019

WILSON SONSINI GOODRICH & ROSATI

BY: ___/s/ Brian M. Willen___
    Brian M. Willen
    Jason Mollick
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
bwillen@wsgr.com
jmollick@wsgr.com

*Attorneys for Google LLC*

FREUNDLICH LAW

BY. _____
    Kenneth D. Freundlich
16133 Ventura Blvd. Ste. 645
Encino. CA 91436

and

c/o Daniel J. Aaron, P.C. (LOCAL COUNSEL)
750 Third Avenue, Suite 1006
New York, New York 10017

*Attorneys for Defendant LyricFind, Inc., erroneously sued in New York Supreme Court as LyricFind*

# EXHIBIT A

FILED: KINGS COUNTY CLERK 12/03/2019 10:25 AM
INDEX NO. 526241/2019

NYSCEF DOC. NO. 1 Case 1:19-cv-07279-MKB-VMS Document 1 Filed 12/30/19 Page 9 of 59 PageID #: 9 RECEIVED NYSCEF: 12/03/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

GENIUS MEDIA GROUP INC.,

              Plaintiff,

     -against-

GOOGLE LLC and LYRICFIND,

              Defendants.

Index No. _____

**<u>SUMMONS</u>**

Plaintiff designates Kings County as
the place of trial

Venue is proper pursuant to CPLR
§ 503

**To the Above-Named Defendants:**

     **YOU ARE SUMMONED** to answer the Complaint in this action and to serve a copy of

your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of

Appearance, on the plaintiff's attorneys within twenty (20) days after the service of this Summons,

exclusive of the day of service (or within thirty (30) days after the service is complete if this

Summons is not personally delivered to you within the State of New York); and in the case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded

in the Complaint.

Dated: New York, New York
       December 3, 2019

**PRYOR CASHMAN LLP**

By: _____
     Ilene S. Farkas
     Benjamin K. Semel
     Marion R. Harris
     Kaveri Arora
7 Times Square
New York, New York 10036
(212) 421-4100
ifarkas@pryorcashman.com
bsemel@pryorcashman.com
mharris@pryorcashman.com
karora@pryorcashman.com

*Attorneys for Plaintiff*

FILED: KINGS COUNTY CLERK 12/03/2019 10:25 AM                    INDEX NO. 526241/2019

NYSCEF DOC. NO. 1   Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 10 of 59 PageID #: 10   RECEIVED NYSCEF: 12/03/2019

**TO:**

**Google LLC**
c/o New York Secretary of State (pursuant to N.Y. LLC Law § 303)

**LyricFind**
40 Eglinton Avenue East, Suite 400
Toronto, Ontario M4P 3A2
CANADA

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

GENIUS MEDIA GROUP INC.,                     Index No.

              Plaintiff,

      -against-                           **VERIFIED COMPLAINT**

GOOGLE LLC and LYRICFIND,

            Defendants.

      Plaintiff Genius Media Group, Inc. ("Genius"), as and for its Complaint against defendants Google LLC ("Google") and LyricFind (each a "Defendant" and collectively, "Defendants") alleges as follows:

## NATURE OF THE ACTION

      1.     Genius is a digital media company connecting music fans across the internet. One of Genius's primary services is the development and maintenance of a vast repository of annotated music lyrics, some of which are artist-supplied and many of which are transcribed and refined by a community of over two million Genius contributors.

      2.     Defendants Google LLC and LyricFind have been caught red-handed misappropriating content from Genius's website, which they have exploited—and continue to exploit—for their own financial benefit and to Genius's financial detriment.

      3.     When repeatedly confronted by Genius with incontrovertible evidence regarding their conduct, Defendants assigned blame elsewhere but otherwise continued their unlawful behavior.

      4.     Only after Defendants' conduct became public in a *Wall Street Journal* article did Defendants purport to address their misappropriation of content from Genius's website.

3

5.    Defendants' responses, however—largely platitudes of "high standards" and "best practices"—ring hollow, and Defendants continue to exploit content misappropriated from Genius's website while apparently attempting to conceal that misappropriation.

6.    This action seeks to halt Defendants' unethical and unfair anticompetitive practices, as well as to recover damages for violations of Genius's Terms of Service as a result of defendants' misappropriation.

## THE PARTIES

7.    Plaintiff Genius Media Group, Inc. is a Delaware corporation with its principal place of business at 92 Third Street, Brooklyn, New York 11231.

8.    Upon information and belief, Defendant LyricFind is a Canadian company with its principal place of business in Toronto, Ontario.

9.    LyricFind describes itself as the "world's leader in legal lyric solutions." It purports to maintain a "quality-controlled, vetted database of . . . lyrics available for licensing and service to over 200 countries."

10.    While not registered to do business in New York State, LyricFind nonetheless, upon information and belief, maintains an office and has employees within the state, including, for example, its Vice President of International Publishing. Upon information and belief, LyricFind also has employees in California.

11.    Moreover, upon information and belief, LyricFind regularly contracts and conducts business—including licensing of lyrics or the provision of its lyrics-related services—with counterparties located in the States of New York and California.

12.    Upon information and belief, in or about June 2016, LyricFind entered into an agreement with Google whereby LyricFind provides lyrics to Google for use in (at least) Google's search results.

4

13.     Google LLC is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

14.     Google LLC owns and operates, among other products, Google Search (a/k/a Google Web Search), the internet's dominant search platform.

15.     Google LLC is registered to do business in the State of New York and maintains offices at 111 Eighth Avenue, New York, New York 10011.

## FACTUAL BACKGROUND

### I.     Genius and the Market for Accurate Music Lyrics

16.     Founded in 2009 as "Rap Exegesis," Genius has become a preeminent source of lyrics for music and is a preferred destination for major publications when reporting on or analyzing lyrics.

17.     It is commonly assumed that music lyrics are provided by music publishers and/or record labels in connection with the release of new music.  In the age of digital distribution, however, that is rarely the case.

18.     Rather, while the music publishers and/or songwriters usually own the copyright in the lyrics for a given song, they do not generally maintain a catalog of lyrics transcriptions. Companies that license lyrics for display from music publishers (like Genius and LyricFind) do not typically receive any actual lyrics transcriptions in connection with their licensing agreements.

19.     Genius provides a platform for music enthusiasts who transcribe music lyrics, and also obtains lyrics through partnerships with artists who provide their lyrics directly to Genius. Genius, in turn, obtains licenses from music publishers permitting the display and distribution of these lyrics.

20.     Members of the Genius community are music enthusiasts.  Lyrics transcription is an arduous task that often requires genre experts to repeatedly listen to songs in order to produce

5

accurate transcriptions.[1] Lyrics transcription on Genius is also a collaborative activity—multiple members of the Genius community are able to work on a single lyrics transcription simultaneously. Genius has invested ten years and tens of millions of dollars to build the technology and community that supports collaborative lyrics transcription. The high quality and ready availability of lyrics on Genius are a direct result of this technology and Genius's engaged community of users.

21.     Genius moderates the quality of content on its website, including music lyrics, through the use of an "IQ" system, through which registered Genius users earn IQ points based on quality contributions, as determined by other Genius users.  A higher number of IQ points for a registered Genius user translates into greater ability to add, edit and/or annotate lyrics on the Genius website.

22.     Genius earns revenue in several ways.  Significantly, Genius partners with major companies, such as Apple, to license its database of high-quality lyrics.  Genius also generates ad revenue through web traffic on its website and apps, sales of pre-roll video commercials on YouTube, and production of custom content and events for major brands.

