BRIAN M. WILLEN (bwillen@wsgr.com)
JASON MOLLICK (jmollick@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

*Counsel for Defendant Google LLC*

KENNETH D. FREUNDLICH (ken@freundlichlaw.com)
FREUNDLICH LAW
16133 Ventura Blvd., Suite 645
Encino, California 91436
Telephone: (310) 275-5350
Facsimile: (310) 285-5351

c/o DANIEL J. AARON (Local Counsel)
DANIEL J. AARON, P.C.
750 Third Avenue, Suite 1006
New York, New York 10017
Telephone: (212) 684-4466
Facsimile: (212) 684-5566

*Counsel for Defendant LyricFind, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GENIUS MEDIA GROUP INC., | Case No. 1:19-cv-07279-MKB-VMS |
| Plaintiff, | |
| -against- | |
| GOOGLE LLC and LYRICFIND, | |
| Defendants. | |

**DEFENDANTS' JOINT MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    A.    Genius and Its Business ................................................................2

    B.    Genius's Allegations Against LyricFind and Google ................................4

ARGUMENT ..................................................................................................5

   I.    THIS COURT HAS EXCLUSIVE JURISDICTION OVER STATE LAW CLAIMS THAT EFFECTIVELY SEEK REDRESS FOR COPYRIGHT VIOLATIONS ..................................................................................................5

   II.    GENIUS'S STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY THE COPYRIGHT ACT ................................................................7

    A.    Genius's Claims Apply to "Works of Authorship" Within the Subject Matter of Section 102 of the Copyright Act ....................................7

    B.    Genius's Claims Seek to Vindicate "Exclusive Rights in Copyrighted Works" Within the General Scope of Section 106 of the Copyright Act ..........................................................................8

    C.    Genius's Claims Are Qualitatively Identical to Claims of Copyright Infringement ..........................................................11

        1.    Plaintiff's Breach of Contract and Indemnification Claims Are Preempted ..........................................................11

        2.    Plaintiff's Unfair Competition Claims Are Preempted ................17

        3.    Plaintiff's Unjust Enrichment Claims Are Preempted ................23

CONCLUSION ..................................................................................................25

**CASES**

*ABC, Inc. v. Flying J, Inc.*,
     No. 06 Civ. 2967 (DAB),
     2007 U.S. Dist. LEXIS 13252 (S.D.N.Y. Feb. 22, 2007)..................................20

*Alpha Media Works, Inc. v. Perception Research Servs., Inc.*,
     No. 09 Civ. 9563 (GBD),
     2012 U.S. Dist. LEXIS 16493 (S.D.N.Y. Feb. 9, 2012)..................................13

*Am. Movie Classics Co. v. Turner Entm't Co.*,
     922 F. Supp. 926 (S.D.N.Y. 1996) ...................................................12, 18, 23

*Atrium Grp. de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*,
     565 F. Supp. 2d 505 (S.D.N.Y. 2008)................................................20, 21, 25

*Bill Diodato Photography, LLC v. Avon Prods., Inc.*,
     No. 12 Civ. 847 (RWS),
     2012 U.S. Dist. LEXIS 135688 (S.D.N.Y. Sept. 21, 2012)............................16

*Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.*,
     66 F. Supp. 2d 454 (E.D.N.Y. 1999) ................................................................19

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
     373 F.3d 296 (2d Cir. 2004)................................................................... *passim*

*BroadVision Inc. v. GE*,
     No. 08 Civ. 1478 (WHP),
     2008 U.S. Dist. LEXIS 81863 (S.D.N.Y. Oct. 15, 2008) ...............................13

*Canal+ Image UK Ltd. v. Lutvak*,
     773 F. Supp. 2d 419 (S.D.N.Y. 2011)........................................................12, 13

*Civic Partners Stockton, LLC v. Youssefi*,
     218 Cal. App. 4th 1005 (2013) ........................................................................10

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
     982 F.2d 693 (2d Cir. 1992).................................................................6, 12, 20

*Cooper v. Sony Records International*,
     No. 00 Civ. 233 (RMB),
     2001 U.S. Dist. LEXIS 16436 (S.D.N.Y. Oct. 12, 2001) ...............................16

*CVD Equip. Corp. v. PrecisionFlow Techs., Inc.*,
     No. 1:02-CV-651,
     2007 U.S. Dist. LEXIS 21717 (N.D.N.Y. Mar. 27, 2007)...............................24

*Deckers Outdoor Corp. v. J.C. Penney Co.*,
    45 F. Supp. 3d 1181 (C.D. Cal. 2014) ............................................................20

*Estate Examinations Co. v. ECG Enters., Inc.*,
    No. 06-CV-3024 (JFB),
    2006 U.S. Dist. LEXIS 81478 (E.D.N.Y. Nov. 7, 2006)...................................14

*Forest Park Pictures v. Universal TV Network, Inc.*,
    683 F.3d 424 (2d Cir. 2012)..............................................................................11

*Hofheinz v. AMC Prods., Inc.*,
    No. CV-00-5827 (CPS),
    2003 U.S. Dist. LEXIS 16930 (E.D.N.Y. Apr. 21, 2003) .................................14

*Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*,
    476 F. Supp. 2d 291 (S.D.N.Y. 2007).........................................................18, 25

*Irwin v. ZDF Enters. GmbH*,
    No. 04 Civ. 8027 (RWS),
    2006 U.S. Dist. LEXIS 6156 (S.D.N.Y. Feb. 16, 2006)....................................18

*Jacino v. Ill. Tool Works Inc.*,
    No. 16 Civ. 1704 (BMC),
    2017 U.S. Dist. LEXIS 90749 (E.D.N.Y. June 12, 2017) .................................24

*Jacino v. Ill. Tool Works, Inc.*,
    No. 16 Civ. 1704 (BMC),
    2017 U.S. Dist. LEXIS 166287 (E.D.N.Y. Oct. 6, 2017)..................................19

*Katz Dochrermann & Epstein, Inc. v. HBO*,
    No. 97 Civ. 7763 (TPG),
    1999 U.S. Dist. LEXIS 3971 (S.D.N.Y. Mar. 29, 1999) ............................20, 21

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ..........................................................................19

*Lennon v. Seaman*,
    63 F. Supp. 2d 428 (S.D.N.Y. 1999)..................................................................16

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) .............................................................................6

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998)................................................................................25

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) ............................................................19

*Miller v. Holtzbrinck Publishers, L.L.C.*,
377 F. App'x 72 (2d Cir. 2010) ...........................................................7

*Miller v. Loibl*,
No. 11 Civ. 2182 (TPG),
2013 U.S. Dist. LEXIS 35709 (S.D.N.Y. Mar. 13, 2013) ...............................13

*Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*,
Civil Action No. 06-cv-140-FLW,
2008 U.S. Dist. LEXIS 56871 (D.N.J. July 28, 2008)...............................9, 17

*Mourabit v. Klein*,
393 F. Supp. 3d 353 (S.D.N.Y. 2019),
*vacating sanctions on other grounds*, 2019 WL 4392535 (Sept. 13, 2019)..............11

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997)...........................................................22

*Parker v. Google, Inc.*,
422 F. Supp. 2d 492 (E.D. Pa. 2006),
*aff'd*, 242 F. App'x 833 (3d Cir. 2007)..................................................4

