UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENIUS MEDIA GROUP INC., *Plaintiff,* v. GOOGLE LLC and LYRICFIND, *Defendants*. | Case No. 19 Civ. 7279 (MKB) (VMS) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO REMAND**

PRYOR CASHMAN LLP

Ilene S. Farkas
Marion R. Harris
Kaveri Arora
7 Times Square
New York, New York
(212) 421-4100
ifarkas@pryorcashman.com
mharris@pryorcashman.com
karora@pryorcashman.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ....................................................................................................................1

    I.     DEFENDANTS CONCEDE THE INDEPENDENT VALUE OF
          TIMELY AND ACCURATE MUSIC LYRIC TRANSCRIPTIONS
          THROUGH THEIR VERY OWN BUSINESS MODELS, YET IGNORE
          THEM WHEN CONVENIENT FOR THEIR LITIGATION STRATEGY .......................2

    II.    GENIUS'S CLAIMS ARE QUALITATIVELY
          DIFFERENT THAN A COPYRIGHT CLAIM ............................................................4

          A.    Defendants Ignore the Detailed Allegations of Bad Faith And Deception ................4

          B.    Genius's Contract and Quasi Contract Claims Are Not Preempted ...........................5

          C.    Genius's Unfair Competition Claims Are Not Preempted .........................................8

CONCLUSION ...............................................................................................................10

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Alpha Media Works, Inc. v. Perception Research Servs.*,
  No. 09 Civ. 9563 (GBD), 2012 U.S. Dist. LEXIS 16493 (S.D.N.Y. Feb. 9, 2012) ..................6

*American Movie Classics Co. v. Turner Entm't Co.*,
  922 F. Supp. 926 (S.D.N.Y. 1996)........................................................................6, 8, 9

*Architectonics, Inc. v. Control Sys., Inc.*,
  935 F. Supp. 425 (S.D.N.Y. 1996)....................................................................................5

*Atrium Group de Ediciones y Publicaciones, S.L., Inc. v. Harry N. Abrams*,
  565 F. Supp. 2d 505 (S.D.N.Y. 2008)..............................................................................8

*Blue Ribbon Pet Prods, Inc. v. Rolf C. Hagen (USA) Corp.*,
  66 F. Supp. 2d 454 (E.D.N.Y. 1999)................................................................................9

*Briarpatch Ltd, L.P. v. Phoneix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) ............................................................................................7

*BroadVision Inc. v. GE*,
  No. 08 Civ. 1478 (WHP), 2008 U.S. Dist. LEXIS 81863 (S.D.N.Y. Oct. 15, 2008)...........6

*Canal+ Image UK, Ltd. v. Lutvak*,
  773 F. Supp. 2d 419 (S.D.N.Y. 2011) ..............................................................................6

*Computer Assocs. Int'l v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ............................................................................................4

*CVD Equip. Corp. v. Precision Flow Techs., Inc.*,
  No. 1:02-CV-651 (NAM), 2007 WL 951567 (N.D.N.Y. Mar. 27, 2007)...............................7

*Gener-Villar v. Adcom Grp., Inc.*,
  417 F.3d 201 (1st Cir. 2005).............................................................................................1

*Hofheinz v. AMC Prods, Inc.*,
  No. CV-00-5827 (CPS), 2003 U.S. Dist. LEXIS 16930 (E.D.N.Y. Apr. 21, 2003)..................6

*Integrative Nutrition, Inc. v. Academy of Healing Nutrition*,
  476 F. Supp. 2d 291 (S.D.N.Y 2007)................................................................................9

*Jacino v. Illinios Tool Works Inc.*,
  No. 16 Civ. 1704 (BMC), 2017 U.S. Dist. LEXIS 90749 (E.D.N.Y. June 13, 2017) ...............8

**CASES** **PAGE(s)**

*Jacino v. Illinois Tool Works Inc.*,
   No. 16 Civ. 1704 (BMC), 2017 U.S. Dist. LEXIS 166287 (E.D.N.Y. Oct. 6, 2017)................9

