UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

GENIUS MEDIA GROUP INC.,

                         Plaintiff,

      v.

GOOGLE LLC and LYRICFIND,

                        Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-7279 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Genius Media Group Inc. commenced the above-captioned action on December 3, 2019 in the New York Supreme Court, Kings County, against Defendants Google LLC ("Google") and LyricFind, Inc. ("LyricFind"). (Notice of Removal ¶ 1, Docket Entry No. 1.) On December 30, 2019, Defendants removed the action to the Eastern District of New York. (*Id.*) Plaintiff alleges that Defendants misappropriated lyric transcriptions from its website and then used that content for Defendants' "own financial benefit and to [Plaintiff's] financial detriment," and asserts state law claims for breach of contract, indemnification, unfair competition under both New York common law and California statutory law, and unjust enrichment. (Compl. ¶¶ 1–2, 111–209, annexed to Notice of Removal as Ex. A, Docket Entry No. 1.)

      Plaintiff moves to remand the action to state court. (Pl. Mot. to Remand ("Pl. Mot."), Docket Entry No. 15; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 15-1.) Defendants oppose the motion. (Defs. Opp'n to Pl. Mot. ("Defs. Opp'n"), Docket Entry No. 16.) For the reasons set forth below, the Court denies Plaintiff's motion and dismisses the Complaint for failure to state a claim.

## I. Background

According to the allegations in the Complaint, Plaintiff is a "digital media company," one of whose "primary services is the development and maintenance of . . . annotated music lyrics." (Compl. ¶ 1.) LyricFind is a Canadian company that maintains a database of music lyrics. (*Id.* ¶¶ 8–9.) Both Plaintiff and LyricFind "license lyrics for display [and distribution] from music publishers." (*Id.* ¶¶ 18–19.) Google "owns and operates . . . the internet's dominant search platform." (*Id.* ¶ 14.) Pursuant to an agreement between Defendants, "LyricFind provides lyrics to Google for use in . . . Google's search results." (*Id.* ¶ 12.)

### a. Plaintiff's services and business model

While music publishers "usually own the copyright in the lyrics for a given song," companies like Plaintiff and LyricFind "do not typically receive any actual lyrics transcriptions in connection with their licensing agreements," (*id.* ¶ 18), and must otherwise generate or obtain the lyrics they have licensed for display, (*see id.* ¶ 19). Plaintiff "provides a platform" for an online community of "music enthusiasts who transcribe music lyrics." (*Id.* ¶ 19.) The transcription process is "arduous," and Plaintiff has "invested ten years and millions of dollars to build the technology and community that support[] collaborative lyrics transcription." (*Id.* ¶ 20.) In addition to this collaborative transcription process, Plaintiff also "obtains lyrics . . . directly" from artists. (*Id.* ¶ 19.) Plaintiff "earns revenue in several ways," including by "licens[ing] its database of high-quality lyrics" to "major companies, such as Apple," and by "generat[ing] ad revenue through web traffic on its website and apps." (*Id.* ¶ 22.)

All visitors to Plaintiff's website are bound by terms and conditions (the "Terms of Service"), "which are accessible to users from all pages of [Plaintiff's] website." (*Id.* ¶ 24.) The Terms of Service prohibit, *inter alia*, the unauthorized "licens[ing], . . . copy[ing],

modif[ication], s[ale], . . . [or] transm[ission] for any commercial purpose, [of] any portion of [Plaintiff's] Service, or access to [Plaintiff's] Service." [1] (*Id.* ¶¶ 112, 115.) The Terms of Service also prohibit, *inter alia*, the unauthorized "modif[ication], copy[ing], . . . s[ale], [or] distribution" of Plaintiff's content, other than a user's own content that a user has "legally upload[ed]" to Plaintiff's website.[2] (*Id.* ¶ 119.)

### b. Google's lyrics information boxes and Plaintiff's suspicions of misconduct

Many visitors arrive at Plaintiff's website via a search engine, "most typically Google's," and Plaintiff "is often the top-ranked organic search result on Google for lyrics search queries." (*Id.* ¶¶ 23, 25.) However, even if Plaintiff is the top-ranked organic result for a user's lyrics search, a Google search feature known as an "Information Box" may still appear "above all other organic search results," displaying "the complete lyrics for the requested song." (*Id.* ¶¶ 28–29.) Such lyrics Information Boxes are often "displayed in such a manner that the user cannot see any other search results without first scrolling down," (*id.* ¶ 30), and significantly reduce the "click-

---

[1] The Terms of Service provision regarding commercial use provides that:
> Unless otherwise expressly authorized herein or by [Plaintiff's] express written consent, you agree not to display, distribute, license, perform, publish, reproduce, duplicate, copy, create derivative works from, modify, sell, resell, exploit, transfer or transmit for any commercial purpose, any portion of the Service, or access to the Service. The Service is for your personal use and may not be used for direct commercial endeavors without the express written consent of [Plaintiff].

(Compl. ¶ 115.)

[2] The Terms of Service provides that:
> Except as expressly authorized by [Plaintiff] in writing, you agree not to modify, copy, frame, scrape, rent, lease, loan, sell, distribute or create derivative works based on the Service of the [Plaintiff] Content, in whole or in part, except that the foregoing does not apply to your own User Content that you legally upload to the Service.

(Compl. ¶ 119.)

through rate" to Plaintiff's website, (*id.* ¶¶ 101–02).

When Google introduced the Information Box feature into its lyrics search results, Plaintiff "observed that the lyrics in those Information Boxes were sometimes identical, on a character-for-character basis," to lyrics on Plaintiff's website. (*Id.* ¶¶ 46–47.) Because such a match "is highly unlikely" given the particular nature of the lyrics transcription process, Plaintiff came to suspect that its "lyrics . . . were being misappropriated." (*Id.* ¶¶ 48–49.)

### c. Plaintiff investigates suspected misconduct and puts Defendants on notice of its findings

In August of 2016, in an effort to further investigate this suspected misappropriation, Plaintiff created a "digital watermark to embed in certain lyrics appearing on its site" ("Watermark #1"). (*Id.* ¶ 59.) Watermark #1 consisted of a "distinctive pattern of curly . . . and straight apostrophes," which, when converted into "dots" and "dashes," "spells out 'REDHANDED' in Morse code." (*Id.* ¶ 60.) In May of 2017, Plaintiff notified Google via email that it had found Watermark #1 in Google's lyrics Information Boxes, "prov[ing] that Google was displaying lyrics copied from [Plaintiff's] website." (*Id.* ¶ 62.) In response to that initial email and subsequent follow-up communications by Plaintiff, Google informed Plaintiff that it was "looking into the issue." (*Id.* ¶¶ 62–63.)

In October of 2018, Plaintiff "designed [and implemented] an experiment to more systematically assess the incidence of lyrics misappropriated from [Plaintiff's] website in Google's lyrics Information Boxes," based on which Plaintiff "concluded that the incidence of lyrics irrefutably copied from [Plaintiff's] website in Google's lyrics Information Boxes was widespread and that the copying was systematic." (*Id.* ¶¶ 64, 67.)

In April of 2019, Plaintiff "again notified Google, in writing, that it was displaying content misappropriated from [Plaintiff's] website," in response to which Google eventually

"identified LyricFind as the source of the lyrics [in] the examples that [Plaintiff] provided to Google." (*Id.* ¶¶ 68, 70.) Plaintiff then "wrote to LyricFind to request that it cease and desist from the misappropriation and commercialization of content appearing on [Plaintiff's] website." (*Id.* ¶ 71.) Despite having been "placed on actual notice of their behavior," Defendants failed to take "any steps to cease such conduct." (*Id.* ¶ 72.)

