# MANDATE

20-3113
*Genius Media Group Inc. v. Google LLC*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.   CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of March, two thousand twenty-two.

Present:
> Debra Ann Livingston,
> > *Chief Judge*,
> Reena Raggi,
> > *Circuit Judge*,
> Eric Vitaliano,
> > *District Judge*.*

_____

ML Genius Holdings LLC,**

> *Plaintiff-Appellant*,

v.                                                              20-3113

Google LLC, Lyricfind,

> *Defendants-Appellees*.

_____

For Plaintiff-Appellant:          Marion R. Harris (Ilene S. Farkas, *on the brief*), Pryor Cashman LLP, New York, NY.

_____

* Judge Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

** The Clerk of the Court is directed to amend the caption as set forth above.

**MANDATE ISSUED ON 03/31/2022**

For Defendants-Appellees:        Brian M. Willen (Jason Mollick, *on the brief*), WILSON
                                 SONSINI GOODRICH & ROSATI, P.C., New York, NY *for*
                                 Google LLC.

                                 Kenneth D. Freundlich (Michael J. Kaiser, *on the brief*)
                                 FREUNDLICH LAW, Encino, CA *for* LyricFind, Inc.

1    Appeal from a judgment of the United States District Court for the Eastern District of New

2    York (Margo Brodie, *C.J.*).

3        **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

4    **DECREED** that the judgment of the district court is **AFFIRMED**.

5        Plaintiff-Appellant ML Genius Holdings LLC ("Genius") appeals from an August 13, 2020

6    district court judgment dismissing its complaint against Defendants-Appellees Google LLC

7    ("Google") and LyricFind, Inc. ("LyricFind," and together with Google, "Defendants") as

8    preempted by the Copyright Act, 17 U.S.C. § 301.   *See Genius Media Grp. Inc. v. Google LLC*,

9    No. 19-CV-7279 (MKB), 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020).   On appeal, Genius ar-

10   gues that the district court erred by concluding that its breach of contract and unfair competition

11   claims are statutorily preempted.[1]   We disagree, so we affirm.

12       Genius is an internet platform on which music fans transcribe song lyrics.   Genius alleg-

13   edly discovered that LyricFind was copying its transcriptions and licensing them to Google, which

14   displayed the copied transcriptions in response to user searches, thereby depriving Genius of web

15   traffic.   Genius therefore sued Defendants in New York state court.   Defendants removed the

16   case to federal court, and Genius moved to remand.   Concluding that Genius's claims are

17   preempted by the Copyright Act, the district court denied remand and dismissed the case for failure

18   to state a claim.   *See id.* at *17.   We assume the parties' familiarity with the underlying facts,

---

[1]  The district court also dismissed Genius's unjust enrichment and indemnification claims.   Ge-
nius has abandoned those claims on appeal.

1   the procedural history of the case, and the issues on appeal, which we reference only as necessary

2   to explain our decision.

3                                        *        *        *

4         "[O]nce a district court determines that a state law claim has been completely preempted

5   [by the Copyright Act] and thereby assumes jurisdiction over it, the court must then dismiss the

6   claim for failing to state a cause of action."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373

7   F.3d 296, 309 (2d Cir. 2004).[2]  "We review de novo the grant of a motion to dismiss for failure

8   to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in

9   the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *IWA Forest*

10  *Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021); *see also Seng-Tiong Ho v.*

11  *Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) ("We review de novo whether the Copyright Act

12  preempts any of the plaintiffs' state law claims.").

13        Section 301 of the Copyright Act states:

14        On and after January 1, 1978, all legal or equitable rights that are equivalent to any
15        of the exclusive rights within the general scope of copyright as specified by section
16        106 in works of authorship that are fixed in a tangible medium of expression and
17        come within the subject matter of copyright as specified by sections 102 and 103,
18        whether created before or after that date and whether published or unpublished, are
19        governed exclusively by this title.   Thereafter, no person is entitled to any such
20        right or equivalent right in any such work under the common law or statutes of any
21        State.

22  17 U.S.C. § 301(a).   We have referred to preemption under § 301 as "statutory preemption."