23.     Many Genius users arrive at its website after using a search engine—most typically, Google's search engine—to find lyrics for a given song.  Genius is often the top-ranked organic search result on Google for lyrics search queries (e.g., *selena gomez lose you to love me lyrics*.)[2]

---

[1] Chief Justice Roberts of the Supreme Court of the United States acknowledged as much when he quoted a lyric from the liner notes of Bob Dylan's song "Like a Rolling Stone" in a 2008 decision. The liner notes read "When you got nothing, you got nothing to lose", while the song as performed adds an extra word "ain't": "When you **ain't** got nothing, you got nothing to lose."  The lyrics that appear on the Genius website include the word "ain't", as performed in the actual recording.  *See* https://www.nytimes.com/2016/02/23/us/politics/how-does-it-feel-chief-justice-roberts-to-hone-a-dylan-quote.html

[2] "Organic search results" are defined by Google "[a] free listing in Google Search that appears because it's relevant to someone's search terms." The term is used *infra* to distinguish between free listings in Google Search and Google's Information Box results.

24.     All users that visit Genius's website, regardless of whether a user registers for an account with Genius, are bound by its Terms of Service, which are accessible to users from all pages of the Genius website.

## II.     Google's Lyrics Information Box

25.     Google operates the internet's dominant search engine.  In a given month, a majority of visitors to Genius's website arrive via Google search.

26.     In Google's 2004 initial public offering materials, co-founder Larry Page claimed: "We want you to come to Google and quickly find what you want.  Then we're happy to send you to the other sites. . . .  We want to get you out of Google and to the right place as fast as possible."

27.     Notwithstanding this public statement, upon information and belief, Google has since altered its search product in a manner designed to keep users on Google-owned properties, such as YouTube, rather than send them to third-party sites.  Indeed, according to a study published in 2019, more than half of Google searches do not result in a click to visit another website.  Moreover, approximately 14% of searches that do result in a click to another website are in fact clicks to visit other Google-owned properties.

28.     Upon information and belief, in 2009, Google added a feature to its search products in some categories that it calls an "Information Box," which is displayed above, alongside or interwoven with organic search results on select search engine results pages, depending on a given search query.  For example, if a Google user queries the name of a celebrity, the search engine results page will often display an Information Box that provides select information regarding that celebrity, along with a link to another website (e.g. Wikipedia) to view more information.  A user desiring more information would then either click the link or click through to one of the organic search results linked on the page.

7

29.     Upon information and belief, Google expanded its Information Box product to lyrics search results in or about December 2014.  Currently, when a Google user queries the name of a song together with "lyrics," (e.g., *lose you to love me lyrics*) the search engine results page may display an Information Box above all other organic search results showing the complete lyrics for the requested song.  Unlike the preceding celebrity search example, lyrics Information Boxes display the full lyrics to songs and do not provide click-through links that provide additional content.

30.     When virtually all mobile users and many desktop users search for song lyrics, and Google returns an Information Box containing the requested song lyrics, the Information Box is displayed in such a manner that the user cannot see any other search results without first scrolling down, as shown below.



**Portion of lyrics search results visible on an Apple iPhone 11 Pro before scrolling**

*Screenshot from: November 26, 2019

31.     Moreover, Google's lyrics Information Boxes frequently appear in search results as a part of larger search features that include links to Google-owned revenue-generating products, such as YouTube and Google Play, as shown below.  Specifically, many lyrics Information Boxes prompt users to play the music video on YouTube or stream the song on Google Play.



FILED: KINGS COUNTY CLERK 12/03/2019 10:25 AM          INDEX NO. 526241/2019

NYSCEF DOC. NO. 1          Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 20 of 59 PageID #: 20          RECEIVED NYSCEF: 12/03/2019

32.     In other words, in the competition for users on the internet, Google has designed its lyrics Information Box in a way that discourages users from seeking another result, and, in many cases, directs them toward other revenue-generating Google products.

## III.     Google's Search Quality Evaluator Guidelines ("SQEG")

33.     Since its founding in 1998, Google has faced numerous inquiries from competition authorities worldwide concerning actual or potential unfair competition by Google regarding the manner in which it displays and ranks search results.[3]

34.     Given Google's dominance in the internet search market—comprising more than 85% of the internet search engine market in the United States in 2018—a website's placement on Google's search engine results pages is a material consideration to both its web traffic and revenue.

35.     The precise algorithm by which websites are ranked on Google's search engine results page is a closely-guarded company secret.  Part of that algorithm, however, relies on the work of thousands of "Search Quality Evaluators," with whom Google contracts to assess the quality of the results provided by the Google search engine.  The assessments from these evaluators, in turn, inform adjustments to Google's search results ranking algorithm.

36.     To assist Search Quality Evaluators in assessing the results of Google's search engine, Google has published a 167-page "Search Quality Evaluator Guidelines" (SQEG), which it last updated in September 2019.  *See* Google Search Quality Evaluator Guidelines, dated Sept. 5, 2019 (attached hereto as **Exhibit A**).

37.     With respect to lyrics websites, like Genius, that appear organically on Google's search engine results pages, the SQEG instructs evaluators to score those website results as

---

[3] Indeed, Google is currently under antitrust investigation in the United States by 50 attorneys general and is also facing antitrust probes from the U.S. House of Representatives and the U.S. Department of Justice.

"Moderately Meeting" a lyric-searching user's intent, noting that "many pages [on lyrics websites] are not 100% accurate."

38.     For the lyrics appearing in Google's own Information Boxes, however, evaluators are instructed to score the results as "Fully Meeting" a lyric-searching user's intent—the highest possible score an evaluator may assign.

39.     The disconnect in the SQEG's rating guidance for Google's own lyrics Information Box versus websites like Genius appears to rely on the assumption that Google's lyrics Information Box content is more accurate.

40.     That assumption, however, does not bear out, as the lyrics featured in Google's Information Boxes are often inaccurate and, upon information and belief, Google takes no steps to either verify the accuracy of the data from its lyrics Information Box or establish the inaccuracy of lyrics appearing on competing websites such as Genius.

41.     For example, as shown below, Google's Information Box results display inaccurate lyrics for the song "Perfectly Wrong" performed by Shawn Mendes.  Genius's website, on the other hand, displays the accurate lyrics.

13



**Google Information Box lyrics (Inaccurate)**

**Genius lyrics (Accurate)**

42.     Moreover, many of the lyrics sites that Google deems of suspect accuracy license lyrics data from the same vendors Google contracts with to supply lyrics to its own lyrics Information Boxes.  Notably, the lyrics site azlyrics.com, which is used in the SQEG example described in paragraph 37 above, is powered by lyrics data vendor Musixmatch.  Musixmatch is, upon information and belief, a lyrics data vendor used by Google to provide lyrics for its lyrics Information Boxes.

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 23 of 59 PageID #: 23

43.     Elsewhere in its SQEG, Google makes clear that it places little to no value on copied

content:

> The Lowest rating is appropriate if all or almost all of the [Main Content] on the
> page is copied with little or no time, effort, expertise, manual curation, or added
> value for users.  Such pages should be rated Lowest, even if the page assigns credit
> for the content to another source.

44.     Accordingly, based on Google's own guidance to search evaluators, a reasonable

person would expect that Google's search engine would disfavor copied content obtained without

permission and consequently rank it lower on search engine results pages.

45.     In reality, however, upon information and belief, Google's Information Box lyrics

results are displayed above all other search results without regard to their accuracy and without

any evaluation of whether they are copied from another source, such as Genius's website.

## IV.     Genius Suspects Misappropriation

46.     In 2014, when Google initially rolled out its Information Box feature in lyrics

search results, Genius observed that the lyrics results were often inaccurate.

47.     When Genius observed lyrics Information Boxes that were accurate, Genius also

observed that the lyrics in those Information Boxes were sometimes identical, on a character-for-

character basis, with those displayed on Genius's website.

48.     As previously discussed, given the fact that most lyrics are transcribed after

listening to the sound recording, it is highly unlikely that another source of lyrics would be a

character-for-character match—including punctuation, contractions, and line breaks—with lyrics

appearing on Genius's website, without having been copied from Genius's website. This is

especially true for certain music genres such as hip-hop, which often features songs with especially

intricate lyrics.

49.     The lyrics Information Box on Google for the Desiigner song "Panda" was one of

the first Information Boxes to cause Genius to suspect lyrics from its website were being

15

misappropriated.