*Price v. Fox Entm't Grp., Inc.*,
473 F. Supp. 2d 446 (S.D.N.Y. 2007)..................................................13

*Reed v. Peterson*,
No. C04-00228 WWS,
2005 U.S. Dist. LEXIS 50720 (N.D. Cal. June 27, 2005) ................................19

*Schleifer v. Berns*,
No. 17 Civ. 1649 (BMC),
2017 U.S. Dist. LEXIS 112391 (E.D.N.Y. July 19, 2017) ................................23

*SCO Grp., Inc. v. IBM Corp.*,
879 F.3d 1062 (10th Cir. 2018) .......................................................22

*Shepard v. European Pressphoto Agency*,
291 F. Supp. 3d 465 (S.D.N.Y. 2017)...........................................12, 18, 20

*Silverstein v. Penguin Putnam, Inc.*,
No. 01 Civ. 309 (JFK),
2003 U.S. Dist. LEXIS 5487 (S.D.N.Y. Apr. 4, 2003),
*vacated, rev'd, and remanded*, 368 F.3d 77 (2d Cir. 2004)............................22

*Silverstein v. Penguin Putnam, Inc.*,
522 F. Supp. 2d 579 (S.D.N.Y. 2007)..................................................22

*Simmons v. Stanberry*,
No. 10-CV-5815 (DLI) (RER),
2012 U.S. Dist. LEXIS 40150 (E.D.N.Y. Mar. 23, 2012) ..........................................19, 24

*Simmons v. Stanberry*,
No. 10-CV-5815 (DLI) (RER),
2014 U.S. Dist. LEXIS 99857 (E.D.N.Y. July 22, 2014),
*aff'd*, 810 F.3d 114 (2d Cir. 2016) ............................................................................14, 15

*Sleppin v. Thinkscan.com, LLC*,
55 F. Supp. 3d 366 (E.D.N.Y. 2014) ...........................................................................7, 17

*Stadt v. Fox News Network LLC*,
719 F. Supp. 2d 312 (S.D.N.Y. 2010)..............................................................................16

*Stanacard, LLC v. Rubard, LLC*,
No. 12 Civ. 5176,
2016 U.S. Dist. LEXIS 15721 (S.D.N.Y. Feb. 3, 2016)...................................................23

*Strauss v. Hearst Corp.*,
No. 85 Civ. 10017 (CSH),
1988 U.S. Dist. LEXIS 1427 (S.D.N.Y. Feb. 16, 1988)...................................................23

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
7 F.3d 1434 (9th Cir. 1993) .............................................................................................21

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ....................................................................................10, 11

*Tannenbaum v. Corbis Sygma*,
No. 02 Civ. 5066 (LTS),
2002 U.S. Dist. LEXIS 23928 (S.D.N.Y. Dec. 12, 2002) .................................................13

*Walker v. Time Life Films, Inc.*,
784 F.2d 44 (2d Cir. 1986).................................................................................................18

*Warner Bros. v. ABC*,
720 F.2d 231 (2d Cir. 1983)...............................................................................................18

*Williams v. Black Entm't TV*,
No. 13-CV-1459 (JS) (WDW),
2014 U.S. Dist. LEXIS 19097 (E.D.N.Y. Feb. 14, 2014)................................................23

*Wolo Mfg. Corp. v. ABC Corp.*,
349 F. Supp. 3d 176 (E.D.N.Y. 2018) ........................................................................19, 24

*Woolcott v. Baratta,*
No. 13-CV-2964 (JS) (GRB),
2014 U.S. Dist. LEXIS 63043 (E.D.N.Y. May 7, 2014) ...................................................19

## STATUTES

17 U.S.C. § 102 ............................................................................................................7, 8

17 U.S.C. § 106 .......................................................................................................*passim*

17 U.S.C. § 301 .......................................................................................................*passim*

28 U.S.C. § 1331 ................................................................................................................5

28 U.S.C. § 1338 ................................................................................................................5

28 U.S.C. § 1441 ................................................................................................................5

28 U.S.C. § 1367 ..........................................................................................................6, 25

California Business & Professions Code § 17200 .........................................................5, 19

## OTHER AUTHORITIES

1 Melville B. Nimmer & David Nimmer,
Nimmer on Copyright § 1.01 (2003) ..............................................................................24

Ben Sisario,
*In Music Piracy Battles, Lyrics Demand Respect Too*,
N.Y. Times, Nov. 11, 2013 ..............................................................................................2

Ben Sisario,
*Rap Genius Website Agrees to License With Music Publishers*,
N.Y. Times, May 6, 2014 ..................................................................................................2

H.R. Rep. No. 1476, 94th Cong., 2d Sess. (1976),
*as reprinted in* 1976 U.S.C.C.A.N. 5659 ........................................................................5

Defendants Google LLC ("Google") and LyricFind, Inc. ("LyricFind") submit this Joint Memorandum of Law in opposition to Plaintiff Genius Media Group, Inc.'s ("Genius") motion to remand.

## **INTRODUCTION**

This case is about the allegedly unauthorized copying (by LyricFind) and display (by Google) of copyrighted song lyrics from Genius's website—lyrics that Genius does not own and in which it holds no proprietary interest. Unable to assert any viable copyright claim, Genius seeks to recast its allegations as state law causes of action for breach of contract, unjust enrichment, and unfair competition. But this subterfuge does not change the fact that Genius's claims are equivalent to allegations of copyright infringement. Accordingly, under the weight of extensive and controlling legal authority, Genius's claims belong in federal court and are preempted by federal law.

Genius admits that song lyrics are among the "works of authorship" protected by the federal Copyright Act. Likewise, the "reproduction" and "public display" of those works are among the bundle of rights that federal law reserves solely for copyright holders. Under established law, any claim seeking to hold parties liable for the allegedly unauthorized copying and display of lyrics is a copyright claim that must be brought in federal court by the actual copyright holders. Here, however, those rightsholders are music publishers and songwriters who have independently licensed LyricFind and Google to use and display the lyrics at issue. Genius simply has no standing to bring a copyright infringement action arising out of Defendants' alleged copying and display of those lyrics.

Genius's effort to plead around this problem also fails as a matter of law. Courts in this Circuit have repeatedly held that state law claims for breach of contract, unfair competition, and unjust enrichment are preempted when they are premised on the alleged misappropriation of

copyrighted material—which is exactly the situation here. Genius ignores virtually all of this controlling authority, including *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004), the Second Circuit's leading case on copyright preemption. Genius also repeatedly mischaracterizes the allegations in its own Complaint and relies on at least one decision that was reversed on the very point of law for which Genius cites it. In short, its claims are preempted by the Copyright Act, which both creates federal jurisdiction and requires dismissal of this case.

## BACKGROUND

Genius spends a large part of its motion reciting the allegations offered in its Complaint. While the allegations that appear on the face of the Complaint alone make clear that Plaintiff's claims are preempted, Genius conspicuously elides certain additional facts that are relevant to this motion and further prove that these claims are preempted.