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ...........................................................................................9

*Kregos v. Associated Press*,
   3 F.3d 656 (2d Cir. 1993) ..................................................................................................7

*Lennon v. Seaman*,
   63 F. Supp. 2d 428 (S.D.N.Y. 1999)..................................................................................5

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
   156 F. Supp. 3d 1052 (N.D. Cal. 2016)..............................................................................9

*Miller v. Loibl*,
   No. 11 Civ. 2182 (TPG), 2013 U.S. Dist. LEXIS 25199 (S.D.N.Y. Feb. 22, 2013) ................ 6

*Price v. Fox Entm't Group, Inc.*,
   473 F. Supp. 2d 446 (2007) ..............................................................................................6

*Reed v. Peterson*,
   No. C04-00228 WWS, 2005 U.S. Dist. LEXIS 50720 (N.D. Cal. June 27, 2005) ..................9

*Schleifer v. Berns*,
   No. 17 Civ. 1649 (BMC), 2017 WL 3084406 (E.D.N.Y. Jul. 19, 2017) ................................8

*SCO Grp., Inc. v. IBM Corp.*,
   879 F.3d 1062 (10th Cir. 2018) ...............................................................................5, 8, 9

*Shepard v. European Pressphoto Agency*,
   291 F. Supp. 3d 465 (S.D.N.Y. 2019).............................................................................6, 9

*Silverstein v. Penguin Putnam, Inc.*,
   522 F. Supp. 2d 579 (S.D.N.Y. 2007)................................................................................5

*Silverstein v. Penguin Putnam, Inc.*,
   No. 01 Civ. 309 (JFK), 2003 U.S. Dist. LEXIS 5487 (S.D.N.Y. Apr. 4, 2003).......................5

*Simmons v. Stanberry*,
   No. 10-CV-5815 (RER), 2012 U.S. Dist. LEXIS 40150 (E.D.N.Y. Mar. 23, 2012)................8

**CASES**                                                                                                                                  **PAGE(s)**

*Simmons v. Stanberry*,
   No. 10-CV-5815 (DLI) (RER), 2014 U.S. Dist. LEXIS 99857 (E.D.N.Y. 2014),
   *aff'd*, 810 F.2d 1114 (2d Cir. 2016) ...................................................................6, 9

*Sleppin v. Thinkscan.com, LLC*,
   55 F. Supp. 3d 366 (E.D.N.Y. 2014).......................................................................1

*Stanacard, LLC v. Rubard, LLC*,
   No. 12 Civ. 5176 (CM), 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) ......................8

*Strauss v. Hearst Corp.*,
   No. 85 Civ. 10017 (CSH), 1988 U.S. Dist. LEXIS 1427 (S.D.N.Y. Feb. 16, 1988)................8

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
   7 F.3d 1434 (9th Cir. 1993) .....................................................................................9

*Tannenbaum v. Corbis Sygma*,
   No. 02 Civ. 5066, 2002 U.S. Dist LEXIS 23928 (S.D.N.Y. Dec. 13, 2002) ...........6

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986) ..................................................................................8, 9

*Warner Bros. v. ABC*,
   720 F.2d 231 (2d Cir. 1983) ....................................................................................8

*Williams v. Black Entm't TV*,
   No. 13-CV-1459 (WDW), 2014 U.S. Dist. LEXIS 19097 (E.D.N.Y. Feb. 14, 2014)...............8

*Wolo Mfg. Corp. v. ABC Corp.*,
   349 F. Supp. 3d 176 (E.D.N.Y. 2018)..................................................................8, 9

*Woolcott v. Baratta*,
   No. 13-CV-2964 (GRB), 2014 U.S. Dist. LEXIS 63043 (E.D.N.Y. May 7, 2014) .................9

**ARTICLE**

*Wall Street Journal* "Lyrics Site Accuses Google of Lifting Its Content" (June 16, 2019) ..........4

Plaintiff Genius Media Group, Inc. ("Genius") respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Remand (the "Motion").