On June 16, 2019, the *Wall Street Journal* published an article detailing Plaintiff's allegations that Defendants had copied lyrics from Plaintiff's website. (*Id.* ¶ 74.) On June 18, 2019, Google stated in a blog post that it had asked LyricFind "to investigate the issue to ensure [it is] following industry best practices in [its] approach," and affirmed Google's commitment to "uphold high standards of conduct for [itself] and from the partners [it] work[s] with." (*Id.* ¶ 77.)

Soon after the article's publication, Google began adding source attributions to its lyrics Information Boxes, including attributions to LyricFind for lyrics that Plaintiff had previously notified Google appeared to be taken from Plaintiff's website. (*Id.* ¶ 81.) Around the same time, Plaintiff "discovered that Watermark #1 had disappeared from Google's lyrics Information Boxes." (*Id.* ¶ 82.) Suspecting "a deliberate effort . . . to conceal [continued] misappropriation of lyrics from [Plaintiff's] website," Plaintiff created a second watermark, this time designed to spell out the word "GENIUS" in Morse code ("Watermark #2"). (*Id.* ¶¶ 83–84.) Plaintiff then watermarked one set of lyrics on its website with Watermark #1, a second group of lyrics with Watermark #2, and a third set of lyrics with both Watermark #1 and Watermark #2. (*Id.* ¶ 85.) In monitoring the three sets of lyrics, Plaintiff observed Watermark #2 on lyrics in both the second and third groups, but did not observe Watermark #1 on any lyrics in either the first or third group. (*Id.* ¶ 86.) In a number of instances involving lyrics in which Plaintiff had embedded both Watermark #1 and Watermark #2, Plaintiff observed that Watermark #2, "the

details of which had not previously been made public," was present, while Watermark #1 was not. (*Id.* ¶ 88.)

On November 6, 2019, Plaintiff informed Google of these findings, and "demanded that Google stop displaying lyrics misappropriated from [Plaintiff's] website and address the issue." (*Id.* ¶ 90.) In response, Google asserted it had not done anything wrong, and stated that it had "'obtained additional assurances' that their data partners 'do not, and would not, obtain lyrics from [Plaintiff's] website.'" (*Id.* ¶ 91.)

### d.   State court action and removal to this Court

On December 3, 2019, Plaintiff commenced this action in the New York Supreme Court, Kings County, asserting claims for (1) breach of contract, based on Defendants' alleged violation of Plaintiff's Terms of Service, (*id.* ¶¶ 111–23, 128–40); (2) indemnification for "damages and incurred expenses . . . including . . . attorneys' fees and lost advertising and licensing revenue," pursuant to Plaintiff's Terms of Service, (*id.* ¶¶ 124–27, 141–44); (3) unfair competition under both New York common law and California Business and Professional Code § 17200 *et seq.*, (*id.* ¶¶ 145–99); and (4) unjust enrichment, (*id.* ¶¶ 200–09). Plaintiff seeks money damages and injunctive relief. (*Id.* at 49.)

On December 30, 2019, Defendants removed the action to this Court. (Notice of Removal.) Defendants assert that the state law claims alleged in the Complaint all arise from "(i) the alleged copying of digital transcriptions of copyrighted musical lyrics from [Plaintiff's] website by LyricFind, and (ii) the display of these copyrighted lyrics on Google's website," and that "[t]hese are in essence claims for copyright infringement disguised as various state law causes of action." (*Id.* ¶ 4.) Defendants further assert that "this Court has original jurisdiction [over the action] under 28 U.S.C. §§ 1331 and 1338," and that the action "may be removed to

this Court [by Defendants], pursuant to 28 U.S.C. § 1441 *et seq.*, because it is a civil action containing purported state law claims which are preempted by Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a) and thus within the exclusive jurisdiction of this Court." (*Id.* ¶ 8.)

On March 11, 2020, Plaintiff moved to remand the action to state court, arguing that Defendants have not established that the Court has jurisdiction over this action because Plaintiff's claims are not preempted by the Copyright Act. (*See* Pl. Mot; Pl. Mem.)

## II. Discussion

### a. Standard of review

A notice of removal must allege a proper basis for removal under 28 U.S.C. §§ 1441–1445. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal."); *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013) ("An effective petition for the removal of a state action to federal court must allege a proper basis for the removal under sections 1441 through 1445 of Title 28." (quoting *Negron v. New York*, No. 02-CV-1688, 2002 WL 1268001, at *1 (E.D.N.Y. Apr. 1, 2002))). The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements have been met. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.").

### b. Plaintiff's claims are preempted by the Copyright Act

Defendants argue that "Plaintiff's claims are wholly premised on Defendants' alleged use of musical lyrics, which are expressly identified as falling among the 'works of authorship' protected by the Copyright Act." (Defs. Opp'n 7–8.) Defendants also argue that of the two-part

test to determine whether Plaintiff's claims are preempted by the Copyright Act — the subject-matter and the general scope requirements — "Genius concedes, as it must, that the subject matter requirement is satisfied here." (*Id.* at 7.)

Plaintiff argues that "the creation, curation, and provision of timely and accurate music lyrics transcriptions . . . is not protected by the Copyright Act." (Pl. Reply 2, Docket Entry No. 17.)

"The Copyright Act exclusively governs a claim when (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019) (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004)). "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Briarpatch Ltd., L.P.*, 373 F.3d at 305 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997)).

"The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Id.* (citing *Nat'l Basketball Ass'n*, 105 F.3d at 848–49). "A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Id.* (citing *Nat'l Basketball Ass'n*, 105 F.3d at 848–50). "These categories encompass literary works and motion pictures, including those based on preexisting works." *Id.* (citations omitted).

"The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law."[3] *Briarpatch Ltd., L.P.*, 373 F.3d at 305 (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)); *Universal Instruments Corp.*, 924 F.3d at 48 ("'A state law right is equivalent to one of the exclusive rights of copyright if it may be abridged by an act which, in and of itself, would infringe one of the exclusive rights.'" (internal quotation marks omitted) (quoting *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012)). "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." *Briarpatch Ltd., L.P.*, 373 F.3d at 305 (first citing 17 U.S.C. § 106; and then citing *Comput. Assocs. Int'l Inc.*, 982 F.2d at 716). "'But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action,' there is no preemption." *Universal Instruments Corp.*, 924 F.3d at 48 (quoting *Forest Park Pictures*, 683

---

[3] Section 106 of the Copyright Act establishes the exclusive rights held by a copyright right owner in copyrighted works. *See* 17 U.S.C. § 106. Section 106 provides, in relevant part:

> [T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

*Id.*

F.3d at 430 (internal quotation marks omitted)).  "Preemption, therefore, turns on 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'"  *Id.* (alteration in original) (quoting *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 716); *Briarpatch Ltd., L.P.*, 373 F.3d at 306 ("To determine whether a claim is qualitatively different, [courts in this Circuit] look at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." (alterations, quotations, and citation omitted)).  The Second Circuit has directed courts to "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright claim."  *Briarpatch Ltd., L.P.*, 373 F.3d at 306.

### i.  Plaintiff's claims satisfy the subject matter prong

The transcribed song lyrics that are the subject matter of Plaintiff's claims fall within the type of works protected by the Copyright Act and therefore satisfy the subject matter prong.

To satisfy the "subject matter" prong, "a claim must involve a work 'within the subject matter of copyright.'"  *Forest Park Pictures*, 683 F.3d at 429 (quoting 17 U.S.C. § 301(a)); *see also Briarpatch Ltd., L.P.*, 373 F.3d at 305 ("The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works.").  "Copyright protection exists for 'original works of authorship fixed in any tangible medium of expression,' but does not extend to an 'idea, . . . regardless of the form in which it is described, explained, illustrated, or embodied.'"  *Forest Park Pictures*, 683 F.3d at 429 (quoting 17 U.S.C. § 102(a)–(b)).  The Second Circuit has held, "however, that works may fall within the subject matter of copyright, and thus be subject to preemption, even if they contain material that is uncopyrightable under section 102."  *Id.*  "The

scope of copyright for preemption purposes, then, extends beyond the scope of available copyright protection." *Id.* at 429–30.