23  *See Jackson v. Roberts (In re Jackson)*, 972 F.3d 25, 42 (2d Cir. 2020).   "Our court has interpreted

---

[2] Unless otherwise indicated, we omit all internal citations, quotation marks, alterations, empha-
ses, and footnotes from citations.

1   the statute as directing a two-part analysis for determining whether a state law claim is preempted

2   under § 301." *Id.*   We evaluate each prong in turn.

3   **I.    Subject Matter Prong**

4           **A.  Applicable Law**

5           The first prong of the statutory preemption inquiry, which we have called the "subject mat-

6   ter" requirement, "looks at the work that would be affected by the plaintiff's exercise of a state-

7   created right, and requires (as an essential element of preemption) that the work 'come within the

8   subject matter of copyright as specified by sections 102 and 103.'"   *Id.* at 42 (quoting 17 U.S.C.

9   § 301(a)).   "[I]f the work against which the plaintiff claims rights is a 'literary work,' a 'musical

10  work,' a 'sound recording,' or any other category of 'work of authorship' within the 'subject matter

11  of copyright' (even if the subject of the claim is for some reason ineligible for copyright protection)

12  the plaintiff's claim is subject to the possibility of statutory preemption."   *Id.* at 42–43 (quoting

13  17 U.S.C. § 102(a)).   In analyzing this prong, we focus on "the gravamen of the claim and the

14  allegations supporting it." *Id.* at 47.

15          "The scope of copyright for preemption purposes … extends beyond the scope of available

16  copyright protection."   *Forest Park v. Universal TV Network, Inc.*, 683 F.3d 424, 429–30 (2d Cir.

17  2012).   "The reason for our broad interpretation of the scope of copyright preemption is that Con-

18  gress, in enacting section 301, created a regime in which some types of works are copyrightable

19  and others fall into the public domain."   *Id.* at 430.   "Section 301's preemption scheme functions

20  properly only if the 'subject matter of copyright' includes all works of a *type* covered by sections

21  102 and 103, even if federal law does not afford protection to them."   *Id.*

4

**B. Application**

Genius's claims satisfy the subject matter requirement.   The subject matter of Genius's claims is its lyrics transcriptions.   And "[s]ong lyrics enjoy independent copyright protection as 'literary works.'"   *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996); *see also* 17 U.S.C. § 102(a)(2) ("[M]usical works, including any accompanying words" are copyright-able.); 1 *Nimmer on Copyright* § 2.05[C] (2021) ("[T]he copyright in a 'musical work' protects against unauthorized use of the music alone or of the words alone, or of a combination of music and words.").

Genius argues that its claims do not satisfy the subject matter requirement because its "transcriptions are … not copyrightable."   Appellant's Br. 26.   According to Genius, its transcriptions "lack the requisite originality necessary to constitute 'works of authorship' that qualify for copyright protection."   *Id.*

Whatever the merits of this argument, it does not defeat preemption.   We have squarely held that section 301 "prevents the States from protecting [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify."   *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 919 n.15 (2d Cir. 1980); *see also Jackson*, 972 F.3d at 42; *Fin. Info., Inc. v. Moody's Invs. Serv., Inc.*, 808 F.2d 204, 209 (2d Cir. 1986); *Mourabit v. Klein*, 816 F. App'x 574, 578 (2d Cir. 2020) ("As has often been observed, 'the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.'" (quoting 1 *Nimmer on Copyright* § 1.16[A] (2019))).

Genius also contends that what it "seeks to protect by way of this action is its investment in time, labor, systems and resources that go into the process of making lyrics transcriptions available to the public, the fruits of which have been misappropriated by Defendants in bad faith."

1    Appellant's Br. 24.    But the allegations in Genius's complaint belie that argument.    In its com-

2    plaint, Genius repeatedly alleges that Defendants "misappropriat[ed] *content* from Genius's web-

3    site," App'x 15, 37, 47, 53-55, 57, 59-61, not a "process" or "system."    Thus, the subject matter

4    of Genius's claims is the content that appears on Genius's website—the lyrics transcriptions—

5    because those are "the work[s] against which [it] claims rights."    *Jackson*, 972 F.3d at 42.