50.     Specifically, the lyrics to "Panda" displayed in the Information Box on Google and observed by Genius on June 8, 2016 matched exactly, on a character-for-character basis, the lyrics to "Panda" featured on Genius's website as of May 16, 2016 (the "May 2016 Genius Panda Lyrics").

51.     This observation suggested to Genius that Google's lyrics Information Box for "Panda" on June 8, 2016 featured lyrics misappropriated from Genius's website.[4]

52.     Having observed an exact copy of lyrics from its website in Google's lyrics Information Box, Genius sought to determine who might be responsible for the apparent misappropriation.

53.     As of June 8, 2016, Genius was aware of two companies engaged in the business of licensing lyrics for display on the web: LyricFind and Musixmatch.

54.     As of June 8, 2016, Genius was not aware of any lyrics data licensing arrangement between Google and LyricFind or Google and Musixmatch.  Given, however, their prominence in the lyrics data licensing business, Genius sought to determine if LyricFind or Musixmatch was responsible for the misappropriation of the lyrics to "Panda" from Genius's website for display in Google's lyrics Information Box.

55.     On or about June 8, 2016, upon information and belief, the lyrics to "Panda" featured on the website metrolyrics.com were licensed for display from LyricFind, and the lyrics to "Panda" featured on the website azlyrics.com were licensed lyrics for display from Musixmatch.

56.     By observing the lyrics to "Panda" featured on metrolyrics.com and azlyrics.com on or about June 8, 2016, Genius could attempt to determine if LyricFind or Musixmatch had

---

[4] It is possible that Google started displaying the lyrics in question before June 8, 2016; however June 8, 2016 was the day Genius first recorded those lyrics in Google's lyrics Information Box.

provided the May 2016 Genius Panda Lyrics to Google. If the lyrics to "Panda" from metrolyrics.com on or about June 8, 2016 matched the May 2016 Genius Panda Lyrics, that would suggest that LyricFind had misappropriated the lyrics to "Panda" from Genius's website and was providing them to Google. If the lyrics to "Panda" from azlyrics.com on or about June 8, 2016 matched the May 2016 Genius Panda Lyrics, that would suggest that Musixmatch had misappropriated the lyrics to "Panda" from Genius's website and was providing them to Google.

57.     On or about June 8, 2016, upon information and belief, neither the lyrics to "Panda" featured on metrolyrics.com, nor the lyrics to "Panda" featured on azlyrics.com matched the May 2016 Genius Panda Lyrics.

58.     Indeed, on or about June 8, 2016, upon information and belief, the only place on the internet that Genius could find an exact copy of the May 2016 Genius Panda Lyrics, was in Google's lyrics Information Box. This fact suggested to Genius that Google was directly responsible for misappropriating lyrics from Genius's website.[5]

## V.     Google and LyricFind Are Caught "Red-Handed"

59.     Based on the observations of Google's lyrics Information Boxes described above, in August 2016, Genius devised a digital watermark to embed in certain lyrics appearing on its site.

60.     This watermark ("Watermark #1") involved replacing the apostrophes in a selection of newly released songs with a distinctive pattern of curly (') and straight apostrophes (').[6] Genius set the 2nd, 5th, 13th, 14th, 16th and 20th apostrophes of each watermarked song as curly

---

[5] Google has subsequently populated the lyrics Information Box for "Panda" with lyrics attributed to LyricFind. These lyrics contain a notable inaccuracy: Desiigner raps "Man I'm the **macho** like Randy," a reference to the late WWE superstar Randy "Macho Man" Savage. As of December 2, 2019, Google's lyrics Information Box for "Panda" renders this lyric incorrectly as "Man I'm the **mocho** like Randy." As of June 8, 2016, when Google's lyrics Information Box for "Panda" matched the May 2016 Genius Panda Lyrics, the lyrics Information Box included the correct line "Man I'm the **macho** like Randy."

[6] The Unicode character code for the curly apostrophe is U+2019 and the Unicode character code for the straight apostrophe is U+0027.

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 26 of 59 PageID #: 26

apostrophes, and all the other apostrophes straight. If the straight apostrophes are interpreted as dots and the curly apostrophes are interpreted as dashes, the pattern spells out "REDHANDED" in Morse code, as shown below. Genius designed Watermark #1 to be woven into the text of the lyrics of the watermarked songs so that, if the apostrophe pattern were to be found outside of Genius's website, there would be no explanation other than that the lyrics were copied from Genius's website, *e.g.*, by using the copy/paste functionality or a computer program.

# Lyrics on Genius.com
# Watermark #1

# Song: "Not Today"
# by Alessia Cara

### Watermark #1
### "REDHANDED"



Straight
Apostrophe



Curly
Apostrophe

| Apostrophe Number | Apostrophe Type | Morse Code | English |
|---|---|---|---|
| 1 | ○ Straight | Dot | |
| 2 | ▽ Curly | Dash | **R** |
| 3 | ○ Straight | Dot | |
| 4 | ○ Straight | Dot | **E** |
| 5 | ▽ Curly | Dash | |
| 6 | ○ Straight | Dot | **D** |
| 7 | ○ Straight | Dot | |
| 8 | ○ Straight | Dot | |
| 9 | ○ Straight | Dot | **H** |
| 10 | ○ Straight | Dot | |
| 11 | ○ Straight | Dot | |
| 12 | ○ Straight | Dot | |
| 13 | ▽ Curly | Dash | **A** |
| 14 | ▽ Curly | Dash | |
| 15 | ○ Straight | Dot | **N** |
| 16 | ▽ Curly | Dash | |
| 17 | ○ Straight | Dot | **D** |
| 18 | ○ Straight | Dot | |
| 19 | ○ Straight | Dot | **E** |
| 20 | ▽ Curly | Dash | |
| 21 | ○ Straight | Dot | **D** |
| 22 | ○ Straight | Dot | |



[Verse 1]
Someday I won't be afraid of my head
Someday I will not be chained to my bed
Someday I'll forget the day he left
But surely not today
One day I won't need a PhD
To sit me down and tell me what it all means
Maybe one day I'll be a breeze, ah
But surely not today, but surely not today

[Chorus]
Oh, you don't know what sadness means
'Til you're too sad to fall asleep
One day I'll be snoozing peacefully
But surely not today, surely not today

[Verse 2]
One day I'll swear the pain will be a blip
I'll have the hardest time recalling it
I'll be the king of misery management
But surely not today
One day that song won't make me cry anymore
(Oh no no)
One day I'll get up off the bathroom floor (Hey, yeah)
Oh, piece by piece I'll be restored
But surely not today, surely not
Eh, not today

[Chorus]
Oh, you don't know what happy means
If I only in your dreams
I'll be acquainted with my jollities
But surely not today, yeah, surely not today

[Bridge]
Surely not-, surely, surely not-
Surely not-, surely not today

[Outro]
One day the thought of him won't hurt the same
Won't need distractions to get through the day
I guess I hope I'm gonna be okay
'Cause I'm not today

*Screenshot from: November 25, 2019

61.     Over the next several months, Genius informally monitored Google's lyrics Information Boxes and sometimes encountered lyrics on Google that featured Watermark #1.

62.     In or about May 2017, Genius first put Google on notice about the appearance of Watermark #1 in its lyrics Information Boxes.  In an email, Genius provided Google with an example of a song (Kendrick Lamar's "PRIDE.") that featured Watermark #1, explaining that the presence of the watermark irrefutably proved that Google was displaying lyrics copied from Genius's website in its lyrics Information Boxes.  Genius received a response saying "Give me a week on this to figure out what is going on on our side."

63.     Genius followed up with multiple executives at Google and, while they would repeatedly indicate to Genius that they were looking into the issue, no explanation was ever given for the appearance of content in Google's lyrics Information Boxes that unquestionably originated from Genius's website.