### A.    Genius and Its Business

Genius (formerly known as "Rap Genius") is an online service that provides a platform for the display of crowd-sourced music lyrics. Genius admits that it does not create or own any copyrights in the lyrics it displays. Mot. at 1. Instead, its primary business is the "development and maintenance" of an online repository of copyrighted lyrics that are owned by third-party songwriters and music publishers. Compl. ¶ 1. After establishing itself through what appears to have been rampant infringement and being threatened by music publishers for "blatant illegal" copyright infringement,[1] Genius now claims to have obtained nonexclusive licenses from copyright owners "permitting the display and distribution of these lyrics" on its website. *Id.* ¶¶

---

[1] Ben Sisario, *In Music Piracy Battles, Lyrics Demand Respect Too*, N.Y. TIMES, Nov. 11, 2013, https://www.nytimes.com/2013/11/12/business/media/in-music-piracy-battles-lyrics-demand-respect-too.html; Ben Sisario, *Rap Genius Website Agrees to License With Music Publishers*, N.Y. TIMES, May 6, 2014, https://www.nytimes.com/2014/05/07/business/media/rap-genius-website-agrees-to-license-with-music-publishers.html.

18-19. *See also* Mot. at 2 n.1. Genius does not, of course, possess the *exclusive* right to display and distribute these lyrics—both LyricFind and Google have obtained licenses from the relevant copyright holders that give them an equal and independent right to display and distribute the same content on their own websites. Genius does not suggest otherwise.

Genius alleges that it "provides a platform for [third-party] music enthusiasts who transcribe music lyrics, and also obtains lyrics through partnerships with [third-party] artists who provide their lyrics directly to Genius." Compl. ¶ 19; *see also id.* ¶ 1. In other words, the lyrics that are displayed on Genius's website are provided by third parties—not by Genius itself. And although Genius claims in this lawsuit to have copyright-like protections that apply to these lyric transcriptions—which by itself supports this Court's maintenance of jurisdiction over Genius's claims—its own website Terms of Service ("TOS," incorporated by reference in the Complaint and attached hereto as <u>Exhibit A</u>) characterize Genius as merely a "passive conduit" of lyrics and repeatedly disclaims all rights, ownership, and legal responsibility for that content:

> GENIUS TAKES NO RESPONSIBILITY AND ASSUMES NO LIABILITY FOR ANY USER CONTENT THAT YOU OR ANY OTHER USER OR THIRD PARTY POSTS OR SENDS OVER THE SERVICE. YOU SHALL BE SOLELY RESPONSIBLE FOR YOUR USER CONTENT AND THE CONSEQUENCES OF POSTING OR PUBLISHING IT, AND YOU AGREE THAT WE ARE ONLY ACTING AS A PASSIVE CONDUIT FOR YOUR ONLINE DISTRIBUTION AND PUBLICATION OF YOUR USER CONTENT.

Ex. A at 3 (all caps in original); *see also id.* at 2-3 ("You are solely responsible for all … music, … annotations, or other content, information, and materials ('User Content') that you upload, post, publish or display … via the Service, including without limitation … any lyrics[.]").

Thus while Genius asserts ownership over "the collective content of the Service," the users, artists, or publishers who actually transcribe and provide individual song lyrics "retain full ownership" of whatever they provide, including any copyrights or other legally enforceable protections they may have in that content. *Id.* at 3.

**B.      Genius's Allegations Against LyricFind and Google**

LyricFind maintains a database of lyrics transcriptions that it licenses to third parties to be displayed. Compl. ¶¶ 9, 11. Unlike Genius, LyricFind's business model is to obtain licenses from copyright owners before utilizing their lyrics. Google provides various Internet services to the public through its website located at http://www.google.com, including a search engine that indexes websites and other online content so they may be located and previewed through user-generated search queries. *See, e.g.*, *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 495 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (describing Google's search engine).

Genius alleges that in June 2016, "LyricFind entered into an agreement with Google whereby LyricFind provides lyrics to Google for use in (at least) Google's search results." Compl. ¶ 12. Google displays those lyrics in auto-generated information boxes which provide a quick snapshot of information in response to a user-generated search for those lyrics. *Id.* ¶¶ 28-31. Thus if a Google user searches for the name of a popular song along with the word "lyrics," an information box may display the lyrics to that song along with the name, artist, and source of the lyrics. *Id.* ¶¶ 30-31 (screenshots of information boxes generated in response to a user search for lyrics to "Lose You To Love Me" by Selena Gomez, crediting "LyricFind" as the source of those lyrics); *see also, e.g.*, *id.* ¶¶ 152, 163 ("LyricFind markets its database of 'high-quality' lyrics to companies, such as Google, who contract with LyricFind to display those lyrics in products such as Google's Information Box search results.").

Genius alleges that LyricFind unlawfully copied (or "scraped") certain of these lyrics from Genius's website before distributing them to Google, and that Google displayed those "misappropriated" lyrics provided by LyricFind in its search results. Thus, the gravamen of Plaintiff's Complaint is that allegedly LyricFind copied from Genius and Google displayed various song lyrics that are copyrighted and owned entirely by third parties. That is why the

Complaint carefully accuses Defendants of copying and/or displaying lyrics "misappropriated *from Genius's website*," but never claims that Defendants "misappropriated *Genius's content*."

Based on these allegations, Genius filed a Complaint on December 3, 2019, in New York Supreme Court, Kings County, asserting claims for (1) breach of contract and "indemnification" under the Genius website TOS; (2) unfair competition under New York common law and Section 17200 of the California Business & Professions Code; and (3) unjust enrichment under New York common law. Defendants timely removed the action to this Court on December 30, 2019, pursuant to 28 U.S.C. §§ 1331, 1338, and 1441 *et seq.* on the grounds that this "is a civil action containing purported state law claims which are preempted by Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a) and thus within the exclusive jurisdiction of this Court." Dkt. 1 ¶ 8. Genius has now moved to remand the case back to state court.

## ARGUMENT

### I. THIS COURT HAS EXCLUSIVE JURISDICTION OVER STATE LAW CLAIMS THAT EFFECTIVELY SEEK REDRESS FOR COPYRIGHT VIOLATIONS

28 U.S.C. § 1338(a) gives district courts original and exclusive jurisdiction over civil actions arising under federal copyright law. This includes claims that are nominally brought under state law, but are preempted by Section 301 of the Copyright Act:

> On and after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). "The intention of Section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law." H.R. Rep. No. 1476, 94th Cong., 2d

Sess. at 130 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5746. Section 301 thus expressly preempts "those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (citation omitted). And because those federal rights belong exclusively to the copyright owner, Section 301 ensures that only that copyright owner may exercise "the right to control the work, including the decision whether or not to make the work available to the public." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citation omitted). Third parties may not invoke those rights under the guise of state law.

In *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004), the Second Circuit held that Section 301 is one of the rare federal statutes whose preemptive force is "so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 304 (citation omitted). In other words, "the district courts have jurisdiction over state law claims preempted by the Copyright Act." *Id.* at 305. Not only that, the Second Circuit explained, "once a district court determines that a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action." *Id.* at 309. If some but not all of the claims fall within the court's copyright jurisdiction, the court has supplemental jurisdiction to hear the non-preempted claims under 28 U.S.C. § 1367 if they form part of the same case or controversy. *Id.* at 308.