**ARGUMENT**

"[T]he question of whether a state law claim arises under the Copyright Act 'poses among the knottiest procedural problems in copyright jurisprudence.'" *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 372 (E.D.N.Y. 2014) (quoting *Gener-Villar v. Adcom Grp., Inc.,* 417 F.3d 201, 203 (1st Cir. 2005) (other citations omitted)). Defendants' opposition attempts to evade the knottiness of preemption analysis via deceptive simplicity, pretending that Genius's business model (and apparently LyricFind's as well) is something entirely different from reality. The Copyright Act does not preempt Genius's claims.

Preemption comes into play when a plaintiff seeks redress for the unauthorized use of a copyrighted work. All parties are in agreement that none of them own the copyright to the underlying music lyrics (all being licensees). And all of them are in agreement that the copyright owners typically do not make lyric transcriptions available to the public; indeed, for the most part they do not even possess these transcriptions themselves. All parties are in agreement that there is a public desire for easily accessible lyric transcriptions – and an even greater desire for these transcriptions to be accurate and available immediately upon the release of new music. Indeed, LyricFind's business is built upon this public desire, and Google pays considerable fees to LyricFind for their ability to provide them to Google. In order for Genius (and LyricFind) to create these transcriptions on a timely basis (which LyricFind then sells to Google and others for profit), significant resources, effort and workforces have been deployed. Yet, notwithstanding the fact that their own business relationship is premised upon the desire and value for these timely and accurate transcriptions, both LyricFind and Google apparently believe that it is appropriate to simply steal this content from Genius, and then, when caught – literally "red handed" – to brazenly make the straw man argument that Genius is without a remedy because Genius is not the copyright owner to the lyrics. Defendants' arguments are transparently disingenuous, belied by their own

business models and conduct, and a complete affront to unfair competition jurisprudence. This case should be remanded to State Court where Genius can pursue its claims against its competitors.

I. **DEFENDANTS CONCEDE THE INDEPENDENT VALUE OF TIMELY AND ACCURATE MUSIC LYRICS TRANSCRIPTIONS THROUGH THEIR OWN BUSINESS MODELS, YET IGNORE THEM WHEN CONVENIENT FOR THEIR LITIGATION STRATEGY**

Notwithstanding Defendants' blatantly false claim in its Opposition (Opp. at 7), Genius does not concede that the Subject Matter Requirement is satisfied here. To the contrary, the subject matter at issue – the creation, curation and provision of timely and accurate music lyrics transcriptions – is not protected by the Copyright Act.

The market for the creation, curation and provision of music lyrics transcriptions is unusual.[1] Each of the parties in this action is a licensee of the copyright owner of music lyrics, which are typically music publishers. These licenses, however, only give the licensee the right to display music lyrics transcriptions that the licensee typically independently obtains – it does not include the actual transcription of the music lyrics themselves. Indeed, those music publishers do not provide to licensees (and, in many cases, such publishers do not even possess) transcriptions of the music lyrics, requiring a licensee to either (i) transcribe the music lyrics themselves; or (ii) license music lyrics transcriptions from someone who has transcribed the lyrics. In this instance, however, the Defendants have simply chosen to misappropriate content from Genius's service in lieu of transcribing it themselves or licensing it from Genius.

That parties like Google have paid to license music lyrics transcriptions from companies like LyricFind demonstrates the value of licensing the music lyrics transcriptions <u>separate and apart</u> from the value of the necessary predicate license from the copyright owners. Indeed, companies like Apple pay to license lyrics transcriptions from Genius, often the very lyrics transcriptions Defendants are misappropriating. There is a public desire for the fast, accurate and complete transcription of lyrics – particularly upon the release of new music. There is a value to being known as the foremost repository of fast, accurate and complete lyrics transcriptions.

---

[1] Neither party has identified any authority addressing copyright preemption in this context.