"Under the Copyright Act, '[a] work is "fixed" in a tangible medium of expression when its embodiment in a copy . . . , by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.'" *Mourabit v. Klein*, No. 19-2142-CV, 2020 WL 3042131, at *3 (2d Cir. June 8, 2020) (quoting 17 U.S.C. § 101). "The Act defines '[c]opies,' in turn, as 'material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.'" *Id.* "The work is a form of intangible property that can be physically embodied in (*i.e.*, fixed in) any number of different material objects (*i.e.*, tangible mediums of expression)." *Id.* (quoting *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 693, 699 n.9).

Plaintiff alleges in the Complaint that lyrics are copyrightable and that "music publishers and/or songwriters usually own the copyright in the lyrics for a given song . . . ." (*See* Compl. ¶ 18; Pl. Opp'n 12 & n.4.) Because the subject of Plaintiff's claims is the transcribed song lyrics, and Plaintiff concedes that the lyrics themselves fall under federal copyright law, the subject matter prong of the preemption test is met. *See Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 290 (S.D.N.Y. 2019) (concluding that "[t]he subject matter of the [p]laintiffs' claims [was a] [s]ong" and "[t]he [s]ong [was] a musical composition and as such a paradigmatic work protected by the Copyright Act" and finding the subject matter requirement met because the plaintiffs "challeng[ed] the validity of the copyrights in a song, which fits into the copyrightable category of musical works" (citing 17 U.S.C. § 102(a)(2))); *Affiliated Records Inc.*

*v. Taylor*, No. 09-CV-9938, 2012 WL 1675589, at *5 (S.D.N.Y. May 14, 2012) ("[T]here is no question that the lyrics in the [s]ongs constitute copyrightable subject matter under [s]ection 102 of the Act." (citing 17 U.S.C. § 102(a)(2))).

Moreover, the fact that the lyric transcriptions are fixed in writing further supports a finding that Plaintiff's claims are within the subject matter of copyright. *See Forest Park Pictures*, 683 F.3d at 30 ("[B]ecause the ideas that are the subject of the claim were fixed in writing — whether or not the writing itself is at issue — the claim is within the subject matter of copyright.").

Accordingly, the Court finds that the subject matter prong is met.

### ii. Plaintiff's claims satisfy the general scope requirement

Because the Court finds that the subject matter prong is met, the Court next considers each of Plaintiff's state law claims to determine whether they include an "extra element" in addition to acts of reproduction, adaptation, performance, distribution or display that would preclude preemption.

### 1. Breach of contract claims

In addressing its breach of contract claims, Plaintiff argues that "Defendants are bound by [Plaintiff's] Terms of Service, which impose on Defendants an obligation not to copy or scrape [Plaintiff's] Service for 'commercial purposes,'" and that "[u]nder the law of the Second Circuit, this independent, contractual obligation constitutes an 'extra element'" which renders Plaintiff's claims asserted pursuant to its Terms of Service "qualitatively different from a Copyright Act claim." (Pl. Mem. 15.) In support, Plaintiff argues that "in order to prove its contract claims, [Plaintiff] not only needs to prove that Defendants scraped content from its website, but also that Defendants used it for 'commercial endeavors,'" which Plaintiff asserts is an "'extra element'

[that] makes [Plaintiff's] breach of contract claims qualitatively different from its copyright claim." (*Id.* at 17.)

Defendants argue that the restrictions in Plaintiff's Terms of Service "do no more than protect against the unauthorized use, reproduction, adaptation, and distribution of the work in question, which plainly falls within the general scope requirement of 17 U.S.C. § 106." (Defs. Opp'n 15.) In response to Plaintiff's assertion that its breach of contract claims are different from a copyright claim because Plaintiff must demonstrate both that Defendants scraped content from its website and that they used the content for commercial endeavors, Defendants argue that these assertions fail for separate reasons. As to the first provision of the Terms of Service Plaintiff alleges Defendants breached, which "broadly states that a user may not 'modify, copy, frame, scrape, rent, lease, loan, sell distribute or create derivative works,'" this argument fails because the "provision is nothing more than a recitation of exclusive rights reserved for true copyright owners under [s]ection 106." (*Id.* at 16 (quoting Compl. ¶¶ 119–20).) As to the second provision, "which states that users may not use copyright content 'for any commercial purpose,'" the argument fails because "[Plaintiff] does not cite a single case that suggests that the presence of 'commercial use' in a provision in a contract renders a breach claim qualitatively different from a claim for copyright infringement." (*Id.* (quoting Compl. ¶¶ 115–16, 132–33).) In support, Defendants argue that each case cited by Plaintiff in which the court found no preemption also involved a contractual provision that "had nothing to do with the unauthorized use of copyrighted material," and assert that "that plainly is not the situation here." (*Id.* at 16 n.3.) Defendants further argue that the fact "that one provision of [Plaintiff's] [Terms of Service] agreement requires 'commercial use' may limit the scope of Plaintiff's claim, but it does not change its fundamental nature — what Plaintiff's own Complaint describes as 'conduct

breach[ing] [Plaintiff's] Terms of Service regarding the copying and reproduction of [Plaintiff's] Content.'"  (*Id.* at 17 (quoting Compl. ¶¶ 122, 139 (second alteration in original)).)

In response, Plaintiff argues that "Defendants cite to a number of cases where a party who owns or controls copyright rights in the work at issue asserts contract claims — either in addition [to] or in lieu of Copyright Act claims," (Pl. Reply 6), and asserts that none of the other cases cited by Defendants are "at all instructive here, as it is undisputed that the parties to this action are not copyright holders and do not seek to possess or exercise the rights of a copyright holder," (*id.* at 7).[4]  Plaintiff argues that the fact "[t]hat parties like Google have paid to license music lyrics transcriptions from companies like LyricFind demonstrates the value of licensing the music lyrics transcriptions separate and apart from the value of the necessary predicate license from the copyright owners" and that "companies . . . pay to license transcriptions from [Plaintiff], often the very lyrics transcriptions Defendants are misappropriating."  (*Id.* at 2.)

The Second Circuit has noted that "preemption cannot be avoided simply by labeling a claim 'breach of contract,'" but rather, "[a] plaintiff must actually allege the elements of an enforceable contract (whether express or implied-in-fact), including offer, acceptance, and consideration, in addition to adequately alleging the defendant's breach of the contract."  *Forest Park Pictures*, 683 F.3d at 432.  In *Forest Park Pictures v. Universal Television Network, Inc.*, the Second Circuit considered whether the Copyright Act preempted the plaintiff's implied-in-fact breach of contract claim and "held the contract at issue not to be preempted because it included an 'extra element' of a promise to pay, and plaintiff sought contract damages when defendant used plaintiff's copyrighted work without paying for the privilege."  *Universal*

---

[4]  Plaintiff also makes this same argument regarding the cases cited by Defendants as to Plaintiff's state law claims for unjust enrichment and unfair competition.  (*See* Pl. Reply 8 n.8, 9 n.9.)