6    **II.    General Scope Requirement**

7          **A.  Applicable Law**

8          "The second prong" of the statutory preemption test, which we have called the "equiva-

9    lence" or "general scope" requirement, "looks at the right being asserted (over a work that comes

10   within the 'subject matter of copyright') and requires (for preemption to apply) that the right be

11   'equivalent to any of the exclusive rights within the general scope of copyright as specified by

12   section 106.'"    *Id.* at 43 (quoting 17 U.S.C. § 301(a)).    Section 106 of the Copyright Act "de-

13   fines the 'exclusive rights' granted by the federal copyright law, which consist of the rights 'to do

14   and to authorize' the reproduction, distribution, performance, and display of a work, and the crea-

15   tion of derivative works based on a work."    *Id.* (quoting 17 U.S.C. § 106).    "The general scope

16   requirement is satisfied only when the state-created right may be abridged by an act that would,

17   by itself, infringe one of the exclusive rights provided by federal copyright law."    *Briarpatch*,

18   373 F.3d at 305.    For preemption to apply, "the state law claim must involve acts of reproduction,

19   adaptation, performance, distribution or display."    *Id.*

20          Even if a claim otherwise satisfies the general scope requirement, a claim is not preempted

21   if it "include[s] any extra elements that make it qualitatively different from a copyright infringe-

22   ment claim."    *Id.* at 305.    But "not all 'extra elements' are sufficient to remove the claim from

23   the 'general scope' of copyright."    *Jackson*, 972 F.3d at 43.    "The critical inquiry is whether

1    such extra elements of the state law claim beyond what is required for copyright infringement

2    change the nature of the action so that it is *qualitatively* different from a copyright infringement

3    claim." *Id.* at 43–44. "To determine whether a claim is qualitatively different, we look at what

4    the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the

5    rights sought to be enforced." *Briarpatch*, 373 F.3d at 306. The "extra element" inquiry is not

6    "mechanical." *Jackson*, 972 F.3d at 44 n.17. "While we have inquired into the existence of

7    extra elements in determining whether preemption applies," this inquiry "requires a holistic eval-

8    uation of the nature of the rights sought to be enforced, and a determination whether the state law

9    action is qualitatively different from a copyright infringement claim." *Id.*

10        "[W]e take a restrictive view of what extra elements transform an otherwise equivalent

11    claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch*,

12    373 F.3d at 306. "[E]lements such as awareness or intent" do not save a claim from preemption

13    because they "alter the action's scope but not its nature." *Comput. Assocs. Int'l, Inc. v. Altai,*

14    *Inc.*, 982 F.2d 693, 717 (2d Cir. 1992). And "[i]f unauthorized publication is the gravamen of

15    [the plaintiffs'] claim, then it is clear that the right they seek to protect is coextensive with an

16    exclusive right already safeguarded by the Act—namely, control over reproduction and derivative

17    use of copyrighted material." *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195,

18    201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985).

19        **B.  Application**

20          **1.  Breach of contract claims**

21        Genius's breach of contract claims satisfy the general scope requirement. Genius's com-

22    plaint alleges that Defendants "breache[d] Genius's Terms of Service regarding the copying and

23    reproduction of Genius [c]ontent." App'x 49, 52; *see also id.* at 49, 51 (alleging that Defendants

1   breached a provision of Genius's Terms of Service because they "accessed the Genius website to

2   copy, modify, sell and/or distribute content appearing on Genius's website").   These allegations

3   show that the right Genius "seek[s] to protect is coextensive with an exclusive right already safe-

4   guarded by the Act—namely, control over reproduction and derivative use of copyrighted mate-

5   rial."  *Harper & Row*, 723 F.2d at 201.[3]

6        Genius argues that its breach of contract claims escape preemption because those claims

7   require it to plead "mutual assent and valid consideration" and "assert[] rights only against the

8   contractual counterparty, not the public at large."   Appellant's Br. 39 (citing *Forest Park*, 683

9   F.3d at 431).   We disagree.   Though Genius relies on our decision in *Forest Park*, we expressly

10  declined to address there whether these elements sufficed to preclude preemption.   683 F.3d at