64.     In or about October 2018, Genius designed an experiment to more systematically assess the incidence of lyrics misappropriated from Genius's website in Google's lyrics Information Boxes.  Specifically, Genius embedded Watermark #1 in the lyrics for a random sample of new songs that appeared on Genius.  In order to be included in the sample a song had to (1) have lyrics in English or Spanish, (2) feature a sufficient number of apostrophes to support Watermark #1, and (3) meet a popularity threshold.  Genius randomly applied Watermark #1 to a percentage of new songs meeting the criteria for inclusion in the sample.

65.     Once a song became part of the watermarked sample set, Genius searched for its lyrics every day on Google, and recorded whether the lyrics Information Box was present.  If the lyrics Information Box was present, Genius recorded whether the lyrics displayed by Google therein featured Watermark #1.

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 29 of 59 PageID #: 29

66.     From October 2018 through December 2018, a total of 301 songs were included in Genius's Watermark #1 sample set.  Of those 301 songs, Google provided lyrics Information Boxes for 271 (90%) of them.  Of those 271 Information Boxes, 116 (43%) showed clear evidence of matching Watermark #1—the distinctive pattern of curly and straight apostrophes described above.  An example of a lyrics Information Box featuring Watermark #1 observed by Genius during this period is shown below.

FILED: KINGS COUNTY CLERK 12/03/2019 10:25 AM INDEX NO. 526241/2019

NYSCEF DOC. NO. 1 Case 1:19-cv-07279-MKB-VMS Document 1 Filed 12/30/19 Page 30 of 59 PageID #: 30 RECEIVED NYSCEF: 12/03/2019

## Lyrics in Google's Information Box Watermark #1

## Song: "Not Today" by Alessia Cara

Watermark #1
"REDHANDED"



**Straight Apostrophe**



**Curly Apostrophe**



*Screenshot from: June 6, 2019

67.     Based on the above evidence, Genius concluded that the incidence of lyrics irrefutably copied from Genius's website in Google's lyrics Information Boxes was widespread and that the copying was systematic.

68.     On April 22, 2019, Genius again notified Google, in writing, that it was displaying content misappropriated from Genius's website.  In that letter, Genius provided an example of the lyrics displayed in an Information Box that contained Watermark #1, noted that there were additional examples reflecting the same concern, and demanded that Google cease and desist from displaying lyrics misappropriated from Genius's website.

69.     In response to Genius's April 22 letter, Google wrote to "reassure [Genius] that the lyrics in our lyric [Information Boxes] are obtained through several licensors not through scraping."  Google requested 20 or more examples of the misappropriated content so that Google "can better address your concerns," which Genius provided.

70.     Google subsequently identified LyricFind as the source of the lyrics from the examples that Genius provided to Google.[7]

71.     As a result, on April 30, 2019, Genius wrote to LyricFind to request that it cease and desist from the misappropriation and commercialization of content appearing on Genius's website, which violates Genius's Terms of Service as well as New York and California law.

72.     Notwithstanding that both Google and LyricFind made use of lyrics that unquestionably originated from Genius's website—obtained in violation of its Terms of Service[8]—and were placed on actual notice of their behavior, upon information and belief, neither Google nor LyricFind took any steps to cease such conduct.

---

[7] Genius had long suspected that LyricFind was misappropriating lyrics from Genius's website. In fact, in August 2016 a Genius executive mentioned these concerns to LyricFind's CEO.

[8] Notably, Genius has been able to identify user accounts on Genius registered with email addresses associated with the corporate domains of both Google and LyricFind.

## VI.    Defendants' Inconsistent and Insufficient Response

73.    In the weeks following Genius's letters to both Google and LyricFind, the defendants continued business as usual with respect to the display of lyrics in Google's Information Boxes, including those bearing Watermark #1.

74.    On June 16, 2019, the *Wall Street Journal* published an article titled "Lyrics Site Accuses Google of Lifting Its Content," outlining Google and LyricFind's misappropriation of lyrics from Genius's website.    *See Lyrics Site Accuses Google of Lifting Its Content*, The Wall Street Journal, June 16, 2019 (attached hereto as **Exhibit B**).

75.    In connection with reporting on the article, both Google and LyricFind were contacted by reporters from the *Wall Street Journal* and other press outlets for comment. LyricFind's Chief Executive Officer maintained "we do not source lyrics from Genius."  Google asserted, "[w]e take data quality and creator rights very seriously and hold our licensing partners accountable to the terms of our agreement" and soon after issued a second statement saying: "We're investigating this issue with our data partners and if we find that partners are not upholding good practices we will end our agreements."

76.    The *Wall Street Journal* article attracted significant discussion in the technology and music communities and, within days, both Google and LyricFind issued statements in response.

77.    In a June 18, 2019 blog post, Google wrote, in relevant part:

News reports this week suggested that one of our lyrics content providers is in a dispute with a lyrics site about where their written lyrics come from.  We've asked our lyrics partner to investigate the issue to ensure they're following industry best practices in their approach.  We always strive to uphold high standards of conduct for ourselves and from the partners we work with.

78.    Google recited its commitments to "upholding high standards" and policing its content partners to "ensure they're following industry best practices in their approach," despite

24

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 33 of 59 PageID #: 33

knowing, from numerous emails, meetings, and conversations with Genius dating back to 2017, that lyrics which appear in Google's Information Boxes were watermarked and, accordingly, irrefutably misappropriated from Genius's website.

79.     No "high standard" or "industry best practice" includes the wholesale misappropriation of content from another company's website.

80.     Indeed, Google's own SQEG provide that copied content receives the lowest rating. These "high standards" apparently do not apply to Google or its own money-making products, including Google Search.[9]

81.     Shortly after the publication of the *Wall Street Journal* article, and seemingly in an effort to divert attention away from Google's knowing exploitation of misappropriated content, Google revised its lyrics Information Box search results to display the name of the data licensing partner from whom Google sources its displayed lyrics. Significantly, however, all but one of the twenty-one lyrics Information Box examples that Genius provided to Google in April 2019— which all contain lyrics that were irrefutably misappropriated from Genius's website—are now attributed to LyricFind, not Genius.[10]

## VII.    Defendants' Knowing and Continued Misappropriation of Content From Genius's Website and the Apparent Attempt to Conceal that Misappropriation

82.     Shortly after the publication of the *Wall Street Journal* article, Genius discovered that Watermark #1 had disappeared from Google's lyrics Information Boxes.

83.     The wholesale removal of Watermark #1 following the publicity of the *Wall Street Journal* article suggested to Genius that a deliberate effort was being made to conceal the

---

[9] Moreover, the SQEG provide that lyrics websites like Genius should be given a middling quality rating, but that Google's lyrics Information Boxes should be given the highest possible rating. This leads to the preposterous and hypocritical conclusion that in the act of misappropriating lyrics from Genius's website, those lyrics also inexplicably increased in quality such that they now merit the highest possible search quality rating.

[10] For one of those 21 examples—"Redlight" by A$AP Ferg and NGHTMRE—Google no longer displays a lyrics Information Box as of December 2, 2019.

INDEX NO. 526241/2019

NYSCEF DOC. NO. 1

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 34 of 59 PageID #: 34

RECEIVED NYSCEF: 12/03/2019

misappropriation of lyrics from Genius's website, and Genius suspected that it was likely such misappropriation was continuing unabated.

84.     In order to test this suspicion, in August 2019, Genius devised a second watermark ("Watermark #2").  This watermark involves replacing the 15th, 16th, 19th, and 25th spaces of each song's lyrics with a special whitespace character called a "four-per-em space."  This character (U+2005) looks identical to the normal "space" character (U+0020), but can be differentiated via Unicode character codes readable by a computer.  If one ignores the first 14 spaces of a song's lyrics, then interprets the four-per-em spaces as dashes, and regular spaces as dots, the sequence spells out the word "GENIUS" in Morse code, as shown below.