In addition to holding that copyright preemption creates federal-question jurisdiction, the Second Circuit has expansively applied Section 301 to preempt state law claims that are equivalent to claims that arise under the Copyright Act. The test for determining whether a state law claim is preempted is whether "(1) the particular work to which the claim is being applied

falls within the type of works protected by the Copyright Act … and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Id.* at 305. "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Id.* (citation omitted).

In applying the general scope requirement, the Second Circuit has explained that "we take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Id.* at 306. "Awareness or intent, for instance, are *not* extra elements that make a state law claim qualitatively different." *Id.* (emphasis added); *accord Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 373 (E.D.N.Y. 2014) (same). "If unauthorized publication is the gravamen of [plaintiff's] claim, then it is clear that the right [plaintiff] seek[s] to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act' and thus that state law claim is preempted." *Miller v. Holtzbrinck Publishers, L.L.C.*, 377 F. App'x 72, 73-74 (2d Cir. 2010) (citation omitted).

## II. GENIUS'S STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY THE COPYRIGHT ACT

Applying *Briarpatch*'s two-part test, all of Plaintiff's claims are preempted. Those claims assert protections over works that unquestionably come within the subject matter of the Copyright Act, and they seek to vindicate rights that are the equivalent of those already protected by federal law.

### A. Genius's Claims Apply to "Works of Authorship" Within the Subject Matter of Section 102 of the Copyright Act

Genius concedes, as it must, that the subject matter requirement is satisfied here. *See* Mot. at 12 & n.4. Plaintiff's claims are wholly premised on Defendants' alleged use of musical lyrics, which are expressly identified as falling among the "works of authorship" protected by the

Copyright Act. *See* 17 U.S.C. § 102(a)(2) (works of authorship include "musical works, including any accompanying words").

**B.    Genius's Claims Seek to Vindicate "Exclusive Rights in Copyrighted Works" Within the General Scope of Section 106 of the Copyright Act**

The general scope requirement is also readily satisfied. Among the bundle of exclusive rights protected by the Copyright Act are the right to reproduce, publicly display, and distribute copyrighted works. Section 106 of the Act gives copyright owners the exclusive right "to reproduce the copyrighted work in copies," "to display the copyrighted work publicly," and "to distribute copies … by sale or other transfer[.]" 17 U.S.C. § 106. Here, Genius's state law claims are all premised on allegations that LyricFind and Google engaged in conduct that is squarely covered by these exclusive rights.

In its motion to remand, Genius makes clear that its Complaint rests on the alleged unauthorized copying, distribution, and public display of copyrighted lyrics. *See, e.g.*, Mot. at 1 (describing this as "an action by Genius against competitors who are ***misappropriating*** valuable lyrics transcriptions from Genius's website and ***using*** that misappropriated content"); *id.* at 3 ("[M]any lyrics ***displayed*** in Google's lyrics Information Boxes were ***misappropriated*** from Genius's website."); *id.* at 5 (Defendants breached TOS which "prevent the ***copying*** or other misappropriation of content from Genius's Service"); *id.* at 7 ("Google's Information Box lyrics results are ***displayed*** … without any evaluation of whether they are ***copied*** without permission from another source, such as Genius's website."); *id.* at 8 (arguing that lyrics in Google search results "were improperly ***copied*** from [Genius's] website"); *id.* at 9 ("[W]hatever the source of the lyrics, they were watermarked and thus irrefutably ***copied*** from Genius's Service.") (emphases added).

Taking a closer look at the specific claims that Genius asserts in its Complaint makes clear that each of those claims is preempted:

**Breach of contract.** Genius alleges that Defendants breached Genius's TOS because they "accessed the Genius website to ***copy***, ***modify***, ***sell*** and/or ***distribute*** content appearing on Genius's website that [Defendants] did not upload." Compl. ¶¶ 120, 137 (emphasis added); *see also id.* ¶¶ 116, 133 (alleging that Defendants breached a separate provision in the TOS because they "accessed the Genius website to ***copy***, ***modify***, ***sell*** and/or ***transmit*** content appearing on Genius's website for commercial purposes, including, but not limited to, licensing such content ***for display*** in Google's lyrics Information Box search results" (as to LyricFind) and "***displaying*** such content in Google's lyrics Information Box search results" (as to Google)) (emphasis added). On its face, this claim expressly duplicates the rights covered by the Copyright Act.

**Indemnification.** Genius alleges that Defendants owe indemnification "[a]s a result of [their] breaches of the Terms of Service[.]" *Id.* ¶¶ 125-27, 142-44. This is entirely derivative of Genius's preempted breach of contract claim; indeed, it is nothing more than a claim for damages arising from breaches of the same purported contractual rights. That is perhaps why Genius does not even mention its indemnification claim in its motion to remand. This claim is preempted for the same reasons as the breach of contract to which it is inextricably intertwined. *See, e.g.*, *Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*, Civil Action No. 06-cv-140-FLW, 2008 U.S. Dist. LEXIS 56871, at *119 (D.N.J. July 28, 2008) (holding breach of contract claim preempted notwithstanding presence of indemnification provision because "the main thrust of Plaintiff's breach of contract claim focuses on the reproduction, distribution or exploitation of information from the MMG Website").

**Unfair competition.** Genius alleges that Defendants engaged in unfair competition under New York and California law because LyricFind "***misappropriated*** content from Genius's website" and licensed those lyrics to Google (Compl. ¶¶ 146, 148, 151, 157, 159, 162), and Google's search results "***display*** … lyrics ***copied*** from Genius's website" (*id.* ¶¶ 168, 171, 176, 179, 185, 188, 193, 196) (emphasis added). These too are plainly claims based on the copying, distribution, and public display of the lyrics at issue.

**Unjust enrichment.** Finally, Genius asserts that Defendants were unjustly enriched by their "***misappropriation*** of content from Genius's website"—in other words, LyricFind's copying and Google's public display of lyrics posted on Genius's website. *Id.* ¶¶ 201-02, 206-07 (emphasis added).

In short, it clear from the face of the Complaint (and from Plaintiff's own description of its case) that Genius is seeking through this lawsuit to vindicate legal and equitable rights equivalent to the exclusive rights protected by the Copyright Act—specifically, the rights to reproduce, distribute, and publicly display copyrighted song lyrics. Under Section 301, as consistently applied in this Circuit, those rights are protected solely through federal law and Plaintiff's claims cannot be asserted in state court.

The fact that Genius holds no copyrights in the lyrics at issue—and thus could not assert an actual copyright claim—only further reinforces that its claims are preempted. *See, e.g.*, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150-51 (9th Cir. 2008) (dismissing state law claims as preempted where "the plaintiff lacks standing to bring a claim of copyright infringement under the federal copyright law"); *Civic Partners Stockton, LLC v. Youssefi*, 218 Cal. App. 4th 1005, 1017 (2013) ("The fact that one may not successfully sue for copyright infringement because he or she is not the copyright holder does not mean he or she is not

preempted from attempting to sue on a claim that amounts to copyright infringement."); *Mourabit v. Klein*, 393 F. Supp. 3d 353, 359-62, 367 (S.D.N.Y. 2019) (dismissing unjust enrichment and unfair competition claims notwithstanding plaintiff's attempt to disavow ownership of the copyrights "out of fear that the state law claims would be preempted"), *vacating sanctions on other grounds*, 2019 WL 4392535 (Sept. 13, 2019). The law does not allow such efforts to end-run the actual copyright laws in an effort to invoke someone else's exclusive rights. *See, e.g.*, *Sybersound*, 517 F.3d at 1150-51 ("If we were to permit [plaintiff's] claims based on incidences of copyright infringement to proceed, [plaintiff] would be litigating a third party copyright infringement claim under the guise of state law[.]").