Indeed, both Genius's and LyricFind's businesses depend on it, and Google created its Information Boxes in order to drive revenue for itself by keeping users within its ecosystem of products and services. Yet, when caught "red handed," Defendants suddenly hide from the very essence of their business models and the independent value of the music lyrics transcriptions, hoping that the Court will ignore this inconvenient "knot" in the preemption analysis.

Defendants seem to argue that because they stole transcriptions of content that happens to be copyrightable (a fact that the Defendants in no way dispute), Genius's claims are preempted because their theft of Genius's labor and business also happens to relate to a copyrightable work. The subject matter of this action, however, is not so narrowly construed. Indeed, throughout the Complaint and Genius's moving brief, it is clear that the subject matter of this action is Genius's substantial investment of time and money in the creation, curation and provision of timely and accurate music lyrics transcriptions, which has been wrongly misappropriated by Defendants, and not simply use of the copyrightable lyrics themselves.

Google and LyricFind would concede that, had they chosen to license the music lyrics transcriptions from Genius, as Google has done with LyricFind, Genius's claims for breach of that license would not be preempted. Somehow, Genius's efforts and content have value when Google is paying LyricFind for this (stolen) content, but in this litigation, Genius's efforts and content are suddenly valueless. The brazenness of Defendants' own, wrongful conduct cannot and should not be the basis for depriving Genius of any avenue for relief, as Genius is not seeking redress for the unauthorized use of the lyrics themselves.

Here, the damages sought by Genius in its action directly relate to the independent value that Genius created through the substantial investment in technology, staff and in fostering a community of music enthusiasts to interact with its service. The damages sought in this action are qualitatively different and admittedly distinct from the damages available to a copyright owner and, accordingly, are not preempted by the Copyright Act.

3

## II. GENIUS'S CLAIMS ARE QUALITATIVELY DIFFERENT THAN A COPYRIGHT CLAIM

### A. Defendants Ignore the Detailed Allegations of Bad Faith and Deception

Defendants also wholly ignored the detailed allegations concerning the parties' bad faith and deception surrounding their brazen theft of a competitor's content – and continuing to do so even after being caught. These allegations render Genius's claims qualitatively different from a copyright claim (even if the subject matter prong could be met) and therefore not preempted. Defendants claim their bad faith can be excused because "[a]n action will not be saved from preemption by elements such as awareness or intent" (Opp. at 20 (*Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992)) (citation omitted)). Unlike the cases relied upon by Defendants, however, the conduct here is much more severe than awareness or intent:

> While Google's own internal guidelines disfavor copied content, Google prominently and knowingly displays misappropriated content from Genius's service in its Information Box – even after receiving direct proof of being caught "red handed" – to the direct financial detriment of Genius;

> Google's Information Box incorrectly identifies the source of the misappropriated content as "LyricFind," despite being on actual notice of the falsity of that information;

> After the publication of the *Wall Street Journal* article,[2] Google publicly announced that it asked its "lyrics partners to investigate the issue [of misappropriate lyrics transcriptions]," noting that Google "always strive[s] to uphold high standards of conduct for ourselves and from the partners we work with." Despite this lip service, Google has taken <u>no action</u> in the two years after first being given notice of this conduct by Genius;

> After the publication of the *Wall Street Journal* article, LyricFind publicly stated that it did not "source lyrics from Genius," despite unequivocal proof that it was caught "red handed" misappropriating content from Genius's service, and continued to do so in the months to follow;

> The watermarks employed by Genius to detect and track the misappropriation each could be seen in Google's/LyricFind's stolen lyrics, only to disappear <u>after</u> they were publicized, first by the *Wall Street Journal* (Watermark #1), then by the filing of the complaint in this action (Watermark #2)[3]; and

---

[2] On June 16, 2019, the *Wall Street Journal* published an article titled "Lyrics Site Accuses Google of Lifting Its Content," outlining Google and LyricFind's misappropriation of lyrics from Genius's website.