*Instruments Corp.*, 924 F.3d at 49 (quoting *Forest Park Pictures*, 683 F.3d at 429). Although in reaching its decision, the Second Circuit explicitly declined to "address whether preemption is precluded whenever there is a contract claim, or only when the contract claim includes a promise to pay," *Forest Park Pictures*, 683 F.3d at 432, district courts in this Circuit have decided the issue and are divided on the question of "'whether the promise inherent in every contract is sufficient to establish an "extra element."'" *Shepard v. Eur. Pressphoto Agency*, 291 F. Supp. 3d 465, 472 (S.D.N.Y. 2017) (quoting *BroadVision Inc. v. Gen. Elec. Co.*, No. 08-CV-1478, 2008 WL 4684114, at *4 (S.D.N.Y. Oct. 15, 2008)). Some district courts "follow the holding in *Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425 (S.D.N.Y. 1996), which held that '[p]rotection from breach of contract, however, is not equivalent to copyright protection because a contract claim requires an 'extra element,' that renders the claim qualitatively different from a claim for copyright infringement: a promise by the defendant.'" *Id.* at 472–73 (quoting *Architectronics, Inc.*, 935 F. Supp. at 438); *see also id.* (collecting cases). Other district courts "follow the holding in *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926 (S.D.N.Y. 1996), which held that 'a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or display).'" *Id.* (quoting *Am. Movie Classics Co.*, 922 F. Supp. at 931); *see id.* (collecting cases).

In recent years, the majority of district courts in this Circuit have followed the approach taken in *American Movie Classics Co.* and have engaged in an analysis of the contractual promises alleged in order to determine whether the Copyright Act preempts a breach of contract claim. *See, e.g.*, *Betty, Inc. v. PepsiCo, Inc.*, 283 F. Supp. 3d 154, 166 (S.D.N.Y. 2017) (noting "'as a general matter, a breach of contract action is not preempted by the Copyright Act'" and

considering whether the alleged implied-in-fact contract "required [the defendant] to pay for any use of [the plaintiff's] presented storylines and ideas" before finding that the plaintiff failed to state a claim for breach of contract (quoting *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 617 (S.D.N.Y. 2010))); *Shepard*, 291 F. Supp. 3d at 474 ("*American Movie Classics* held that a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff . . . . However, if the breach of contract claim is based on allegations that the parties' contract creates a right not existing under copyright law — a right based upon a party's contractual promise — and the plaintiff is suing to protect that contractual right, then the claim is not preempted." (citing *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426, 431–33 (8th Cir. 1993), *cert. denied*, 510 U.S. 861 (1993))); *Simmons v. Stanberry*, No. 10-CV-5815, 2014 WL 3611639, at *2 (E.D.N.Y. July 22, 2014) (finding the "[p]laintiff's breach of contract claim consist[ed] of no extra element, such as a promise to pay, that would make the claim qualitatively different from a federal copyright claim"), *aff'd*, 810 F.3d 114 (2d Cir. 2016).

Plaintiff's breach of contract claims are nothing more than claims seeking to enforce the copyright owners' exclusive rights to protection from unauthorized reproduction of the lyrics and are therefore preempted. The parties agree that Plaintiff is not the owner of the copyrights to any of the lyrics it transcribes, and Plaintiff concedes that it licenses lyrics from the copyright owners. (*See* Compl. ¶ 19 ("[Plaintiff] provides a platform for music enthusiasts who transcribe music lyrics, and also obtains lyrics through partnerships with artists who provide their lyrics directly to [Plaintiff]. [Plaintiff], in turn, obtains licenses from music publishers permitting the display and distribution of these lyrics.").) Although Plaintiff describes the rights it seeks to enforce as "broader and different than the exclusive right existing under the Copyright Act,"

based on "the substantial investment of time and labor by [Plaintiff] in a competitive market," (Pl. Mem. 15), and asserts breach of contract claims based on alleged violations of Plaintiff's Terms of Service, Plaintiff's own ability to transcribe and display the lyrics on its website arises from the licensing rights Plaintiff has in the lyrics, *see Shepard*, 291 F. Supp. 3d at 473 (finding that the copyright-owner plaintiff's claims for breach of contract based on a licensing agreement arose out of an "exclusive right [that] flowed from the Copyright Act, not from the [parties'] [a]greement . . . . [and] [t]hus the claim that [the] [d]efendants usurped the exclusive right of [the plaintiff] to adapt the [f]ilm is nothing more than a claim that [the] defendants have violated a right of [the plaintiff] under the Copyright Act").

Plaintiff asserts that its contract rights for use of the lyrics transcriptions are "separate and apart" from the copyright owners' exclusive rights in the lyrics. (Pl. Reply 2.) Although Plaintiff does not refer to the lyrics as derivative works, Plaintiff's argument parallels how derivative works are defined by the Copyright Act. *See Stewart v. Abend*, 495 U.S. 207, 220 (1990) ("An author holds a bundle of exclusive rights in the copyrighted work, among them the right to copy and the right to incorporate the work into derivative works."); *Keeling v. Hars*, 809 F.3d 43, 49 (2d Cir. 2015) ("Under the Copyright Act, a derivative work involves a transformation to the work's 'form.'" (quoting 17 U.S.C. § 101)); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 303 (S.D.N.Y. 2016) ("A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as

a whole, represent an original work of authorship, is a 'derivative work.'" (quoting 17 U.S.C. § 101)).

Plaintiff's argument is, in essence, that it has created a derivative work of the original lyrics in applying its own labor and resources to transcribe the lyrics, and thus, retains some ownership over and has rights in the transcriptions distinct from the exclusive rights of the copyright owners.  (*See* Pl. Reply 2.)  This argument is consistent with the treatment of derivative works under federal copyright law.  *See Stewart*, 495 U.S. at 223 ("The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work."); *TufAmerica, Inc.*, 162 F. Supp. 3d at 314 n.20 ("When a derivative work *is* created with consent of the owner of the pre-existing work, '[t]he aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work.'" (quoting *Stewart*, 495 U.S. at 223)).

Plaintiff likely makes this argument without explicitly referring to the lyrics transcriptions as derivative works because the case law is clear that only the original copyright owner has exclusive rights to authorize derivative works.  *See, e.g.*, *TufAmerica, Inc.*, 162 F. Supp. 3d at 314 ("Since the original copyright owner has the exclusive right to creative derivative works, someone 'who reproduces a derivative work without the authorization of the preexisting work's registered owner violates . . . the exclusive rights of the copyright owner . . . [and] is an infringer of the copyright.'" (quoting *Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487, 497 (S.D.N.Y. 2001))).

Even accepting the argument that Plaintiff has added a separate and distinct value to the lyrics by transcribing them such that the lyrics are essentially derivative works, because Plaintiff

does not allege that it received an assignment of the copyright owners' rights in the lyrics displayed on its website, Plaintiff's claim is preempted by the Copyright Act because, at its core, it is a claim that Defendants created an unauthorized reproduction of Plaintiff's derivative work, which is itself conduct that violates an exclusive right of the copyright owner under federal copyright law. *Stewart*, 495 U.S. at 223 ("So long as the pre-existing work remains out of the public domain, its use is infringing if one who employs the work does not have a valid license or assignment for use of the pre-existing work . . . . It is irrelevant whether the pre-existing work is inseparably intertwined with the derivative work." (citation omitted)).

In addition, Plaintiff's allegations as to how Defendants breached the contract also support a finding that Plaintiff's breach of contract claims are preempted. Plaintiff's breach of contract claims are based on the theory that Defendants breached their obligation under the Terms of Service by using Plaintiff's lyrics — LyricFind by selling those lyric transcriptions to Google and Google by employing and displaying those lyric transcriptions in its search engine. (*See* Compl. ¶ 120 ("Upon information and belief, notwithstanding the foregoing, since at least 2016, LyricFind has accessed [Plaintiff's] website to copy, modify, sell and/or distribute content appearing on [Plaintiff's] website that LyricFind did not upload."); *see also id.* ¶ 137 ("Upon information and belief, notwithstanding the foregoing, since at least 2016, Google has accessed [Plaintiff's] website to copy, modify, sell and/or distribute content appearing on [Plaintiff's] website that Google did not upload.").) Plaintiff's allegations that Defendants "scraped" and used their lyrics for profit amount to allegations that Defendants made unauthorized reproductions of Plaintiff's lyric transcriptions and profited off of those unauthorized reproductions, which is behavior that falls under federal copyright law. *See Shepard*, 291 F. Supp. 3d at 475 ("Here, the [plaintiffs'] claim that [the defendant] displayed, reproduced,

published, distributed, and otherwise made use of the [plaintiffs'] artworks beyond the expiration of the one[-]day term in the license agreement. That is conduct that the Copyright Act prohibits and for which it grants remedies. [The defendant's] promise not to infringe the [plaintiffs'] copyright is the same as its duty to comply with the copyright law, and is therefore preempted by it." (citation omitted)).