11  432.   And they are not sufficient here to avoid preemption.   *See* 5 *Nimmer on Copyright*

12  § 19D.03[C][2][b] (suggesting that a contract that "does not purport to give the plaintiff any pro-

13  tection beyond that provided by copyright law itself" would be preempted) (quoted in *Universal*

14  *Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019), and *Forest Park*, 683

15  F.3d at 432); *see also Wrench Ltd. Liab. Co. v. Taco Bell Corp.*, 256 F.3d 446, 457–58 (6th Cir.

16  2001) ("If the promise [in a contract] amounts only to a promise to refrain from reproducing, per-

17  forming, distributing or displaying the work, then the contract claim is preempted.   The contrary

18  result would clearly violate the rule that state law rights are preempted when they would be

19  abridged by an act which in and of itself would infringe one of the exclusive rights of § 106.").

20        Genius argues, in effect, for a per se rule that all breach of contract claims are exempt from

21  preemption.   But such a rule would be in tension with our precedent holding that the general

---

[3]  Indeed, Genius itself reproduces the lyrics only pursuant to a license obtained "from music pub-
lishers permitting the display and distribution of" the copyrighted lyrics.   App'x 17.

scope inquiry is "holistic."   *Jackson*, 972 F.3d at 44 n.17; *see also Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 444 (S.D.N.Y. 2011) (opining that a "categorical rule that the extra element that saves a contract claim from preemption is the promise itself provides mere lip service" to our precedent holding that "preemption turns on 'what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced'" (quoting *Altai*, 982 F.2d at 716)).   Moreover, such a rule would be difficult to square with our precedent teaching that we should "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."   *Canal+*, 773 F. Supp. 2d at 444 (quoting *Briarpatch*, 373 F.3d at 306).   To be sure, we do not hold that breach of contract claims concerning copyrighted material are *never* preempted.   We hold only that, given the specific facts Genius pleaded in its complaint, its breach of contract claim is not qualitatively different from a copyright claim and is therefore preempted.

## 2.   Unfair Competition Claims

Nor has Genius alleged an extra element to qualitatively differentiate its unfair competition claims from a federal copyright claim.   "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith."   *Universal Instruments*, 924 F.3d at 50–51; *see also Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) ("The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship.").   "[U]nfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301."   *Altai*, 982 F.2d at 717; *see also Barclays Capital Inc. v. Theflyonthewall.com, Inc.*,

9

1   650 F.3d 876, 909 (2d Cir. 2011) (Raggi, *J.*, concurring) ("[U]nfair competition, misappropriation,

2   or unjust enrichment claims are preempted when based on alleged acts such as distribution or

3   reproduction, despite required elements of intent, enrichment, or commercial immorality.").

4        Genius's unfair competition claim is preempted because it is based solely on the allegation

5   that Defendants wrongfully copied and reproduced lyrics from its website.   Genius alleges that

6   LyricFind "misappropriates [its] content" via "copying activities" and that it is Google's "display"

7   of lyrics and use of "content misappropriated from Genius's website" that affords it "unfair eco-

8   nomic and competitive advantages."   App'x 53–58.   As with its breach of contract claims, "un-

9   authorized publication is the gravamen" of Genius's unfair competition claims, so that the "right

10  [it] seek[s] to protect is coextensive with an exclusive right already safeguarded by the Act—

11  namely, control over reproduction and derivative use of copyrighted material."   *Harper & Row*,

12  723 F.2d at 201.

13       Genius contends that its allegation of "bad faith" is an extra element that rescues its claim

14  from statutory preemption.   Genius principally relies on the Tenth Circuit's decision in *SCO*

15  *Group, Inc. v. International Business Machines Corp.*, which held that unfair competition claims

16  are not preempted because such claims require a plaintiff to plead "bad faith."   879 F.3d 1062,

17  1081 (10th Cir. 2018).