## Lyrics on Genius.com
## Watermark #2

## Song: "Lose You To Love Me"
## by Selena Gomez

Watermark #2
"GENIUS"



◇ U+0020
Normal Space

☐ U+2005
Four-per-em
Space

| Whitespace Number | Whitespace Character (Unicode) | Morse Code | English |
|---|---|---|---|
| 15 | ☐ U+2005 | Dash | |
| 16 | ☐ U+2005 | Dash | **G** |
| 17 | ◇ U+0020 | Dot | |
| 18 | ◇ U+0020 | Dot | **E** |
| 19 | ☐ U+2005 | Dash | |
| 20 | ◇ U+0020 | Dot | **N** |
| 21 | ◇ U+0020 | Dot | |
| 22 | ◇ U+0020 | Dot | |
| 23 | ◇ U+0020 | Dot | **I** |
| 24 | ◇ U+0020 | Dot | |
| 25 | ☐ U+2005 | Dash | **U** |
| 26 | ◇ U+0020 | Dot | |
| 27 | ◇ U+0020 | Dot | **S** |
| 28 | ◇ U+0020 | Dot | |

[Verse 1]

You promised the world and I fell for it

I put you first and you adored it

Set fire to my forest

And you let it burn

Sang off-key in my chorus

'Cause it wasn't yours

I saw the signs and I ignored it

Rose-colored glasses all distorted

Set fire to my purpose

And I let it burn

You got off on the hurtin'

When it wasn't yours, yeah

[Pre-Chorus]

We'd always go into it blindly

I needed to lose you to find me

This dancing was killing me softly

I needed to hate you to love me, yeah

*Screenshot from: November 25, 2019

INDEX NO. 526241/2019
NYSCEF DOC. NO. 1
Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 36 of 59 PageID #: 36
RECEIVED NYSCEF: 12/03/2019

85.     Next, a sample of lyrics on Genius's website was watermarked with the original watermark, Watermark #1 ("Group A").   Another sample of lyrics was watermarked with Watermark #2 ("Group B").  A final sample of lyrics was watermarked with both Watermark #1 and Watermark #2 ("Group C").

86.     Genius regularly monitored the Google lyrics Information Boxes for songs in all three of the above groups.  Genius did not observe Watermark #1 on any content in Google's lyrics Information Boxes.  Genius did, however, observe Watermark #2 on content in Group B and Group C.

87.     The frequency with which Watermark #2 appeared in Google's lyrics Information Boxes made clear that the misappropriation of lyrics from Genius's website was continuing unabated.  Based on an analysis of the incidence of Watermark #2 in Information Boxes for songs in Groups B and C, Genius estimates that approximately 40% of lyrics for new music displayed in the Information Boxes feature lyrics that are being unlawfully misappropriated from Genius's website.  An example of a lyrics Information Box featuring Watermark #2 observed by Genius is shown below.

FILED: KINGS COUNTY CLERK 12/03/2019 10:25 AM          INDEX NO. 526241/2019

NYSCEF DOC. NO. 1          Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 37 of 59 PageID #: 37          RECEIVED NYSCEF: 12/03/2019

## Lyrics in Google's Information Box Watermark #2

## Song: "Lose You To Love Me" by Selena Gomez



**Watermark #2 "GENIUS"**

U+0020
Normal Space

U+2005
Four-per-em Space



*Screenshot from: November 26, 2019

88.    Even more egregious, with regard to lyrics in Group C (lyrics featuring both Watermark #1 and Watermark #2), Genius identified numerous instances in which Watermark #1 was not present in Google's lyrics Information Box, yet the same lyrics featured Watermark #2, the details of which had not previously been made public.  An example is shown below.

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 39 of 59 PageID #: 39

## Watermark #1 and Watermark #2 present



*Watermark #1 truncated due to excerpted lyrics.
*Screenshot from: November 25, 2019

## Watermark #1 removed, Watermark #2 remains



*Screenshot from: November 26, 2019






INDEX NO. 526241/2019
NYSCEF DOC. NO. 1
Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 40 of 59 PageID #: 40
RECEIVED NYSCEF: 12/03/2019

89. In other words, Genius has identified a number of Google's Information Boxes that feature lyrics misappropriated from Genius's website that originally had two watermarks embedded in them (Watermarks #1 and #2), and now—when displayed in Google's Information Boxes—no longer feature the publicly-known watermark (Watermark #1) while retaining the second, previously non-public watermark (Watermark #2). This pattern suggested to Genius that a deliberate effort was being made to conceal the misappropriation of lyrics from Genius's website.

90. On November 6, 2019, Genius notified Google that: (a) it had devised another watermark and performed another experiment which demonstrated that lyrics for new music displayed in the Information Boxes were still being misappropriated from Genius's website; and (b) for numerous songs, the publicly-known Watermark #1 appeared to have been systematically removed from Google's lyrics Information Boxes while the non-public Watermark #2 remained. Accordingly, Genius demanded that Google stop displaying lyrics misappropriated from Genius's website and address the issue.

91. On December 2, 2019, Google's attorneys responded to Genius, stating that "Google has done nothing wrong" and continuing to assign all responsibility to their data licensing partners. Google made no mention of their purported "investigation," other than to assert that they "obtained additional assurances" that their data partners "do not, and would not, obtain lyrics from Genius's website."

## VIII. Selena Gomez's "Lose You To Love Me"—A Case Study in Misappropriated Lyrics

92. On October 23, 2019 at 12am EDT, Selena Gomez released a new single, "Lose You To Love Me." The song would go on to reach the #1 position on the Billboard Hot 100 for the week of November 9, 2019.

93. By October 23, 2019 at 10:34am EDT, a Genius staff member had marked the lyrics to "Lose You To Love Me" as complete and accurate.

94.     On October 23, 2019, the lyrics to "Lose You To Love Me" received more than 600,000 views on Genius.

95.     Upon information and belief, for the period between October 23, 2019 and November 2, 2019, Genius's lyrics page for "Lose You To Love Me" was the first organic search result on Google for the search query *lose you to love me lyrics*.

96.     Due to Genius's placement in Google's search results, approximately 75% of users who searched Google for *lose you to love me lyrics* between October 23 and November 2, 2019, clicked through to Genius.  This traffic made "Lose You To Love Me" the #1 song on Genius's website for the month of October 2019.

97.     On November 3, 2019, upon information and belief, Google began displaying a lyrics Information Box above all organic search results for the query *lose you to love me lyrics*.

98.     The lyrics in Google's Information Box for "Lose You To Love Me" contained Genius's Watermark #2 (based on the special four-per-em whitespace character), irrefutably demonstrating that these lyrics were misappropriated from Genius's website.

99.     On November 4, 2019, after the Information Box for "Lose You To Love Me" appeared, the click-through rate to Genius for the search query *lose you to love me lyrics* dropped from 75% to 5%, as shown below.

33

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 42 of 59 PageID #: 42



Genius click-through rate for query
*lose you to love me lyrics*

Google's lyrics Information Box
displaying lyrics misappropriated
from Genius's website appeared
on November 3, 2019

## IX.  Defendants' Actions Harm Genius

100.    Google web searches are a primary driver of traffic to Genius's website.

101.    When Genius is the first organic result for a lyrics search query on Google, and Google does not display an Information Box above the organic search results, the click-through rate to Genius's website is between 60% and 80%.

102.    However, when Genius is the first organic result for a lyrics query, but a lyrics Information Box is displayed above the organic search results, the click-through rate to Genius's website plummets to between 5% and 20%.

103.    Genius sells advertising on its website and traffic to Genius's website is a key driver of revenue for the company.

34

104.    The economic impact on Genius is all the more galling because, as described above, in many cases Google's lyrics Information Boxes display content misappropriated from Genius's website for which Genius receives no compensation and, indeed, suffers a monetary loss.

105.    Moreover, Genius is placed at an unfair competitive disadvantage in the market for the licensing and display of lyrics because Defendants, who have misappropriated content from Genius's website, use it to gain unfair advantages.