### C.    Genius's Claims Are Qualitatively Identical to Claims of Copyright Infringement

In an attempt to avoid this straightforward result, Genius argues that its state law claims contain "extra elements" that render them qualitatively different from an action for copyright infringement. Genius is wrong. All of its arguments have been rejected by the Second Circuit, this Court, or other courts in this Circuit, yet Genius cites virtually none of those cases in its motion. Under this established law, Genius's claims contain no "extra element" that would take this lawsuit outside of the broad preemptive scope of Section 301.

1.    <u>Plaintiff's Breach of Contract and Indemnification Claims Are Preempted</u>

a.    *A breach of contract claim is preempted if the promise at issue is qualitatively the same as an exclusive right under Section 106*

Genius frames its argument with an unsupported and incorrect statement of law, arguing that "[i]t is well settled that, as a general matter, breach of contract claims are not preempted by copyright law, as the promise inherent in a contract is a sufficient 'extra element' to defeat preemption." Mot. at 15. Indeed, while the Second Circuit has not addressed the issue as to whether a contractual promise is an "extra element" (*see Forest Park Pictures v. Universal TV*

*Network, Inc.*, 683 F.3d 424, 432 (2d Cir. 2012)), the majority position in this Circuit is that breach of contract claims may, in the right circumstances, be preempted by Section 301. In fact, this Court has expressly rejected the very argument that Plaintiff now advances.

For example, in *Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465 (S.D.N.Y. 2017), Judge Stanton analyzed the issue and concluded that "whether a given contractual promise renders a claim qualitatively different than a copyright claim must depend on what the promise is." *Id.* at 473 (citation omitted). Judge Stanton followed the approach used in *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926 (S.D.N.Y. 1996), which dismissed as preempted the very same claims that Genius asserts here: breach of contract, unfair competition, and unjust enrichment (plus tortious interference). As to breach of contract, that court held that "a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or display)." *Id.* at 931-32; *accord Shepard*, 291 F. Supp. 3d at 475 (contract claim asserting that defendant "displayed, reproduced, published, distributed, and otherwise made use of the Shepards' artworks beyond the expiration of the one day term in the license agreement" was preempted because it was qualitatively equivalent to a copyright infringement claim).

This is the correct approach. As Judge Holwell explained in *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419 (S.D.N.Y. 2011), "[a] categorical rule that 'the extra element that saves a contract claim from preemption is the promise itself' provides mere lip service" to the Second Circuit's instruction that "preemption turns on 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Id.* at 444 (quoting *Computer Assocs.*, 982 F.2d at 716). Such a rule also "seems hard to square with

the Second Circuit's instruction to 'take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.'" *Id.* (quoting *Briarpatch*, 373 F.3d at 306); *see also id.* at 446 ("Labeling [plaintiff's] claim as one for breach of contract cannot change the fact that the claim is not 'qualitatively different from a copyright infringement claim.'") (quoting *Briarpatch*, 373 F.3d at 305).

Numerous other Southern District decisions, which Plaintiff ignores, agree with this conclusion. *See Miller v. Loibl*, No. 11 Civ. 2182 (TPG), 2013 U.S. Dist. LEXIS 35709, at *11 (S.D.N.Y. Mar. 13, 2013) ("[D]efendants' counterclaims allege nothing more than that Miller violated their exclusive distribution rights. That they did so in violation of a contract does nothing to change this conclusion since the infringed contractual right is congruent with a right under copyright law."); *Alpha Media Works, Inc. v. Perception Research Servs., Inc.*, No. 09 Civ. 9563 (GBD), 2012 U.S. Dist. LEXIS 16493, at *5-6 (S.D.N.Y. Feb. 9, 2012) ("Plaintiff alleges that Defendant breached [agreements] when it 'adapt[ed], alter[ed], modif[ied], translate[d], or create[d] derivative works of the Outdoor DRiVE software.' The basis of Plaintiff's breach of contract claim is indistinguishable from that of its copyright claim. The breach of contract claim is therefore preempted by the federal Copyright Act."); *BroadVision Inc. v. GE*, No. 08 Civ. 1478 (WHP), 2008 U.S. Dist. LEXIS 81863, at *9-12 (S.D.N.Y. Oct. 15, 2008) (dismissing breach of contract claim based on copying and using software as "qualitatively the same as a copyright infringement claim") (citing *Briarpatch*); *Price v. Fox Entm't Grp., Inc.*, 473 F. Supp. 2d 446, 460-61 (S.D.N.Y. 2007) (dismissing state law claims, including for breach of contract, because "none of these claims include any extra elements that make them qualitatively different from a claim for co-authorship under the Copyright Act"); *Tannenbaum v. Corbis Sygma*, No. 02 Civ. 5066 (LTS), 2002 U.S. Dist. LEXIS 23928, at *9-10 (S.D.N.Y. Dec.

12, 2002) (denying motion to remand breach of contract claim because it "presents no elements additional to those that are relevant to the Copyright Act").

Judges in the Eastern District follow the same approach. In *Simmons v. Stanberry*— which Genius does not cite—the plaintiff alleged that certain defendants engaged in unfair competition, unjust enrichment, and breach of a license agreement by "selling, granting and/or otherwise transferring rights" in a musical work to other co-defendants, and also breached the license by "actively permitting [the other named defendants] to infringe Simmons' copyrights under the License Agreement." No. 10-CV-5815 (DLI) (RER), 2014 U.S. Dist. LEXIS 99857, at *3-5 (E.D.N.Y. July 22, 2014) (citations omitted), *aff'd*, 810 F.3d 114 (2d Cir. 2016). The plaintiff conceded that his unfair competition and unjust enrichment claims were clearly preempted, but argued that his breach claim was not. *Id.* Judge Irizarry disagreed and dismissed the claim as preempted under Section 301, finding that "Plaintiff's breach of contract claims does no more than allege Plaintiff's right to protect against the unauthorized use, reproduction, adaptation, and distribution of the work in question, which plainly falls within the general scope requirement of 17 U.S.C. § 106," and thus "consists of no extra element, such as a promise to pay, that would make the claim qualitatively different from a federal copyright claim." *Id.* at *5-6; *accord Hofheinz v. AMC Prods., Inc.*, No. CV-00-5827 (CPS), 2003 U.S. Dist. LEXIS 16930, at *18-20 (E.D.N.Y. Apr. 21, 2003) (breach of contract claim preempted where "[t]he breach plaintiff alleges is the unauthorized display of plaintiff's copyrighted works," because "[w]here the promise breached is the equivalent of the right secured under federal law, a contract claim is preempted"); *cf. Estate Examinations Co. v. ECG Enters., Inc.*, No. 06-CV-3024 (JFB), 2006 U.S. Dist. LEXIS 81478, at *13-14 (E.D.N.Y. Nov. 7, 2006) (finding no preemption of breach of

contract claim because "plaintiff is not alleging that defendant engaged in unauthorized reproduction or distribution" of the work at issue).