[3] Defendants' modification of the watermarked lyrics after the filing of this complaint unquestionably raises questions of spoliation, which will be addressed at the appropriate juncture in this action.

4

Rather than hold its partner LyricFind to "high standards of conduct," Google now apparently believes that while it pays a healthy fee to LyricFind for the very transcriptions at issue, when it steals this very content from Genius, it is free for the taking. It can't have it both ways.

Moreover, as recited in Genius's opening brief, the Tenth Circuit (applying New York law) addressed the specific question that the Second Circuit has not – finding that the "bad faith" required under New York unfair competition law is qualitatively distinct from a copyright claim and therefore is not preempted by the Copyright Act. *SCO Grp., Inc. v. IBM Corp.*, 879 F.3d 1062, 1080-81 (10th Cir. 2018).[4] Again, Defendants chose not to address this.

### B. Genius's Contract and Quasi Contract Claims Are Not Preempted

Even if the Court were to examine the specific claims under a preemption analysis (which it need not do here given that the Subject Matter Requirement is not met), they are qualitatively different from a Copyright Act claim and therefore not preempted. Defendants are bound by Genius's Terms of Service, which impose on Defendants an obligation not to copy or scrape Genius's Service for "commercial purposes." This independent, contractual obligation constitutes an "extra element" which makes the claim qualitatively different from a Copyright Act claim. *Architectonics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425 (S.D.N.Y. 1996) ("Protection from breach of contract . . . is not equivalent to copyright protection because a contract claim requires an 'extra element' that renders the claim qualitatively different from a claim for copyright infringement: a promise by defendant."); *see also Lennon v. Seaman*, 63 F. Supp. 2d 428 (S.D.N.Y. 1999) (finding no preemption where contract imposed restrictions on distribution of copyrighted material through confidentiality provision).

---

[4] Defendants misrepresent to this Court that Genius cited a case in which a court "reversed itself" with respect to preemption of a "reverse passing off" unfair competition claim. (*See* Opp. at 22). Defendants completely mischaracterize the findings of the court in *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 608-09 (S.D.N.Y. 2007). On summary judgment, the *Silverstein* Court found unfair competition claims were not preempted because they involved the extra element of, *inter alia* "deception." *Silverstein v. Penguin Putnam, Inc.*, No. 01 Civ. 309 (JFK), 2003 U.S. Dist. LEXIS 5487, at *25-26 (S.D.N.Y. Apr. 4, 2003). On appeal, the Second Circuit reversed and remanded on other grounds. Following a bench trial three years later, the *Silverstein* district court noted that plaintiff's claims of "immoral" conduct were not enough to avoid preemption. In its post-trial decision, the court did not address whether "deception" satisfied the "extra element" test whatsoever and thus that aspect of the Court's decision still stands.

5

Defendants concede that the Second Circuit has not ruled on the question of whether the promise inherent in a contract is a sufficient extra element to defect preemption. (Opp. at 11-12). Instead, they cite an irrelevant litany of cases in support of their preemption argument. For example, Defendants cite to a number of cases where a party who owns or controls copyright rights in the work at issue asserts contract claims – either in addition or in lieu of Copyright Act claims.[5] In these cases, the plaintiffs were in fact bringing suit based solely on the unauthorized use of the copyrighted work at issue, and the courts held that their rights in those works were delineated by the Copyright Act. Here, all parties concede that (a) they do not own the copyright in the music lyrics; (b) that Genius cannot sue for infringement of the lyrics; but yet (c) the accuracy, completeness and speed at which transcriptions are curated and made available is of significant value, even to the copyright owner (which is why LyricFind licenses these transcriptions to Google and others for a significant price). These claims are separate and apart from the claims that the copyright owners of the lyrics may possess.