Moreover, Plaintiff has not cited any authority to support its argument that the "commercial use" language in the Terms of Service is sufficient to render the breach of contract claims qualitatively different from claims arising under the Copyright Act. Nor does Plaintiff allege that Defendants made the kind of "promise to pay" that courts in this Circuit have sometimes found to constitute an additional element of a breach of contract claim sufficient to avoid preemption. *Cf. Simmons*, 2014 WL 3611639, at *2 ("[The] [p]laintiff's breach of contract claim[] does no more than allege [the] [p]laintiff's right to protect against the unauthorized use, reproduction, adaptation, and distribution of the work in question, which plainly falls within the general scope requirement of 17 U.S.C. § 106. The [p]laintiff's breach of contract claim consists of no extra element, such as a promise to pay, that would make the claim qualitatively different from a federal copyright claim."), *aff'd*, 810 F.3d 114 (2d Cir. 2016); *Bill Diodato Photography LLC v. Avon Prod., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *7 (S.D.N.Y. Sept. 21, 2012) ("[The] [p]laintiff has plead[ed] a valid breach of contract claim on the theory that [the] [d]efendant breached its obligation under the agreements by using [the] [p]laintiff's images beyond the one-year licensing term without negotiating a fee to be paid to [the] [p]laintiff . . . . [The] [p]laintiff bears the burden of proving not just that [the] [p]laintiff used the images beyond the one-year licensing agreement, but also that [the] [d]efendant failed to negotiate a fee."). Because Plaintiff's breach of contract claims are based on alleged behavior by Defendants that

would, itself, fall under federal copyright law and Plaintiff has not alleged a contractual promise to pay or any contractual promise not based on rights arising from federal copyright law, Plaintiff fails to allege breach of contract claims that are qualitatively different from federal copyright claims.

Accordingly, the Court find that the Copyright Act preempts Plaintiff's breach of contract claims.[5]

## 2. Unjust enrichment claims

Plaintiff asserts state law claims for unjust enrichment based on Defendants' alleged "misappropriation of content from [Plaintiff's] website," which Plaintiff alleges has benefited Defendants at Plaintiff's expense, causing Plaintiff to "suffer[] (and continue[] to suffer) decreased web traffic and associated revenue," and "plac[ing] [Plaintiff] at an unfair competitive advantage in its efforts to license its lyrics to content partners." (Compl. ¶¶ 201–02, 207–08.) Plaintiff argues that its unjust enrichment claims are "qualitatively different than a copyright infringement claim," because it has alleged that Defendants engaged in "deceptive and wrongful

---

[5] Plaintiff asserts separate indemnification claims in addition to its claims for breach of contract; however, based on the Terms of Service agreement, Plaintiff cannot assert such claims. "'[U]nder New York law, absent "unmistakably clear" language in an indemnification provision that demonstrates that the parties intended the clause to cover first-party claims, an agreement between two parties "to indemnify" each other does not mean that one party's failure to perform gives rise to a claim for indemnification.'" *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 125–26 (2d Cir. 2019) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996)). Because the Terms of Service do not include language of a clear agreement between the parties to indemnify each other for losses not related to liability to a third party arising from a breach of contract, the Court finds the indemnification claims redundant of the breach of contract claims and addresses only the breach of contract claims. *See id.* at 126 (finding that "'[w]here parties agree to "indemnify" each other for losses incurred by a breach of contract, where those lo[s]ses do not relate to liability to a third party, the characterization of "indemnification" is no more than an epithet for recovery for breach of contract.'" (alterations in original) (quoting *Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 364 (S.D.N.Y. 2016))).

conduct in unjustly enriching themselves through their improper exploitation of the fruits of [Plaintiff's] substantial labor and investment . . . and subsequent concealment." (Pl. Mem. 18.)

In response, Defendants argue that courts in this Circuit have routinely found that unjust enrichment claims are preempted by the Copyright Act, and that Plaintiff "fails to mention any of these authorities." (Defs. Opp'n 23–24.) Defendants also argue that "merely pleading deception is not enough to escape preemption," and that Plaintiff "does not and cannot claim that Defendants exploited some kind of fiduciary, confidential, or other trusting relationship with it." (*Id.* at 24.)

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P.*, 373 F.3d at 306. "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *GFRE, Inc. v. U.S. Bank, N.A.*, 13 N.Y.S.3d 452, 454 (App. Div. 2015) (quoting *Paramount Film Distrib. Corp. v. New York*, 30 N.Y.2d 415, 421 (1972)).

The Second Circuit has held that "[w]hile enrichment is not required for copyright infringement," it does "not . . . go[] far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim." *Briarpatch Ltd., L.P.*, 373 F.3d at 306; *see also Forest Park Pictures*, 683 F.3d at 432 ("Under these quasi-contractual theories, [such as unjust enrichment,] the plaintiff need only prove that the defendant was unjustly enriched through the use of her idea or work. Such a claim is not materially different from a claim for copyright infringement that requires a plaintiff to prove that the defendant used, reproduced, copied, or displayed a copyrighted work."); *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 321–22

(S.D.N.Y. 2010) ("[T]he Second Circuit and courts in this district have consistently held that this enrichment element does not suffice to shield an unjust enrichment claim from preemption when the claim arises from unauthorized use of a copyrighted work."). "Like the elements of awareness or intent, the enrichment element . . . limits the scope of the claim but leaves its fundamental nature unaltered." *Briarpatch Ltd., L.P.*, 373 F.3d at 306. "Where the gravamen of an unjust enrichment claim is that defendants 'unjustly benefitted from unauthorized use' of a work within the scope of the Copyright Act . . . the claim is preempted." *Stanacard, LLC v. Rubard, LLC*, No. 12-CV-5176, 2016 WL 462508, at *22 (S.D.N.Y. Feb. 3, 2016) (quoting *Einiger v. Citigroup, Inc.*, No. 14-CV-4570, 2014 WL 4494139, at *6 (S.D.N.Y. Sept. 12, 2014)); *see also Panizza v. Mattel, Inc.*, No. 02-CV-7722, 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) ("The overwhelming majority of courts in this [C]ircuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." (quoting *Boyle v. Stephens Inc.*, No. 97-CV-1351, 1998 WL 690816, at *5–6 (S.D.N.Y. 1998))).

Plaintiff's unjust enrichment claims are preempted because they fall within the scope of the Copyright Act. Plaintiff alleges that LyricFind copied content from Plaintiff's website and then "benefitted by . . . entering into licensing agreements with content partners whereby LyricFind received compensation for distributing content misappropriated from [Plaintiff's] website," and that those "benefits . . . came at [Plaintiff's] expense." (Compl. ¶¶ 206–07.) Plaintiff similarly alleges that Google benefitted from its "misappropriation of content from [Plaintiff's] website," by "retaining users in and among Google-owned properties further concentrating its market power," and that these "benefits . . . came at [Plaintiff's] expense." (*Id.* ¶¶ 201–02.) Because the "gravamen" of Plaintiff's unjust enrichment claims is that Defendants

were unjustly enriched by their use of Plaintiff's lyric transcriptions — work that, as discussed above, is within the scope of the Copyright Act — these claims are preempted. *See Stanacard, LLC*, 2016 WL 462508, at *22; *see also, e.g.*, *BroadVision Inc.*, 2008 WL 4684114, at *5 (finding unjust enrichment claim preempted and "qualitatively the same as a copyright infringement claim" where the plaintiff "allege[d] that [the defendant] was unjustly enriched by copying and using the [plaintiff's] software in excess of the licensed usage rights"); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04-CV-0604, 2004 WL 1781009, at *18 (S.D.N.Y. Aug. 10, 2004) (finding unjust enrichment claim preempted where the "plaintiffs allege[d] that [the] defendants [had] misappropriated [the plaintiffs'] software and used the programs to make derivative works for their own benefit"); *Panizza*, 2003 WL 22251317, at *4 (finding unjust enrichment claim preempted where claim "solely concern[ed] the benefit [the] defendant allegedly received by using [the] plaintiff's ideas and related materials without her permission or authorization to do so").