18       We are not persuaded.   Our precedent forecloses any suggestion that unfair competition

19  claims under New York law are categorically exempt from statutory preemption.   *See, e.g.*, *Altai*,

20  982 F.2d at 717.   And a rule that the "bad faith" element of an unfair competition claim is itself

21  sufficient to exempt all such claims from statutory preemption does not square with our "holistic"

22  approach to statutory preemption.   *Jackson*, 972 F.3d at 44 n.17.   Indeed, "New York's law of

23  unfair competition is a broad and flexible doctrine."   *Telecom Int'l*, 280 F.3d at 197.   As with

1   any other claim, whether an unfair competition claim is preempted depends on "what the plaintiff

2   seeks to protect, the theories in which the matter is thought to be protected and the rights sought

3   to be enforced." *Briarpatch*, 373 F.3d at 306.   Thus, "unfair competition claims based upon

4   breaches of confidential relationship, breach of fiduciary duty and trade secrets" are not preempted.

5   *Altai*, 982 F.2d at 716.   But when the alleged "bad faith" consists of "elements such as awareness

6   or intent," preemption applies.   *Id.* at 716–17.

7           Genius also contends that its allegations that Defendants engaged in "fraud" and "decep-

8   tion" constitute an extra element.   We disagree because Genius has not alleged that Defendants

9   "misappropriated the fruit of [its] labors and expenditures … *through* fraud or deception."   *Tele-*

10  *com Int'l*, 280 F.3d at 197 (emphasis added).   Instead, Genius alleges that LyricFind accessed its

11  lyrics transcriptions through Genius's public website.   Genius argues that it has alleged that De-

12  fendants "intentionally tried to conceal their misappropriation" after the fact.   Appellant's Br. 38.

13  But that argument only underscores that Genius has not alleged that Defendants accomplished the

14  alleged misappropriation "through fraud or deception." *Telecom Int'l*, 280 F.3d at 197.   Genius

15  alleges that Defendants misappropriated its content *and then* engaged in deceptive behavior.

16  That is inadequate to save its claim from preemption.   At bottom, the "gravamen" of Genius's

17  claim is Defendants' "unauthorized publication" of its lyrics transcriptions, so Genius's unfair

18  competition claims are preempted.   *Harper & Row*, 723 F.2d at 201.

19  **III.   Hot News Exception**

20          Finally, Genius's claims do not fall within the "hot news" exception to copyright preemp-

21  tion.   *See International News Service v. Associated Press*, 248 U.S. 215 (1918) (establishing this

22  exception).   Hot news claims are

23          limited to cases where: (i) a plaintiff generates or gathers information at a cost; (ii)
24          the information is time-sensitive; (iii) a defendant's use of the information

1   constitutes free-riding on the plaintiff's efforts; (iv) the defendant is in direct com-
2   petition with a product or service offered by the plaintiffs; and (v) the ability of
3   other parties to free-ride on the efforts of the plaintiff or others would so reduce the
4   incentive to produce the product or service that its existence or quality would be
5   substantially threatened.

6   *NBA v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir. 1997).   We have "repeatedly emphasized the

7   'narrowness' of the 'hot news' tort exception from preemption."   *Barclays*, 650 F.3d at 896 (ma-

8   jority opinion).

9         Genius's claims do not qualify for the hot news exception because it has not shown that its

10   transcriptions constitute time-sensitive information.   *See Fin. Info., Inc.*, 808 F.2d at 209

11   ("[I]mmediacy of distribution [is] necessary to sustain a 'hot' news claim.").   We have held the

12   hot news doctrine inapplicable when allegedly copied information was republished "at least ten

13   days" after its original publication.   *Id.*   Genius alleges that Defendants copied their transcrip-

14   tions eleven days after its original publication.   *See* App'x 44–45.   Genius argues that "[t]imeli-

15   ness is a key feature of Genius's business model."   Appellant's Br. 33.   But the issue is not

16   whether Genius's business model depends on timeliness; it is whether the allegedly misappropri-

17   ated *information* is time-sensitive in nature.   *See NBA*, 105 F.3d at 845.   Because lyrics tran-

18   scriptions are not, Genius's claims do not fall within the hot news exception.

19                        *        *        *

20         We have considered Genius's remaining arguments and find them to be without merit.

21   Accordingly, we **AFFIRM** the judgment of the district court.

22                                                            FOR THE COURT:
23                                                            Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

12