106.    For example, LyricFind is able to expand and improve upon its database of lyrics—which it licenses to other companies, including Google—without the investment of time, effort and resources necessary to actually transcribe lyrics.  Instead, LyricFind improperly freerides on the efforts of Genius, a competitor, in violation of Genius's Terms of Service.

107.    Google, meanwhile, is able to entrench its dominance by capturing users in its ecosystem who previously would have used Google Search to be directed to a third-party website, such as Genius's.  By displaying a lyrics Information Box in response to a user's search, users stay within Google's ecosystem, where Google can monetize those users.  For example, Google might lead the user to watch the song's music video on YouTube, where Google is able to sell ads and further monetize the user's search query.

108.    The design and placement of Google's Information Box search results underscore Google's ongoing displacement of third-party websites.  Google prominently displays the Information Box results at a size sufficient, in many instances, to squeeze out organic search results from the search engine results page unless a user scrolls down.

109.    Upon information and belief, Google is well aware of the deleterious effect to web publishers of their placing organic search results further down on results pages, which is to

materially decrease web traffic to those publishers and associated advertising revenue.[11]

110.    Accordingly, Google's knowing placement of lyrics Information Boxes containing content misappropriated from Genius's website despite Google's own professed disfavoring of copied content is deceptive and anticompetitive.

## AS AND FOR A FIRST CAUSE OF ACTION
### *(Breach of Contract, as against LyricFind)*

111.    Plaintiff repeats and realleges paragraphs 1 through 110 as if set forth fully herein.

112.    Access to and use of Genius's website, including the content appearing on its website, is subject to the Genius Terms of Service, which were last updated on March 13, 2014. Genius's Terms of Service are accessible from every page of its website by a link in the footer reading "Terms of Use."

113.    Per the Genius Terms of Service, "[b]y accessing or using the Service, you signify that you have read, understand and agree to be bound by the terms of service and conditions set forth below. . . . Registration may not be required to view content on the Service, but unregistered Users are bound by these Terms."

114.    Upon information and belief, since at least 2016, LyricFind and those working at LyricFind's direction accessed Genius's website and are bound by its Terms of Service.

115.    In relevant part, the Terms of Service provide:

**Commercial Use:** Unless otherwise expressly authorized herein or by Genius' express written consent, you agree not to display, distribute, license, perform, publish, reproduce, duplicate, copy, create derivative works from, modify, sell, resell, exploit, transfer or transmit for any commercial purpose, any portion of the Service, or access to the Service.  The Service is for your personal use and may not be used for direct commercial endeavors without the express written consent of Genius.

116.    Notwithstanding the foregoing, since at least 2016, LyricFind has accessed the

---

[11] In fact, due to Google's dominant market position in digital advertising technology, Google may be able to measure the impact of search placement and Information Boxes on Genius's revenue via the data in Google Ad Manager and Google Ad Exchange.

Genius website to copy, modify, sell and/or transmit content appearing on Genius's website for commercial purposes, including, but not limited to, licensing such content for display in Google's lyrics Information Box search results.

117.    At no point has Genius provided its express written consent to LyricFind to engage in any of these (or any other) actions.

118.    Accordingly, LyricFind's conduct breaches Genius's Terms of Service regarding commercial use.

119.    In relevant part, the Terms of Service further provide:

Except as expressly authorized by Genius in writing, you agree not to modify, copy, frame, scrape, rent, lease, loan, sell, distribute or create derivative works based on the Service of the Genius Content, in whole or in part, except that the foregoing does not apply to your own User Content that you legally upload to the Service.

120.    Upon information and belief, notwithstanding the foregoing, since at least 2016, LyricFind has accessed the Genius website to copy, modify, sell and/or distribute content appearing on Genius's website that LyricFind did not upload.

121.    At no point has Genius provided authorization in writing to LyricFind to engage in any of these (or any other) actions.

122.    Accordingly, LyricFind's conduct breaches Genius's Terms of Service regarding the copying and reproduction of Genius Content.

123.    As a result of these breaches of the Terms of Service by LyricFind, Genius has suffered damages in an amount to be proven at trial in this matter, but in no event less than $50 million, including, but not limited to, lost licensing and advertising revenue.

## AS AND FOR A SECOND CAUSE OF ACTION
### (*Indemnification, as against LyricFind*)

124.    Plaintiff repeats and realleges paragraphs 1 through 123 as if set forth fully herein.

37

125.    In relevant part, the Genius Terms of Service provide:

You agree to defend, indemnify and hold harmless Genius and its subsidiaries, agents, licensors, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, injury (including death), costs or debt, and expenses (including but not limited to attorney's fees) arising from or relating to: (i) your use of and access to the Service, including any data or content transmitted or received by you; (ii) your violation of any term or condition of these Terms, including without limitation your breach of any of the representations and warranties above; (iii) your violation of any third-party right, including without limitation any right of privacy or Intellectual Property Rights; (iv) your violation of any applicable law, rule or regulation; (v) your User Content or any that is submitted via your account; or (vi) any other party's access and use of the Service with your unique username, password or other appropriate security code. For the avoidance of doubt, your indemnity obligations include, without limitation, claims against Genius that any of your User Content infringes a third party's Intellectual Property Rights.

126.    As a result of LyricFind's breaches of the Terms of Service, Genius has suffered damages and incurred expenses for which it is entitled to indemnity under the Terms of Service, including, but not limited to, its attorneys' fees and lost advertising and licensing revenue.

127.    Accordingly, Genius is entitled to judgment against LyricFind in an amount to be proven at trial for these damages and expenses, but in no event less than $50 million.

## AS AND FOR A THIRD CAUSE OF ACTION
### *(Breach of Contract, as against Google)*

128.    Plaintiff repeats and realleges paragraphs 1 through 127 as if set forth fully herein.

129.    Access to and use of Genius's website, including the content appearing on its website, is subject to Genius's Terms of Service, which were last updated on March 13, 2014. Genius's Terms of Service are accessible from every page of its website by a link in the footer reading "Terms of Use."

130.    Per the Genius Terms of Service, "[b]y accessing or using the Service, you signify that you have read, understand and agree to be bound by the terms of service and conditions set

forth below. . . . Registration may not be required to view content on the Service, but unregistered Users are bound by these Terms."

131.    Upon information and belief, since at least 2016, Google and those working at Google's direction accessed Genius's website and are bound by its Terms of Service.

132.    In relevant part, the Terms of Service provide:

> **Commercial Use:** Unless otherwise expressly authorized herein or by Genius' express written consent, you agree not to display, distribute, license, perform, publish, reproduce, duplicate, copy, create derivative works from, modify, sell, resell, exploit, transfer or transmit for any commercial purpose, any portion of the Service, or access to the Service.  The Service is for your personal use and may not be used for direct commercial endeavors without the express written consent of Genius.

133.    Notwithstanding the foregoing, upon information and belief, since at least 2016, Google has accessed the Genius website to copy, modify, sell and/or transmit content appearing on Genius's website for commercial purposes, including, but not limited to, displaying such content in Google's lyrics Information Box search results.

134.    At no point has Genius provided its express written content to Google to engage in any of these (or any other) actions.

135.    Accordingly, Google's conduct breaches Genius's Terms of Service regarding commercial use.

136.    In relevant part, the Terms of Service further provide:

> Except as expressly authorized by Genius in writing, you agree not to modify, copy, frame, scrape, rent, lease, loan, sell, distribute or create derivative works based on the Service of the Genius Content, in whole or in part, except that the foregoing does not apply to your own User Content that you legally upload to the Service.

137.    Upon information and belief, notwithstanding the foregoing, since at least 2016, Google has accessed the Genius website to copy, modify, sell and/or distribute content appearing on Genius's website that Google did not upload.

138.    At no point has Genius provided authorization in writing to Google to engage in any of these (or any other) actions.

139.    Accordingly, Google's conduct breaches Genius's Terms of Service regarding the copying and reproduction of Genius Content.