> b. *Genius's breach of contract claims vindicate rights in copyrighted works reserved exclusively for copyright owners under Section 106*

Here, Genius alleges that Defendants breached multiple provisions in the TOS (and owes indemnification for that breach) because they **copied**, **distributed**, and/or **displayed** copyrighted lyrics that were posted by third parties onto Genius's website. Compl. ¶¶ 133, 137.[2] One provision of the TOS states that a user may not "modify, copy, frame, scrape, rent, lease, loan, sell, distribute or create derivative works based on the Service or the Genius Content[.]" *Id.* ¶ 136; Ex. A at 5. Another states that a user may not "display, distribute, license, perform, publish, reproduce, duplicate, copy, create derivative works from, modify, sell, resell, exploit, transfer or transmit for any commercial purpose, any portion of the Service[.]" Compl. ¶ 132; Ex. A at 4.

These provisions are nothing more than self-written copyright protections, unilaterally declared by Genius. As in *Simmons*, Genius's restrictions do "no more than … protect against the unauthorized use, reproduction, adaptation, and distribution of the work in question, which plainly falls within the general scope requirement of 17 U.S.C. § 106." 2014 U.S. Dist. LEXIS 99857, at *5-6. It is the right to copy, distribute, and/or display that Genius claims has been abridged, and these are copyright claims in all respects. 17 U.S.C. § 106.

To get around this obvious conclusion, Genius argues that its breach claims are "different from its copyright claim" because the TOS "explicitly restrict use of its content for 'direct

---

[2] Although Genius does not even mention its indemnification claim in its motion to remand, it is worth noting that this claim is not for failure of a promise to pay for use of content on Genius's website, but rather a derivative claim for contractual damages "[a]s a result of [Defendants'] breaches of the Terms of Service[.]" Compl. ¶¶ 126, 143. Accordingly, whether the indemnification claim is preempted should rise or fall depending on its primary breach of contract claim.

commercial endeavors' or 'commercial purposes' …. Thus, in order to prove its Contract claims, Genius not only needs to prove that Defendants scraped content from its website, but also that Defendants used it for 'commercial endeavors.'" Mot. at 17.

This argument is doubly misguided. First, it departs from Plaintiff's own Complaint, which explicitly alleges that Defendants breached a provision of the TOS that broadly states that a user may not "modify, copy, frame, scrape, rent, lease, loan, sell, distribute or create derivative works based on the Service or the Genius Content[.]" Compl. ¶¶ 119-20, 136-37; Ex. A at 5. This provision is nothing more than a recitation of exclusive rights reserved for true copyright owners under Section 106; it says nothing about "commercial use." Any claim based on breach of this provision is, even on Plaintiff's own argument, preempted.

Second, the fact that Genius also alleges that Defendants violated a second provision which states that users may not use copyrighted content "for any commercial purpose" (Compl. ¶¶ 115-16, 132-33; Ex. A at 4) does not allow Plaintiff to escape preemption. Genius does not cite a single case that suggests that presence of a "commercial use" provision in a contract renders a breach claim *qualitatively* different from a claim for copyright infringement.[3]

The law is otherwise. Indeed, Judge Berman rejected this very argument in *Cooper v. Sony Records International*: "The basis for Plaintiffs' breach of contract claim is that Sony '*wrongfully commercially exploited the Masters*.' This is also the very essence of its Copyright Act claim…. There is no allegation here that Sony breached any provisions of the Recording

---

[3] The cases Plaintiff cites found no preemption where the contractual provision at issue had nothing to do with the unauthorized use of copyrighted material. *See, e.g.*, *Bill Diodato Photography, LLC v. Avon Prods., Inc.*, No. 12 Civ. 847 (RWS), 2012 U.S. Dist. LEXIS 135688, at *18-20 (S.D.N.Y. Sept. 21, 2012) (failure to negotiate licensing fee); *Lennon v. Seaman*, 63 F. Supp. 2d 428, 438 (S.D.N.Y. 1999) (breach of confidentiality provision); *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 320-21 (S.D.N.Y. 2010) (improper accreditation). That plainly is not the situation here. Moreover, unlike Genius, the plaintiffs in those actions were copyright owners. *See* Section II.B, *supra*.

Agreement other than those providing Sony with *the right commercially to exploit the recordings.*" No. 00 Civ. 233 (RMB), 2001 U.S. Dist. LEXIS 16436, at *14-16 (S.D.N.Y. Oct. 12, 2001) (emphasis added); *see also Mortg. Mkt. Guide*, 2008 U.S. Dist. LEXIS 56871, at *116-20 (website terms of service stating users may not "[u]pload, post, publish, transmit, reproduce, distribute or in any way exploit any information, software or other material obtained through the Service *for commercial purposes*" invoke "the same rights protected in Section 106 of the Copyright Act, namely: reproduction and distribution") (emphasis added).

Plaintiff's position is also irreconcilable with *Briarpatch*. There, the plaintiff argued that its unjust enrichment claim was not preempted because it included a requirement that the "defendant was enriched[.]" 373 F.3d at 306. The Second Circuit disagreed. It explained that "[w]hile enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim. Like the elements of awareness or intent, the enrichment element here limits the scope of the claim but leaves its fundamental nature unaltered." *Id.*; *see also, e.g.*, *Sleppin*, 55 F. Supp. 3d at 373 (element of "intent, for instance, [is] not 'qualitatively different'"). The same is true here: that one provision of Genius's TOS agreement requires "commercial use" may limit the scope of Plaintiff's claim, but it does not change its fundamental nature—what Plaintiff's own Complaint describes as "conduct breach[ing] Genius's Terms of Service regarding the copying and reproduction of Genius Content." Compl. ¶¶ 122, 139. That claim is preempted.

2.      <u>Plaintiff's Unfair Competition Claims Are Preempted</u>

As set forth above, *see* Section II.B, *supra*, Genius' unfair competition claims are entirely premised on the misappropriation of copyrighted lyrics. *See* Compl. ¶¶ 146, 148, 157, 159 (premising unfair competition claim on allegations that LyricFind "misappropriates content" and on its alleged "copying activities"); *id.* ¶¶ 168, 171, 185, 188 (premising unfair competition

claims on Google's "display" of lyrics "in response to lyrics-related queries" and its alleged use of "content misappropriated from Genius's website to gain unfair economic and competitive advantages"). These claims are preempted because courts in New York and California have consistently held that claims for unfair competition based on misappropriation of copyrighted material are preempted.

In this Circuit, courts "have consistently held that claims for misappropriation of rights within the scope of copyright brought under New York unfair competition law are preempted." *Am. Movie Classics*, 922 F. Supp. at 933 (collecting cases); *accord Shepard*, 291 F. Supp. 3d at 475 ("[T]he Copyright Act … preempts claims asserted under the misappropriation branch of New York's unfair competition law, which generally protects against a defendant's competing use of a valuable product or idea created by the plaintiff through investment of time, effort, money and expertise.") (quoting *Am. Movie Classics*, 922 F. Supp. at 933); *Irwin v. ZDF Enters. GmbH*, No. 04 Civ. 8027 (RWS), 2006 U.S. Dist. LEXIS 6156, at *14-17 (S.D.N.Y. Feb. 16, 2006) (dismissing unfair competition claim based on alleged infringement of musical work as preempted by the Copyright Act); *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 296-97 (S.D.N.Y. 2007) (finding unfair competition claim preempted where plaintiff alleged that defendants "plagiarized" its website).