Defendants' remaining case involved a dispute between the parties regarding the ownership of the copyright and right to receive royalties flowing therefrom.[6] Neither of these groups of cases

---

[5] *See Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465 (S.D.N.Y. 2019) (Plaintiff owned copyright to works of art and asserted breach of one-day license agreement); *Miller v. Loibl*, No. 11 Civ. 2182 (TPG), 2013 U.S. Dist. LEXIS 25199 (S.D.N.Y. Feb. 22, 2013) (Defendants' counterclaim for breach of contract based on exclusive distribution agreement, which granted exclusive distribution rights to defendants); *Alpha Media Works, Inc. v. Perception Research Servs.*, No. 09 Civ. 9563 (GBD), 2012 U.S. Dist. LEXIS 16493 (S.D.N.Y. Feb. 9, 2012) (plaintiff owned copyright to software); *BroadVision Inc. v. GE*, No. 08 Civ. 1478 (WHP), 2008 U.S. Dist. LEXIS 81863 (S.D.N.Y. Oct. 15, 2008) (breach of contract claim based on a non-exclusive license to use/reproduce software); *Simmons v. Stanberry*, No. 10-CV-5815 (DLI) (RER), 2014 U.S. Dist. LEXIS 99857 (E.D.N.Y. 2014) (plaintiff held rights to copyright in musical work at issue pursuant to agreement between parties), *aff'd,* 810 F.2d 1114 (2d Cir 2016); *Hofheinz v. AMC Prods, Inc.*, No. CV-00-5827 (CPS), 2003 U.S. Dist. LEXIS 16930, at *18-20 (E.D.N.Y. Apr. 21, 2003) (plaintiff held copyright rights to motion pictures); *American Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926 (S.D.N.Y. 1996) (plaintiff possessed exclusive distribution rights to motion pictures under agreement with defendant); *Canal+ Image UK, Ltd. v. Lutvak,* 773 F. Supp. 2d 419 (S.D.N.Y. 2011) (plaintiff owned copyright to film); *Tannenbaum v. Corbis Sygma,* No. 02 Civ. 5066, 2002 U.S. Dist LEXIS 23928 (S.D.N.Y. Dec. 13, 2002) (plaintiff owed copyright to photographs).

[6] *See Price v. Fox Entm't Group, Inc.*, 473 F. Supp. 2d 446 (2007) (analyzing preemption of breach of contract claim where party was claiming co-authorship).

is at all instructive here, as it is undisputed that the parties to this action are not copyright holders and do not seek to possess or exercise the rights of a copyright holder.[7]

Genius's claims for unjust enrichment are also qualitatively different than a copyright infringement claim, as Genius alleges Defendants were unjustly enriched vis-a-vis their deceptive conduct and exploitation of the fruits of Genius's substantial labor and investment, content from Genius's Service and subsequent concealment. *See CVD Equip. Corp. v. Precision Flow Techs., Inc.*, No. 1:02-CV-651 (NAM), 2007 WL 951567, at *2 (N.D.N.Y. Mar. 27, 2007) (citing *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (agreeing deception was sufficient to avoid preemption of unjust enrichment claim)).

Defendants rely upon *Briarpatch* to claim that the element of enrichment is insufficient to defeat preemption. (Opp. at 17 (citing *Briarpatch Ltd, L.P. v. Phoneix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004).) However, in *Briarpatch*, the Second Circuit focused on the "fundamental nature" of the claim. As already explained (and unaddressed by Defendants), the fundamental nature of Genius's claims are not that of a copyright holder or of the rights flowing to a copyright holder under the Copyright Act. Rather, they concern independent value created in the market for speedy, complete and accurate music lyrics transcriptions, which the parties all acknowledge (indeed, through LyricFind and Google's own business arrangement) is not offered by the copyright owner and has value above and beyond the value of licensing the music lyrics themselves (which simply grants a licensee the right to display the lyrics it obtains elsewhere). Defendants' arguments wholly fail to address the market and realities of the claims brought by Genius, instead seeking to pretend that this is about the lyrics themselves in order to improperly cast this action as another garden-variety preempted copyright action.