In support of its argument that its unjust enrichment claims are not preempted because it has alleged that Defendants engaged in "deceptive and wrongful conduct," Plaintiff relies on one district court case, *CVD Equipment Corp. v. PrecisionFlow Technologies*, *Inc.*, No. 02-CV-651, 2007 WL 951567 (N.D.N.Y. Mar. 27, 2007), in which the court held that the plaintiff's unjust enrichment claim was not preempted. (Pl. Mem. 18; Pl. Reply 7.) In *CVD Equipment Corp.*, the plaintiff alleged that the defendant-competitor's shareholders and employees, as well as the individual defendants, were former employees and officers of the plaintiff's predecessor-in-interest and had "had access to [its] intellectual property," which they then gave to the defendant-competitor for use and which had also been purchased by the plaintiff. 2007 WL 951567, at *1. The plaintiff alleged that the "defendants [had] been unjustly enriched by their misappropriation

of products embodying [the plaintiff's] intellectual property and/or proprietary and confidential information." *Id.* In finding that the unjust enrichment claim was not preempted by the Copyright Act, the court stated that "[t]he extra element of inequity through fraud, deception, or abuse of fiduciary relationships is sufficient to change the nature of the unjust enrichment claim so that it is qualitatively different from a copyright infringement claim." *Id.* at *2 (first citing *Kregos v. Assoc. Press*, 3 F.3d 656, 666 (2d Cir. 1993); and then citing *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 716).

While the court in *CVD Equipment Corp.* listed deception as an extra element sufficient to avoid preemption, the Court finds, based both on the facts in that case and the Second Circuit decisions cited in support, that the decision in *CVD Equipment Corp.* was based on the defendant's alleged abuse of a fiduciary relationship, which is not present in this case. The factual allegations in *CVD Equipment Corp.*, described above, clearly supported a claim that the defendants had unjustly enriched themselves by abusing a fiduciary relationship. *See id.* at *1. Moreover, the two Second Circuit cases the district court relied on in making its ruling further support the conclusion that the basis for the court's holding was not that the plaintiffs had alleged "deception," but rather, that they had alleged the abuse of fiduciary relationships. In *Kregos*, cited by the court in *CVD Equipment Corp.*, in finding that the plaintiff's unfair competition claim was preempted, the Second Circuit stated that "unfair-competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid § 301 preclusion." *Kregos*, 3 F.3d at 666. Similarly, in *Computer Associates International, Inc.*, also cited by the court in *CVD Equipment Corp.*, the Second Circuit noted that the "state law rights that . . . satisfy the extra element test, and thus are not preempted by section 301 . . . include unfair competition claims based upon

breaches of confidential relationships, breaches of fiduciary duties and trade secrets." *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 717. In contrast, in this case, Plaintiff has not alleged that Defendants abused a confidential or fiduciary relationship.

In addition, as discussed further below, other district courts in this Circuit have found, in the context of unfair competition claims, that deception does not constitute an extra element sufficient to avoid preemption. *See Woolcott v. Baratta*, No. 13-CV-2964, 2014 WL 1814130, at *10 (E.D.N.Y. May 7, 2014); *Atrium Grp. de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 509–10 (S.D.N.Y. 2008).

Accordingly, the Court finds that Plaintiff's claims for unjust enrichment are preempted by the Copyright Act.[6] *See Schleifer v. Berns*, No. 17-CV-1649, 2017 WL 3084406, at *5 n.2 (E.D.N.Y. July 19, 2017) ("[I]t is well-settled that a claim for unjust enrichment is preempted by the Copyright Act.").

### 3. Unfair competition claims

Plaintiff asserts state law claims for unfair competition under both New York and California law, based on Defendants' alleged misappropriation of content from Plaintiff's

---

[6] Plaintiff cites no authority in support of its argument that because Defendants allegedly engaged in "wrongful conduct," its unjust enrichment claims are not preempted. (Pl. Mem. 18.) Moreover, as discussed further below, the Second Circuit has made clear that allegations that defendants have engaged in immoral or unfair behavior are not sufficient to distinguish state law claims and avoid preemption. *See Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 896 (2d Cir. 2011) ("[U]nfairness alone is immaterial to a determination whether a cause of action has been preempted by the Copyright Act."); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("[A]morphous concepts such as 'commercial immorality' . . . are virtually synonymous [with] wrongful copying and are in no meaningful fashion distinguishable from infringement of a copyright."); *see also Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) ("An action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature . . . .'" (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (alteration in original))).

website.  (Compl. ¶¶ 145–99.)  In support, Plaintiff argues that its unfair competition claims are "qualitatively different from a copyright claim" because they "include an 'extra element' of 'bad faith' and 'unfairness,'" and therefore are not preempted.  (Pl. Mem. 19.)  Plaintiff also argues that the "allegations in the Complaint demonstrate how Defendants' deceptive, unethical and immoral conduct is substantively different than a copyright claim," (*id.* at 21), and that "[b]ecause [Plaintiff's] unfair competition claims focus on Defendants' deceptive and unscrupulous conduct, they are not preempted by federal law," (*id.* at 22).

In response, Defendants argue that Plaintiff's unfair competition claims "are entirely premised on the misappropriation of copyrighted lyrics," and thus "are preempted because courts in New York and California have consistently held that claims for unfair competition based on misappropriation of copyrighted material are preempted."  (Defs. Opp'n 17–18.)  Defendants also argue that Plaintiff's theory that bad faith and unfairness are extra elements under copyright preemption law is "directly contrary to established law."  (*Id.* at 20.)  Finally, Defendants argue that Plaintiff's attempt to differentiate the rights it seeks to enforce from those protected under the Copyright Act based on allegations that Defendants misappropriated Plaintiff's time and labor must fail, because "if that were true, no misappropriation claim would ever be preempted."  (*Id.* at 21.)

"Under New York law, unfair competition includes 'taking the skill, expenditures and labors of a competitor,' as well as 'misappropriat[ing] for the commercial advantage of one person . . . a benefit or property right belonging to another.'"  *Broker Genius Inc. v. Gainor*, --- F. App'x ---, ---, No. 19-2686-CV, 2020 WL 1908341, at *1 (2d Cir. Apr. 20, 2020) (alteration in original) (quoting *Roy Exp. Co. Establishment of Vaduz v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)); *see also Jacino v. Ill. Tool Works Inc.*, No. 16-CV-1704, 2017

WL 4480752, at *5 (E.D.N.Y. Oct. 6, 2017) ("The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origins of the goods." (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995))). "A claim of unfair competition" under New York common law "requires evidence of [the] defendant's bad faith." *Stadt*, 719 F. Supp. 2d at 320. Under California law, "unfair competition . . . include[s] any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "'Unfair' simply means any practice whose harm to the victim outweighs its benefits." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (Cal. Ct. App. 1994)).