140.    As a result of these breaches of the Terms of Service by Google, Genius has suffered damages in an amount to be proven at trial in this matter, but in no event less than $50 million, including, but not limited to, lost licensing and advertising revenue.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (*Indemnification, as against Google*)

141.    Plaintiff repeats and realleges paragraphs 1 through 140 as if set forth fully herein.

142.    In relevant part, the Genius Terms of Service provide:

You agree to defend, indemnify and hold harmless Genius and its subsidiaries, agents, licensors, managers, and other affiliated companies, and their employees, contractors, agents, officers and directors, from and against any and all claims, damages, obligations, losses, liabilities, injury (including death), costs or debt, and expenses (including but not limited to attorney's fees) arising from or relating to: (i) your use of and access to the Service, including any data or content transmitted or received by you; (ii) your violation of any term or condition of these Terms, including without limitation your breach of any of the representations and warranties above; (iii) your violation of any third-party right, including without limitation any right of privacy or Intellectual Property Rights; (iv) your violation of any applicable law, rule or regulation; (v) your User Content or any that is submitted via your account; or (vi) any other party's access and use of the Service with your unique username, password or other appropriate security code. For the avoidance of doubt, your indemnity obligations include, without limitation, claims against Genius that any of your User Content infringes a third party's Intellectual Property Rights.

143.    As a result of Google's breaches of the Terms of Service, Genius has suffered damages and incurred expenses for which it is entitled to indemnity under the Terms of Service, including, but not limited to, its attorneys' fees and lost advertising and licensing revenue.

144.    Accordingly, Genius is entitled to judgment against Google in an amount to be proven at trial for these damages and expenses, but in no event less than $50 million.

40

## AS AND FOR A FIFTH CAUSE OF ACTION
### (*New York Common Law Unfair Competition, as against LyricFind*)

145.    Plaintiff realleges paragraphs 1 through 144 as if set forth fully herein.

146.    Despite publicly touting itself as a purveyor of quality lyrics that are transcribed, compiled and/or edited by a "global content team," LyricFind in fact misappropriates content from other sources, including Genius's website.

147.    In fact, watermarking performed by Genius on a sample of songs over a fixed period of time revealed that LyricFind misappropriated content from Genius's website to such an extent that Genius estimates that approximately 40% of lyrics for new music displayed in Google's Information Boxes that are attributed to LyricFind feature lyrics misappropriated from Genius's website.

148.    Upon information and belief, LyricFind's copying activities are widespread and belie any notion of accidental or unintentional copying.

149.    Even after Genius notified LyricFind about the watermarked lyrics and the ongoing misappropriation of content from Genius's website, LyricFind, in bad faith, knowingly continued to license lyrics to Google that unquestionably originated from Genius's website.

150.    Furthermore, the disappearance of Watermark #1 from content irrefutably misappropriated from Genius's website following the publicity of the *Wall Street Journal* article, seemingly in order to conceal the misappropriation of content from Genius's website, further evidences LyricFind's bad faith conduct.

151.    Moreover, LyricFind's misappropriation of content from Genius's website and its subsequent commercialization of that content is in direct violation of Genius's Terms of Service.

152.    LyricFind markets its database of "high-quality" lyrics to companies, such as Google, who contract with LyricFind to display those lyrics in products such as Google's Information Box search results.

41

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 50 of 59 PageID #: 50

153.   LyricFind receives substantial compensation from its partners for displaying lyrics, including those it misappropriated from Genius's website.

154.   Such activities constitute an unjustifiable attempt to profit from Genius's expenditure of time, labor and talent in maintaining its service and, accordingly, constitute unfair competition in the State of New York.

155.   Accordingly, Genius is entitled to a permanent injunction against LyricFind prohibiting the continued misappropriation of content from Genius's website, including the licensing of such content to third parties, such as Google, as well as a money judgment against LyricFind in an amount to be proven at trial in this action, but in no event less than $50 million.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(*California Unfair Competition, Cal. Bus. & Prof. Code § 17200 et seq., as against LyricFind*)**

156.   Plaintiff realleges paragraphs 1 through 155 as if set forth fully herein.

157.   Despite publicly touting itself as a purveyor of quality lyrics that are transcribed, compiled and/or edited by a "global content team," LyricFind in fact misappropriates content from other sources, including Genius's website.

158.   In fact, watermarking performed by Genius on a sample of songs over a fixed period of time revealed that LyricFind misappropriated content from Genius's website to such an extent that Genius estimates that more than 40% of lyrics for new music displayed in Google's Information Boxes that are attributed to LyricFind feature lyrics misappropriated from Genius's website.

159.   Upon information and belief, LyricFind's copying activities are widespread and belie any notion of accidental or unintentional copying.

160.   Even after Genius notified LyricFind about the watermarked lyrics and the ongoing misappropriation of content from Genius's website, LyricFind, in bad faith, knowingly continued to license lyrics to Google that unquestionably originated from Genius's website.

42

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 12/03/2019

161.    Furthermore, the disappearance of Watermark #1 from content irrefutably misappropriated from Genius's website following the publicity of the *Wall Street Journal* article, seemingly in order to conceal the misappropriation of content from Genius's website, further evidences LyricFind's bad faith conduct.

162.    Moreover, LyricFind's copying of content from Genius's website and its subsequent commercialization is in direct violation of Genius's Terms of Service.

163.    LyricFind markets its database of "high-quality" lyrics to companies, such as Google, who contract with LyricFind to display those lyrics in products such as Google's Information Box search results.

164.    LyricFind receives substantial compensation from its partners for displaying lyrics, including those it misappropriated from Genius's website.

165.    Such activities constitute an unjustifiable attempt to profit from Genius's expenditure of time, labor and talent in maintaining its service and, accordingly, constitute unfair competition in the State of California.

166.    Accordingly, Genius is entitled to a permanent injunction against LyricFind prohibiting the continued misappropriation of content from Genius's website, including the licensing of such content to third parties, such as Google.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (*New York Common Law Unfair Competition, as against Google*)

167.    Plaintiff repeats and realleges paragraphs 1 through 166 as if fully set forth herein.

168.    Google's display of the Information Box in response to lyrics-related queries significantly harms competition in the market for the licensing and display of music lyrics.

169.    Google has designed its Information Box in a way that keeps users within the Google ecosystem on the back of content misappropriated from Genius's website.

43

NYSCEF DOC. NO. 1          Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 52 of 59 PageID #: 52          RECEIVED NYSCEF: 12/03/2019

170.    In response to lyrics-related queries, Google presents users with an Information Box that discourages users from clicking through to third-party websites linked on the search engine results page, such as Genius.

171.    Genius is placed at an unfair competitive disadvantage in the market for the licensing and display of lyrics because Google uses content misappropriated from Genius's website to gain unfair economic and competitive advantages.

172.    Following Google's institution of the lyrics Information Box, Genius has lost significant revenue as a result of the significantly decreased click-through rate to Genius's website.

173.    Meanwhile, Google has further entrenched its dominance by capturing users in its ecosystem who previously would have used Google Search to be directed to a third-party website, such as Genius's.  By displaying Information Box lyrics in response to a user's search, users stay on Google properties, where Google can monetize those users.

174.    In its SQEG, Google makes clear that it places little to no value on copied content.

175.    Accordingly, a reasonable person would expect that Google's search engine would disfavor copied content obtained without permission and consequently rank it lower on search engine results pages.

176.    In reality, however, Google's Information Box results display inaccurate lyrics, as well as lyrics that were unquestionably copied from Genius's website.

177.    The source, accuracy and overall quality of Google's Information Box results shown in response to lyrics-related queries are deceptive to users.

178.    Google's conduct constituting violations of its own guidelines is deceptive, unethical, oppressive, and unscrupulous.

44

179.     Genius receives no compensation for Google's display of content misappropriated from Genius's website in Google's lyrics Information Boxes. In fact, Genius suffers a monetary loss as a result of Google's lyrics Information Boxes.