The Second Circuit itself has repeatedly made this clear. *See, e.g.*, *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) ("[A] cause of action for unfair competition is preempted by the federal copyright laws to the extent it seeks protection against copying of [a copyrighted work]."); *Warner Bros. v. ABC*, 720 F.2d 231, 247 (2d Cir. 1983) ("Since the Copyright Act is exclusive … with respect to rights equivalent to any of the exclusive rights within the general scope of copyright, state law claims that rely on the misappropriation branch

of unfair competition are preempted[.]") (citation omitted). Likewise, this Court has consistently dismissed unfair competition claims that arise from misappropriation of copyrighted works. *See, e.g.*, *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 212-13 (E.D.N.Y. 2018); *Simmons v. Stanberry*, No. 10-CV-5815 (DLI) (RER), 2012 U.S. Dist. LEXIS 40150, at *17 (E.D.N.Y. Mar. 23, 2012); *Jacino v. Ill. Tool Works, Inc.*, No. 16 Civ. 1704 (BMC), 2017 U.S. Dist. LEXIS 166287, at *18 (E.D.N.Y. Oct. 6, 2017); *Woolcott v. Baratta*, No. 13-CV-2964 (JS) (GRB), 2014 U.S. Dist. LEXIS 63043, at *29-31 (E.D.N.Y. May 7, 2014); *Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 464 (E.D.N.Y. 1999).

California courts have reached the same conclusion. *See, e.g.*, *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074 (N.D. Cal. 2016) (unfair competition claim under Section 17200 preempted where plaintiff alleged that Defendant's "unauthorized copying and use of [plaintiff's website] material for the purpose of competing with [plaintiff] and seeking business from [its] customers harmed [its] business, reputation, and competitive standing"); *see also, e.g.*, *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (Section 17200 claim preempted where plaintiff alleged that defendants were "publishing and placing on the market for sale products bearing the images subject to the copyright ownership of the plaintiff and has thereby been engaging in unfair trade practices and unfair competition"); *Reed v. Peterson*, No. C04-00228 WWS, 2005 U.S. Dist. LEXIS 50720, at *13-14 (N.D. Cal. June 27, 2005) ("Plaintiff alleges in his complaint that 'Defendants have been reproducing, distributing, promoting, and offering for sale illegal and unauthorized copies of [Plaintiff's works] and have thereby been engaging in unfair trade practices and unfair competition against Plaintiff.' … Thus, Plaintiff's unfair competition claim is based on the same rights as those protected by the federal copyright laws.").

Faced with this overwhelming controlling authority, Genius first manufactures an argument that its unfair competition claims have the "'extra element' of 'bad faith' and 'unfairness,' which makes such claims qualitatively different from a copyright claim, thereby defeating preemption." Mot. at 19. According to Plaintiff, preemption does not apply because the Complaint includes "allegations of Defendants' deceptive, immoral and unscrupulous conduct … in concealing its misappropriation of lyrics from Genius's website." *Id.* at 20-22.

This is directly contrary to established law. The Second Circuit has expressly held that "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature." *Computer Assocs.*, 982 F.2d at 717 (citation omitted); *see also, e.g.*, *Katz Dochrermann & Epstein, Inc. v. HBO*, No. 97 Civ. 7763 (TPG), 1999 U.S. Dist. LEXIS 3971, at *9-10 (S.D.N.Y. Mar. 29, 1999) (finding unfair competition claim preempted and explaining that plaintiff's "allegation of fraudulent intent simply alters the scope of the state action but not the equivalency of its nature to a copyright infringement claim"); *Atrium Grp. de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 510 (S.D.N.Y. 2008) ("'[D]eception' is not the sort of element that would cause claims for unjust enrichment or misappropriation to be 'qualitatively different' from the Federal Copyright Act."); *Shepard*, 291 F. Supp. 3d at 475 (dismissing as preempted unfair competition claim that defendants misappropriated plaintiff's artwork "in bad faith, i.e., for a dishonest purpose"); *ABC, Inc. v. Flying J, Inc.*, No. 06 Civ. 2967 (DAB), 2007 U.S. Dist. LEXIS 13252, at *31 (S.D.N.Y. Feb. 22, 2007) (holding, despite allegations that defendants "acted in bad faith," that "Plaintiffs' unfair competition claim is not qualitatively different from their copyright infringement claim"); *see also Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1189 (C.D. Cal. 2014) (California unfair competition claim preempted despite allegation of "bad-faith conduct").

Indeed, if those elements amounted to "extra elements" that defeated preemption under Section 301, no unfair competition claim would ever be preempted, which would run contrary to the overwhelming precedent in both New York and California that unfair competition claims are preempted whenever their gravamen arises from misappropriation of copyrighted material.

Next, Genius suggests that "[t]he rights sought to be enforced are broader and different than the exclusive rights existing under the Copyright Act and concern the substantial investment of time and labor by Genius in a competitive market, which was knowingly misappropriated by its competitors (Defendants) to the direct financial detriment of Genius." Mot. at 15; *see also id.* at 11. But again, if that were true, no misappropriation claim would ever be preempted. After all, "[t]he essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures[.]" *Atrium Grp.*, 565 F. Supp. 2d at 510 (quoting *Katz Dochrermann*, 1999 U.S. Dist. LEXIS 3971, at *9-10). Thus, "[t]he fact that Plaintiffs developed the works 'at great expense' … does not give rise to a state law claim for misappropriation" that is qualitatively different from a claim for copyright infringement. *Id.* at 509; *see also Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1442 (9th Cir. 1993) ("To the extent that [plaintiff] may complain that [defendant] has 'pirated' its lathe by employing a particularly unfair method of copying, such a claim is preempted by federal law."). The so-called "freeriding on Genius's efforts" is simply another way of saying that Defendants reproduced and displayed copyrighted material posted by third parties onto Genius's website. Mot. at 11. That is the equivalent of a claim for copyright infringement, and it is preempted by Section 301.[4]

---

[4] There is no allegation here that Genius was hired by Defendants and provided "uncompensated labor or 'sweat equity' for which compensation might be owed[.]" *Atrium Grp*, 565 F. Supp. 2d at 510 (distinguishing non-preempted cases where independent contractors or employees provided uncompensated labor or services directly to the defendants at the defendants' behest).

In a final effort to undo years of jurisprudence in New York and California, Genius relies on *Silverstein v. Penguin Putnam, Inc.*, which was vacated, reversed, and remanded by the Second Circuit after the district court found that "unfair competition claims covering reverse passing off are not preempted because those claims involve the extra element of misrepresentation or deception." No. 01 Civ. 309 (JFK), 2003 U.S. Dist. LEXIS 5487, at *25-26 (S.D.N.Y. Apr. 4, 2003), *vacated, rev'd, and remanded*, 368 F.3d 77 (2d Cir. 2004). Genius did not mention this in its brief.