---

[7] Defendants fail to refute Genius's position that the Terms of Service's restriction on use for "commercial purposes" satisfies the "extra element" test. Indeed, neither case cited by Defendants in support of their position even analyzes this issue and one of the cases is out-of-Circuit from the District of New Jersey.

Moreover, like above, the cases cited by Defendants are inapposite as they involve copyright owners or their exclusive licensees suing for the unauthorized use or reproduction of its copyrighted material, which of course, is not the case here.[8]

**C. Genius's Unfair Competition Claims Are Not Preempted**

Genius's unfair competition claims are likewise qualitatively different from a Copyright Act claim. The extra elements of "bad faith" and "unfairness" make Genius's unfair competition claims qualitatively different than a copyright claim, thereby defeating preemption. *See SCO Grp., Inc.*, 879 F.3d at 1080-81 (applying New York law and finding the unfair competition claim was not preempted by the Copyright Act because the "bad faith" required for an unfair competition claim makes it qualitatively different than a copyright claim).

Defendants' preemption arguments mischaracterize Genius's unfair competition claim by pretending that Genius is seeking "protection against copying of [a copyrighted work.]" *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir. 1986), thus, seeking to protect "rights equivalent to any of the exclusive rights within the general scope of copyright." *Warner Bros. v. ABC,* 720 F.2d 231, 247 (2d Cir. 1983) (citation & quotations omitted). Just like LyricFind's own licenses (to Google and others) do not seek to authorize the use of "rights equivalent to" the copyright owners of the lyrics, Genius is not seeking to stop others from using the lyrics themselves, or to

---

[8] *See Stanacard, LLC v. Rubard, LLC*, No. 12 Civ. 5176 (CM), 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) (Plaintiff owned copyright to source code and sued defendants for its unauthorized use of such code); *Strauss v. Hearst Corp.*, No. 85 Civ. 10017 (CSH) 1988 U.S. Dist. LEXIS 1427 (S.D.N.Y. Feb. 16, 1988) (plaintiff owned copyright to photographs at issue); *American Movie Classics Co.*, 922 F. Supp. 926 (plaintiff possessed exclusive distribution rights to motion pictures under agreement with defendant); *Schleifer v. Berns*, No. 17 Civ. 1649 (BMC), 2017 WL 3084406 (E.D.N.Y. Jul. 19, 2017) (plaintiff owned copyright in book); *Williams v. Black Entm't TV*, No. 13-CV-1459 (JS) (WDW), 2014 U.S. Dist. LEXIS 19097 (E.D.N.Y. Feb. 14, 2014) (plaintiff brought copyright infringement and unjust enrichment claims based on his purported ownership of copyright to his life story which was featured in defendants' documentary without authorization); *Simmons v. Stanberry*, No. 10-CV-5815 (DLI) (RER), 2012 U.S. Dist. LEXIS 40150 (E.D.N.Y. Mar. 23, 2012) (plaintiff held rights to copyright in musical work at issue pursuant to agreement between parties); *Jacino v. Illinois Tool Works Inc.*, No. 16 Civ. 1704 (BMC), 2017 U.S. Dist. LEXIS 90749 (E.D.N.Y. June 13, 2017) (plaintiff was author and creator of pictures and the Court did not analyze or even address preemption of an unjust enrichment claim); *Atrium Group de Ediciones y Publicaciones, S.L., Inc. v. Harry N. Abrams*, 565 F. Supp. 2d 505 (S.D.N.Y. 2008) (plaintiff held copyright rights to literary works); *Wolo Mfg. Corp. v. ABC Corp.,* 349 F. Supp. 3d 176 (E.D.N.Y. 2018) (state law claims based on defendants' "purportedly unauthorized use of plaintiff's sound recordings" (*i.e.,* plaintiffs' copyrighted material))..

8

otherwise exercise the rights equivalent to the copyright owner's exclusive rights under the Copyright Act.