"Following [the] 'extra element' test, [the Second Circuit has] held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 717; *see also Buttner v. RD Palmer Enters., Inc.*, No. 13-CV-0342, 2013 WL 6196560, at *3 (N.D.N.Y. Nov. 27, 2013) ("An unfair competition claim under New York law is preempted by § 301 of the Copyright Act if it is based solely on copying expression protected by the Act."); *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) ("The Copyright Act preempts unfair competition and misappropriation claims 'grounded solely in the copying of a plaintiff's protected expression.'" (quoting *Kregos*, 3 F.3d at 666)). In contrast, "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets" do "satisfy the extra element test, and thus are not preempted by section 301." *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 717; *see also Wnet v. Aereo, Inc.*, 871 F. Supp. 2d 281, 291 (S.D.N.Y. 2012) ("[A] state law claim is qualitatively different if it requires

such elements as breach of fiduciary duty, or possession and control of chattels." (quoting *Briarpatch Ltd., L.P.*, 373 F.3d at 305)); *Integrative Nutrition, Inc.*, 476 F. Supp. 2d at 297 ("[U]nfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra element test and avoid § 301 preclusion." (quoting *Kregos*, 3 F.3d at 666)).

Where unfair competition claims are "predicated on a theory of 'passing off,' 'the essence of which is false representation of origin,'" courts distinguish between claims for "passing off" and "reverse passing off." *Integrative Nutrition, Inc.*, 476 F. Supp. 2d at 297 (first quoting *Am. Movie Classics Co.*, 922 F. Supp. at 934; and then citing *Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04-CV-8332, 2005 WL 1337864, at *6 (S.D.N.Y. June 3, 2005)). "In a 'passing off' case, the tortfeasor misleads customers into believing that the product he produces emanates from another source." *Am. Movie Classics Co.*, 922 F. Supp. at 934; *see also Integrative Nutrition, Inc.*, 476 F. Supp. 2d at 297 ("In a passing off case, the alleged infringer sells *its* products as the plaintiff's."). A "claim of 'reverse passing off,'" in contrast, involves "a claim that the defendant misrepresented the plaintiff's work as its own." *Stadt*, 719 F. Supp. 2d 312, 322; *see also Shepard*, 291 F. Supp. 3d at 476 ("[The plaintiffs] allege that the defendants misrepresented the [plaintiffs'] goods as their own. That is known as 'reverse passing of[f].'"); *Am. Movie Classics Co.*, 922 F. Supp. at 934 ("[I]f any unfair competition claim is asserted [in this case], it is of the 'reverse passing off' variety — *i.e.*, that [the defendant] took goods of another and passed them off as [its] own.").

Plaintiff's unfair competition claims are preempted by the Copyright Act. Plaintiff alleges that Defendants "misappropriated content from [Plaintiff's] website," (Compl. ¶ 147; *see also id.* ¶¶ 169, 171, 179), in "an unjustifiable attempt to profit from [Plaintiff's] expenditure of

time, labor and talent in maintaining its service," (*id.* ¶¶ 154, 182). Plaintiff has not alleged that Defendants breached any fiduciary duty or confidential relationship, or that Defendants misappropriated Plaintiff's trade secrets. Instead, Plaintiff's claims are precisely the type of misappropriation claims that courts have consistently held are preempted by the Copyright Act. *See, e.g.*, *Shepard*, 291 F. Supp. 3d at 475–76 ("[T]he Copyright Act . . . preempts claims 'asserted under the misappropriation branch of New York's unfair competition claim, which generally "protects against a defendant's competing use of a valuable product or idea created by the plaintiff through investment of time, effort, money and expertise."'" (quoting *Am. Movie Classics*, 922 F. Supp. at 933)); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) ("In this case, the alleged misappropriation of [the plaintiff's] time, talent and effort is by the reproduction of the product of her time, talent and effort," and that is "precisely the type of misconduct the copyright laws are designed to guard against.").

Plaintiff's claims are essentially "reverse passing off" claims, as Plaintiff alleges that Defendants copied Plaintiff's work product — song lyrics displayed on its website — and attempted to pass them off as either, in LyricFind's case, its own work product or, in Google's case, either its own work product or work product it was licensed to display. *See Integrative Nutrition, Inc.*, 476 F. Supp. 2d at 297 (finding that the "plaintiff's unfair competition claim [was] predicated on a theory of reverse passing off" and was preempted by the Copyright Act where the "primary allegation in the claim [was] that the defendants [had] 'plagiarized' the plaintiff's website"). Unfair competition claims involving allegations of reverse passing off are preempted by the Copyright Act. *See Shepard*, 291 F. Supp. 3d at 476 ("It is well-settled that a claim for reverse passing off predicated on the theory that defendant's product replicates plaintiff's expressions contains no extra element and is therefore preempted." (quoting

*Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 608 (S.D.N.Y. 2007))); *Stadt*, 719 F.

Supp. 2d 312, 322 ("[R]everse passing off does not constitute an extra element for preemption

purposes because it is essentially a claim for unauthorized use of copyrightable material."); *see*

*also Integrative Nutrition, Inc.*, 476 F. Supp. 2d at 297; *Colour & Design*, 2005 WL 1337864, at

*6; *Am. Movie Classics Co.*, 922 F. Supp at 934.

Furthermore, as discussed below, Plaintiff's unfair competition claims are not saved from

preemption by its allegations of bad faith, unfairness, and deceptive, unethical, and immoral

conduct.

## A.  **"Bad faith" under New York law**

In support of its argument that "bad faith" is an extra element that saves its New York

unfair competition claims from preemption, Plaintiff relies almost exclusively on *SCO Group,*

*Inc. v. International Business Machines Corp.*, 879 F.3d 1062, 1080–81 (10th Cir. 2018), (Pl.

Mem. 20), in which the Tenth Circuit found that "a misappropriation claim under New York law

has an 'extra element' beyond the elements of a federal copyright infringement claim," *SCO*

*Grp., Inc.*, 879 F.3d at 1080.  The court found that the "bad faith" element of New York

misappropriation claims was "not simply a scienter requirement, which would be insufficient to

provide the requisite extra element to avoid preemption by the Copyright Act," and that instead,

"in the context of an independent New York unfair competition claim[,] [bad faith] 'typically

results from fraud, deception, or an abuse of fiduciary or confidential relationship.'"  *Id.* at 1080–

81 (first citing *Comput. Assocs. Int'l, Inc.* 982 F. 2d at 717; and then quoting Robert L. Haig,

Business and Commercial Litigation in Federal Courts, 105:20 (3d Ed. 2011)).  The Tenth

Circuit concluded that "[b]ecause misappropriation under New York law is an independent claim

with a separate element of bad faith business dealings, [the plaintiff's] claim [was] not

'equivalent' to a federal copyright infringement claim," and therefore was not preempted. *Id.* at 1081.

The Tenth Circuit's decision in *SCO Group, Inc.* is directly contradicted by caselaw in this Circuit, discussed above, finding that New York unfair competition claims alleging misappropriation of copyrightable works are preempted by the Copyright Act. Regardless of how the Tenth Circuit interpreted the "bad faith" element of New York unfair competition claims, in this Circuit, "bad faith" on its own is not sufficient to avoid preemption — if it were, unfair competition claims under New York law would never be preempted. *See Stadt*, 719 F. Supp. 2d at 320 ("A claim of unfair competition . . . requires evidence of [the] defendant's bad faith."); *see also Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) ("[T]o avoid preemption, that which is claimed to be unfair competition must be something different from copying, or the fruits of copying, or the intent or bad faith that can be inferred from the act of copying . . . ."). Instead, courts have regularly noted that "bad faith" is essential to unfair competition claims under New York law, and nevertheless have found those claims preempted. *See Jacino*, 2017 WL 4480752, at *5–6; *Stadt*, 719 F. Supp. 2d at 319–20, 322.

Accordingly, the Court finds that the bad faith element of Plaintiff's unfair competition claims under New York law is not an extra element that defeats preemption.