180.     Google's aforementioned conduct was undertaken in furtherance of its business activities and practices.  Moreover, Google's actions were done knowingly and in bad faith, as demonstrated by Google's continued display of lyrics copied from Genius's website, even after Genius notified Google about its ongoing display of watermarked lyrics.

181.     Furthermore, the disappearance of Watermark #1 from content irrefutably misappropriated from Genius's website following the publicity of the *Wall Street Journal* article, seemingly in order to conceal the misappropriation of content from Genius's website, further evidences Google's bad faith conduct.

182.     Such activities constitute an unjustifiable attempt to profit from Genius's expenditure of time, labor and talent in maintaining its service and, accordingly, constitute unfair competition in the State of New York.

183.     Genius seeks injunctive relief against Google to prohibit these unfair practices from occurring in the future, as well as an award of damages in an amount to be proven at trial in this action, but in no event less than $50 million.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
***(California Unfair Competition, Cal. Bus. & Prof. Code § 17200 et seq., as against Google)***

184.     Plaintiff repeats and realleges paragraphs 1 through 183 as if fully set forth herein.

185.     Google's display of the Information Box in response to lyrics-related queries significantly harms competition in the market for the licensing and display of lyrics.

186.     Google has designed its Information Box in a way that keeps users within the Google ecosystem on the back of content misappropriated from Genius's website.

45

187.     In response to lyrics-related queries, Google presents users with an Information Box that discourages users from clicking through to third-party websites linked on the search engine results page, such as Genius.

188.     Genius is placed at an unfair competitive disadvantage in the market for the licensing and display of lyrics because Google uses content misappropriated from Genius's website to gain unfair economic and competitive advantages.

189.     Following Google's institution of the lyrics Information Box, Genius has lost significant revenue as a result of the significantly decreased click-through rate to Genius's website.

190.     Meanwhile, Google has further entrenched its dominance by capturing users in its ecosystem who previously would have used Google Search to be directed to a third-party website, such as Genius's.  By displaying Information Box lyrics in response to a user's search, users stay within Google's ecosystem, where Google can monetize those users.

191.     In its SQEG, Google makes clear that it places little to no value on copied content.

192.     Accordingly, a reasonable person would expect that Google's search engine would disfavor copied content obtained without permission and consequently rank it lower on search engine results pages.

193.     In reality, however, Google's Information Box results display inaccurate lyrics, as well as lyrics that were unquestionably copied from Genius's website.

194.     The source, accuracy and overall quality of Google's Information Box results shown in response to lyrics-related queries are deceptive to users.

195.     Google's conduct constituting violations of its own guidelines is deceptive, unethical, oppressive, and unscrupulous.

46

196.    Genius receives no compensation for Google's display of content misappropriated from Genius's website in Google's lyrics Information Boxes. In fact, Genius suffers a monetary loss as a result of Google's lyrics Information Boxes.

197.    Google's aforementioned conduct was undertaken in furtherance of its business activities and practices.  Moreover, Google's actions were done knowingly and in bad faith, as demonstrated by Google's continued display of lyrics misappropriated from Genius's website, even after Genius notified Google about its ongoing display of watermarked lyrics.

198.    Furthermore, the disappearance of Watermark #1 from content irrefutably misappropriated from Genius's website following the publicity of the *Wall Street Journal* article, seemingly in order to conceal the misappropriation of content from Genius's website, further evidences Google's bad faith conduct.

199.    Genius seeks a permanent injunction against Google to prohibit these unfair practices from occurring in the future.

### AS AND FOR A NINTH CAUSE OF ACTION
#### (*Unjust Enrichment, as against Google*)

200.    Plaintiff repeats and realleges paragraphs 1 through 199 as if fully set forth herein.

201.    Through Google's misappropriation of content from Genius's website, Google benefitted by, among other things, retaining users in and among Google-owned properties further concentrating its market power.

202.    The benefits to Google as a result of its misappropriation of content from Genius's website came at Genius's expense.  Namely, because of Google's misappropriation, Genius has suffered (and continues to suffer) decreased web traffic and associated revenue.

203.    Equity and good conscience require recompense in favor of Genius for Google's misappropriation of content from Genius's website.  It contravenes equity and the public policy of New York to permit a party to misappropriate the labors and investments of another.

Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 56 of 59 PageID #: 56

204.     Accordingly, Genius is entitled to a money judgment against Google in an amount to be proven at trial in this action, but in no event less than $50 million.

## AS AND FOR A TENTH CAUSE OF ACTION
### (*Unjust Enrichment, as against LyricFind*)

205.     Plaintiff repeats and realleges paragraphs 1 through 204 as if fully set forth herein.

206.     Through LyricFind's misappropriation of content from Genius's website, LyricFind benefitted by, among other things, entering into licensing agreements with content partners whereby LyricFind received compensation for distributing content misappropriated from Genius's website.

207.     The benefits to LyricFind as a result of its misappropriation of content from Genius's website came at Genius's expense.  Namely, because of LyricFind's misappropriation, Genius has suffered (and continues to suffer) decreased web traffic and associated revenue; moreover, Genius has been placed at an unfair competitive disadvantage in its efforts to license its lyrics to content partners.

208.     Equity and good conscience require recompense in favor of Genius for LyricFind's misappropriation of content from Genius's website.  It contravenes equity and the public policy of New York to permit a party to misappropriate the labors and investments of another.

209.     Accordingly, Genius is entitled to a money judgment against LyricFind in an amount to be proven at trial in this action, but in no event less than $50 million.

**WHEREFORE**, Plaintiff requests that a judgment be issued and entered against Defendants as follows:

A.    On the first cause of action, a money judgment against LyricFind and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

B.    On the second cause of action, a money judgment against LyricFind and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

C.    On the third cause of action, a money judgment against Google and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

D.    On the fourth cause of action, a money judgment against Google and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

E.    On the fifth cause of action, a permanent injunction against LyricFind prohibiting the continued misappropriation of content from Genius's website, as well as a money judgment against LyricFind and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

F.    On the sixth cause of action, a permanent injunction against LyricFind prohibiting the continued misappropriation of content from Genius's website;

G.    On the seventh cause of action, a permanent injunction against Google prohibiting the continued misappropriation of content from Genius's website, as well as a money judgment against Google and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

H.    On the eighth cause of action, a permanent injunction against Google prohibiting the continued misappropriation of content from Genius's website;

I.    On the ninth cause of action, a money judgment against Google and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest;

J.    On the tenth cause of action, a money judgment against LyricFind and in favor of Genius in an amount to be determined at trial, but in no event less than $50 million, plus costs and interest; and

K.    Such other and further relief as this Court deems just and proper.

FILED: KINGS COUNTY CLERK 12/03/2019 10:25 AM
INDEX NO. 526241/2019

NYSCEF DOC. NO. 1
Case 1:19-cv-07279-MKB-VMS   Document 1   Filed 12/30/19   Page 58 of 59 PageID #: 58
RECEIVED NYSCEF: 12/03/2019

Dated: New York, New York
December 3, 2019

PRYOR CASHMAN LLP

By: _____

Ilene S. Farkas
Benjamin K. Semel
Marion R. Harris
Kaveri Arora
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Plaintiff*

## **VERIFICATION**

STATE OF NEW YORK   )
                             ) ss.:

COUNTY OF KINGS    )

        Ben Gross, under the penalties of perjury, states as follows:

        I am the Chief Strategy Officer of Genius Media Group Inc. I have read the annexed complaint, know the contents thereof and the same are true to my knowledge, except those matters which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. This verification is made under the penalties of perjury.



                        BEN GROSS

Sworn to and subscribed before me
this ___ day of December, 2019

Notary Public

RONELL S. KIRKLEY
NOTARY
NO. 01KI6301320
QUALIFIED IN
KINGS COUNTY
COMM. EXP.
04-14-2022
PUBLIC
STATE OF NEW YORK