Genius also fails to tell the Court that following remand, the district court actually reversed itself, concluding that "the allegation that the reproduction was immoral does ***not*** differentiate the claim from one of copyright infringement." *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 608-09 (S.D.N.Y. 2007) (emphasis added). The court explained its about-face by pointing out that "[t]he Second Circuit has held that New York's misappropriation doctrine based on amorphous concepts such as commercial immorality or society's ethics is preempted because [s]uch concepts are virtually synonymous for wrongful copying and are in no meaningful fashion distinguishable from infringement of a copyright." *Id.* (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997)). *Silverstein* thus ultimately found that plaintiff's state law claims, including for unfair competition, were merely "disguised copyright claims preempted by § 301(a) of the Copyright Act." *Id.* at 609.[5]

Simply dressing up copyright infringement with verbiage such as "deception" or "concealment" does not change the nature of the legal rights that Genius is asserting. Those rights—the protection of copyrighted song lyrics from being copied and displayed without

---

[5] Genius's only other citation is to a Tenth Circuit opinion that squarely contradicts established Second Circuit law. *See SCO Grp., Inc. v. IBM Corp.*, 879 F.3d 1062, 1080-81 (10th Cir. 2018). To our knowledge, that case has never been cited in any case decided in this Circuit.

authorization—belong exclusively to the copyright owners of the lyrics under federal law. They are not Genius's rights and they cannot be protected by state unfair competition law in light of the preemptive effect of the Copyright Act.

3.     Plaintiff's Unjust Enrichment Claims Are Preempted

As with unfair competition, "[i]t is well-settled law in this circuit that an unjust enrichment claim based on copyrighted subject matter is preempted by the Copyright Act, because a claim for unjust enrichment contains no 'extra element' that makes it qualitatively different from a copyright infringement claim." *Stanacard, LLC v. Rubard*, *LLC*, No. 12 Civ. 5176, 2016 U.S. Dist. LEXIS 15721, at *60-61 (S.D.N.Y. Feb. 3, 2016). "Where the gravamen of an unjust enrichment claim is that defendants 'unjustly benefitted from unauthorized use' of a work within the scope of the Copyright Act—precisely what Plaintiff alleges here—the claim is preempted." *Id.* (citation omitted); *see also, e.g.*, *Strauss v. Hearst Corp.*, No. 85 Civ. 10017 (CSH), 1988 U.S. Dist. LEXIS 1427, at *27 (S.D.N.Y. Feb. 16, 1988) ("[T]he question here is whether the theory of unjust enrichment involves state-created rights that are qualitatively different from the federal rights protected by the Copyright Act. *Virtually without exception, courts have concluded that they are not.*") (emphasis added); *Am. Movie Classics*, 922 F. Supp at 934 ("Courts have frequently preempted similar unjust enrichment claims that derive from the reproduction, use, or misappropriation of material covered by copyright protection.").

Eastern District judges consistently reach the same conclusion and dismiss unjust enrichment claims that arise from the alleged misappropriation of copyrighted material. *See, e.g.*, *Schleifer v. Berns*, No. 17 Civ. 1649 (BMC), 2017 U.S. Dist. LEXIS 112391, at *14 n.2 (E.D.N.Y. July 19, 2017) ("The Court need not consider plaintiff's claim for unjust enrichment, as it is well-settled that a claim for unjust enrichment is preempted by the Copyright Act."); *accord, e.g.*, *Williams v. Black Entm't TV*, No. 13-CV-1459 (JS) (WDW), 2014 U.S. Dist.

LEXIS 19097, at *28-29 (E.D.N.Y. Feb. 14, 2014); *Wolo*, 349 F. Supp. 3d at 212-13; *Simmons*, 2012 U.S. Dist. LEXIS 40150, at *15-16; *Jacino v. Ill. Tool Works Inc.*, No. 16 Civ. 1704 (BMC), 2017 U.S. Dist. LEXIS 90749 (E.D.N.Y. June 12, 2017). Here too, Genius fails to mention any of these authorities.

Genius contends that allegations of "deceptive and wrongful" conduct render its unjust enrichment claim distinct from a copyright claim. Mot. at 18. But merely pleading deception is not enough to escape preemption. An "extra element" must be something that changes the fundamental nature of the underlying cause of action. That is why the Second Circuit in *Briarpatch* expressly rejected the argument that the allegation that the defendant was enriched by its alleged wrongdoing rendered the unjust enrichment claim "qualitatively different from a copyright infringement claim." 373 F.3d at 306-07 (quoting 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][g] (2003) ("[A] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.")). An example of a non-preempted claim is *CVD Equip. Corp. v. PrecisionFlow Techs., Inc.*, No. 1:02-CV-651, 2007 U.S. Dist. LEXIS 21717 (N.D.N.Y. Mar. 27, 2007) (cited by Genius), where plaintiff alleged not only that defendants misappropriated their materials, but that they gained access to those materials by breaching fiduciary employment relationships with the plaintiff. *Id.* at *2-3, *6-7.

But nothing like that is alleged here. Genius does not and cannot claim that Defendants exploited some kind of fiduciary, confidential, or other trusting relationship with it. Instead, Genius alleges that the Defendants copied and displayed copyrighted content from its website. The so-called "deceptive and wrongful" actions are merely for *concealing*, *failing to investigate*, and *denying* their supposed infringement. Mot. at 18-19. None of these are required elements of

unjust enrichment and none of them make the claim qualitatively different from a claim of copyright infringement. They are just the kind of decorative filigree that may "limit[] the scope of the claim but leave[] its fundamental nature unaltered." *Briarpatch*, 373 F.3d at 306.

The same is true of Genius's allegation that it "receives no compensation for Google's display of content misappropriated from Genius's website[.]" Compl. ¶¶ 179, 196; *see also* Mot. at 11, 15. As Judge McMahon explained in rejecting an identical argument, "[i]f the law were otherwise, every time [a] copyright infringer obtained any profit from his infringing activity, the copyright owner would be able to assert a state claim for unjust enrichment." *Atrium Grp.*, 565 F. Supp. 2d at 509. Plaintiff's unjust enrichment claims, like its claims for breach of contract and unfair competition, are preempted by Section 301.

## **CONCLUSION**

Because Genius's state law claims are all preempted by the Copyright Act, the Court should deny Genius's motion to remand and dismiss the Complaint with prejudice. *See Briarpatch*, 373 F.3d at 309 ("[O]nce a district court determines that a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action.").

Alternatively, in the event the Court concludes that only some of the claims are preempted, the Court should exercise supplemental jurisdiction over the non-preempted claims under 28 U.S.C. § 1367. *Briarpatch*, 373 F.3d at 308; *see also, e.g.*, *Integrative Nutrition*, 476 F. Supp. 2d at 299 (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

Dated: February 28, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *s/ Brian M. Willen*

Brian M. Willen
Jason Mollick
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
jmollick@wsgr.com

*Counsel for Defendant Google LLC*

FREUNDLICH LAW

By: *s/ Kenneth D. Freundlich*

Kenneth D. Freundlich
16133 Ventura Blvd., Suite 645
Encino, California 91436
Telephone: (310) 275-5350
Facsimile: (310) 285-5351
ken@freundlichlaw.com

c/o Daniel J. Aaron (Local Counsel)
DANIEL J. AARON, P.C.
750 Third Avenue, Suite 1006
New York, New York 10017
Telephone: (212) 684-4466
Facsimile: (212) 684-5566

*Counsel for Defendant LyricFind, Inc.*