Rather, in this case, Genius is simply seeking to stop competitors from accessing its service and stealing its content – content that defendants admit is extremely valuable ***and unavailable from the copyright owner***. After stealing valuable content from Genius's website, Defendant LyricFind then profited off its theft by selling that very content to its customers (who are potential customers of Genius), including Defendant Google who displays these valuable lyric transcriptions in its Information Boxes, which crowd out organic search results (like Genius's) and adversely impact Genius's web traffic. All of Defendants' wrongdoing is above, beyond, separate and apart from the rights and protections afforded a copyright owner under the Copyright Act and is palpably improper.

The remainder of Defendants' cases – as with their contract argument – are inapposite as they involve a plaintiff who owns or controls the copyright at issue asserting an unfair competition claim – either in addition or in lieu of Copyright Act claims – when the copyright remedies are available to them.[9]

---

[9] *See American Movie Classics Co.*, 922 F. Supp. 926 (exclusive licensee); *Shepard*, 291 F. Supp. 3d at 475 (plaintiff owned copyright to works of art); *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291, 298 (S.D.N.Y 2007) (plaintiff brought unfair competition claim based on defendant's purported plagiarism of "plaintiff's intellectual property"); *Walker*, 784 F.3d 44 (plaintiff had valid copyright in book); *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. at 211 (*see* footnote 8, *supra*)); *Simmons*, 2014 U.S. Dist. LEXIS 99857 (plaintiff held exclusive rights to copyright in musical work); *Jacino v. Illinois Tool Works Inc.*, No. 16 Civ. 1704 (BMC), 2017 U.S. Dist. LEXIS 166287 (E.D.N.Y. Oct. 6, 2017) (plaintiff was author and creator of pictures which defendants used without authorization); *Woolcott v. Baratta*, No. 13-CV-2964 (JS) (GRB), 2014 U.S. Dist. LEXIS 63043 (E.D.N.Y. May 7, 2014) (plaintiff held copyright in architectural drawings for residence and claimed they were used by defendant for another project); *Blue Ribbon Pet Prods, Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454 (E.D.N.Y. 1999) (plaintiff held copyright in sketches at issue); *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074 (N.D. Cal. 2016) (plaintiff owned copyright to a search results pages and claims defendant competitor copied and used without authorization); *Reed v. Peterson*, No. C04-00228 WWS, 2005 U.S. Dist. LEXIS 50720, at *13-14 (N.D. Cal. June 27, 2005) (plaintiff owned copyright in his book and claims defendant copied portions from book for his competing book, asserting copyright infringement and unfair competition); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434 (9th Cir. 1993) (plaintiff had exclusive right to distribute all products in accordance with Plaintiff's design). Defendants also rely on one case where the parties themselves were disputing the ownership of the copyright. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-1213 (9th Cir. 1998) (plaintiff attempted to but did not receive a copyright registration for drawings he made and claims that defendant's use of drawings constitutes copyright infringement and unfair competition claims).

Defendants similarly fail to refute Genius's position that the "bad faith" element required for an unfair competition claim under New York law satisfies the "extra element" test. Indeed, not one case cited by Defendants in support of their position even analyzes this issue. Defendants' anticompetitive, conscious and deceptive conduct is a sufficient extra element to render its claims qualitatively different than those under the Copyright Act. Defendants' unfair competition claims are not preempted. *See supra* § II.A.

## CONCLUSION

For the foregoing reasons, in addition to those raised in Genius's opening Memorandum of Law, Genius respectfully requests that this Court enter an order granting the Motion and remanding this action to the Supreme Court of the State of New York, County of Kings.

Dated: New York, New York
March 11, 2020

Respectfully submitted,

PRYOR CASHMAN LLP

*/s/ Marion R. Harris*

By: Ilene S. Farkas
Marion R. Harris
Kaveri Arora
7 Times Square
New York, New York 10036
Tel: (212) 421-4100
Fax: (212) 326-0806
ifarkas@pryorcashman.com
mharris@pryorcashman.com
karora@pryorcashman.com

*Attorneys for Plaintiff*