### B.    Unfairness under California law

Plaintiff argues that its claims for unfair competition under California law are not preempted because "[s]ection 17200 . . . requires an extra element of unfairness." (Pl. Mem. 21.) Because unfairness, without more, is immaterial to the preemption determination, the Court rejects Plaintiff's argument.

The Second Circuit has held that "[n]o matter how 'unfair'" a defendant's alleged

conduct is, "such unfairness alone is immaterial to a determination whether a cause of action has been preempted by the Copyright Act." *Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 896 (2d Cir. 2011).

Accordingly, the fact that Plaintiff's unfair competition claims under California law require that Plaintiff demonstrate that Defendants' conduct was unfair does not preclude a finding that Plaintiff's unfair competition claims are preempted.[7]

### C. Deceptive, unethical, and immoral conduct

Plaintiff argues that because its "unfair competition claims are based on [Defendants'] misappropriation of content from [Plaintiff] through . . . deceptive, immoral and dishonest practices . . . they are not preempted by federal law." (Pl. Mem. 22.)

"[A]n action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature." *Am. Movie Classics Co.*, 922 F. Supp. at 931 (quoting *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 717) (internal quotation marks omitted); *Wnet*, 871 F. Supp. 2d at 291 ("Awareness or intent . . . are not extra elements that make a state law claim qualitatively different." (quoting *Briarpatch Ltd., L.P.*, 373 F.3d at 305)). Moreover, as noted above, "unfairness alone is immaterial to a determination whether a cause of action has been preempted by the Copyright Act." *Barclays Cap. Inc.*, 650 F.3d at 896.

Courts in this Circuit have found that deception is not an extra element that saves an unfair competition claim from preemption. In *Atrium Group de Ediciones y Publicaciones, S.L.*,

---

[7] Plaintiff cites no authority to support its argument that an unfair competition claim pursuant to section 17200 contains an extra element precluding preemption by the Copyright Act. (*See* Pl. Mem. 21; Pl. Reply 8–10.) However, California courts have found unfair competition claims under section 17200 to be preempted by the Copyright Act where they are "based solely on rights equivalent to those protected by the federal copyright laws." *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 1052, 1074 (quoting *Koladex v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1988)).

the court rejected the plaintiffs' argument that their misappropriation claim was not preempted because the defendants' "alleged deception" constituted an extra element, finding that "'deception' is not the sort of element that would cause claims for . . . misappropriation to be 'qualitatively different' from the Federal Copyright Act." 565 F. Supp. 2d at 509–10. The court reasoned that deception alters only the scope and not the nature of the claim. *Id.* at 510; *see also Woolcott*, 2014 WL 1814130, at *10 (finding that the plaintiff's unfair competition claim "lack[ed] any extra qualitative element" where the plaintiff alleged "intentional, unlawful, and deceptive conduct"); *cf. Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97-CV-7763, 1999 WL 179603, at *4 (S.D.N.Y. Mar. 31, 1999) (finding that the plaintiff's "allegation of fraudulent intent simply alters the scope of the state [unfair competition claim] but not the equivalency of its nature to a copyright infringement claim").[8]

_____

[8] Plaintiff cites a single case in which a district court found that the plaintiff's unfair competition claims were not preempted based in part on the "extra element of misrepresentation or deception," *Silverstein v. Penguin Putnam, Inc.* (*Silverstein I*), No. 01-CV-309, 2003 WL 1797848, at *8 (S.D.N.Y. Apr. 4, 2003), but, as Defendants note, Plaintiff failed to address in its opening brief the case's subsequent history, (Pl. Mem. 21; Defs. Opp'n 22). On appeal, the Second Circuit vacated the judgment on other grounds and remanded the case for further proceedings. *Silverstein v. Penguin Putnam, Inc.* (*Silverstein II*), 368 F.3d 77, 78, 86 (2d Cir. 2004). On remand, and following a bench trial, the district court held that the plaintiff's unfair competition claims *were* preempted, finding that the "allegation that [the defendant] also misrepresented [the work] as its own does not transform the claim into one qualitatively different from a copyright claim," and that "the allegation that the reproduction was immoral does not differentiate the claim from one of copyright infringement." *Silverstein v. Penguin Putnam, Inc.* (*Silverstein III*), 522 F. Supp. 2d 579, 608–09 (S.D.N.Y. 2007).

Plaintiff nevertheless argues that the district court's "post-trial decision" in *Silverstein III* "did not address whether 'deception' satisfied the 'extra element' test whatsoever and thus that aspect of [*Silverstein I*] still stands." (Pl. Reply 5 n.4.) In *Silverstein I*, the plaintiff's unfair competition claim was based on the "defendant's copying of [the] plaintiff's work," as well as allegations that the "defendant committed a false designation of origin or confusion as to source." *Silverstein I*, 2003 WL 1797848, at *8. The court found that "[c]laims based on false designation or confusion as to source are not preempted because the claims require a showing of actual confusion, an element not required of a copyright infringement claim." *Id.* In addition, the court in *Silverstein I* noted the plaintiff's argument that "its unfair competition claims

Finally, the Second Circuit has explicitly rejected any "exception to the general rule of preemption in the misappropriation area . . . for claims involving 'any form of commercial immorality,'" *Nat'l Basketball Ass'n*, 105 F.3d at 851 (quoting *Fin. Info., Inc. v. Moody's Inv'rs Serv., Inc.*, 808 F.2d 204, 208 (2d Cir. 1986)), and has found that "amorphous concepts such as 'commercial immorality' . . . are virtually synonymous [with] wrongful copying and are in no meaningful fashion distinguishable from infringement of a copyright," *id.* at 851.

Accordingly, the Court finds that Plaintiff's allegations that Defendants engaged in deceptive, unethical, or immoral conduct do not save Plaintiff's unfair competition claims from preemption. Because the Court finds that all of Plaintiff's claims are preempted by the Copyright Act, the Court denies the motion to remand the action to state court.

### c. The Court dismisses the Complaint for failure to state a claim

The Second Circuit has held that the "complete preemption doctrine" extends to the Copyright Act, because it is a "federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action," and "therefore . . . the district courts have jurisdiction over state law claims preempted by the Copyright Act." *Briarpatch Ltd., L.P.*, 373 F.3d at 305. "[O]nce a district court determines that

---

covering reverse passing off are not preempted because those claims involved the extra element of misrepresentation or deception," before concluding that "based on the required presence of these elements, . . . [the] plaintiff's unfair competition claims are not preempted." *Id.*

In essence, the court in *Silverstein I* found that unfair competition claims for reverse passing off were not preempted by the Copyright Act — a finding that is against the weight of authority in this Circuit, discussed above, holding that such claims are preempted. Indeed, in *Silverstein III*, in finding that the plaintiff's unfair competition claims were preempted, the court noted that it was "well-settled that a claim for reverse passing off predicated on the theory that defendant's product replicates plaintiff's expressions contains no extra element and is therefore preempted." *Silverstein III*, 522 F. Supp. 2d at 608. Accordingly, the Court finds that *Silverstein I* does not support a finding that Plaintiff's unfair competition claims are preempted based on Defendants' alleged deceptive conduct.

a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action." *Id.* at 309.

Given that the Court finds that all of Plaintiff's state law claims are preempted by the Copyright Act, and Plaintiff has not asserted any federal law claims, the Court dismisses the Complaint for failure to state a claim. *See Kennedy v. LaCasse*, No. 17-CV-2970, 2017 WL 3098107, at *5 (S.D.N.Y. July 20, 2017) (dismissing state law claims preempted by the Copyright Act for failure to state a claim).

## III. Conclusion

For the reasons set forth above, the Court denies the motion to remand the action to state court and dismisses the Complaint for failure to state a claim. The Clerk of Court is directed to close this case.

Dated: August 10, 2020
      Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge